KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
R. JAMES SLAUGHTER - #192813
rslaughter@kvn.com
MICHAEL S. KWUN - #198945
mkwun@kvn.com
ANDREW F. DAWSON - #264421
adawson@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
T: 415-391-5400/F: 415-397-7188

JONATHAN BAND - #122369
jband@policybandwidth.com
21 Dupont Circle NW, 8th Floor
Washington, DC 20036
T: 202-296-5675/F: 202-872-0884

CHARLES F. ROBINSON - #113197
charles.robinson@ucop.edu
KAREN J. PETRULAKIS - #168732
karen.petrulakis@ucop.edu
ERIC K. BEHRENS - #79440
eric.behrens@ucop.edu
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
T: 510-987-9800/F: 510-987-9757

Attorneys for Defendants
The Regents of the University of California
and Dr. Gene Block

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION FOR INFORMATION MEDIA AND EQUIPMENT, an Illinois nonprofit membership organization; and AMBROSE VIDEO PUBLISHING, INC., a New York corporation,<br><br>                        Plaintiffs,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation; DR. GENE BLOCK, CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA, LOS ANGELES, an individual,<br><br>                        Defendants. | Case No. CV10-09378 CBM (MANx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      March 14, 2011<br>Time:     11:00 a.m.<br>Dept:     Courtroom 2<br>Judge:   Hon. Consuelo B. Marshall<br>Date Comp. Filed: December 7, 2010 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL ALLEGATIONS .............................................................. 3

III.    LEGAL ARGUMENT ......................................................................... 4

    A.   Both The Regents and Dr. Block are immune from suit under the Eleventh Amendment to the U.S. Constitution. ................... 4

       1.   The claims against The Regents and Dr. Block in his official capacity must be dismissed. ..................................... 4

       2.   Claims for injunctive relief as to Dr. Block must be dismissed because the Complaint fails to allege any facts as to his involvement in the events alleged. ...................................................................................... 7

       3.   The claims against Dr. Block in his individual capacity must also be dismissed for failure to state a claim and because Dr. Block is entitled to qualified immunity. .................................................................. 9

    B.   AIME lacks constitutional standing. .................................................. 13

    C.   Neither Ambrose nor AIME has statutory standing to bring copyright infringement claims. ................................................... 15

       1.   AIME cannot sue for copyright infringement. ........................ 15

       2.   Ambrose has no standing to sue for copyright infringement. ......................................................................... 15

    D.   Plaintiffs' claims under California state law are preempted by the Copyright Act. ......................................................... 17

       1.   Claims for unjust enrichment are preempted by the Copyright Act. ........................................................................ 17

       2.   Claims for breach of contract and tortious interference are preempted when they seek recovery based on the exclusive rights protected by the Copyright Act. ......................................................... 18

    E.   Plaintiffs fail to state a cause of action under the DMCA. ................. 20

IV.     CONCLUSION .................................................................................. 21

537798.04

# TABLE OF AUTHORITIES

## Federal Cases

*Agee v. Paramount Comm'n*
  59 F.3d 317 (2d Cir. 1995) ........................................................... 17

*Altera Corp. v. Clear Logic, Inc.*
  424 F.3d 1079 (9th Cir. 2005) ........................................... 17, 18, 19

*Armstrong v. Meyers*
  964 F.2d 948 (9th Cir. 1991) ........................................................... 7

*Ashcrof v. Iabal*
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................. 14, 21

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ..................................................................... 21

*Cahill v. Liberty Mut. Ins. Co.*
  80 F.3d 336 (9th Cir. 1996) ............................................................. 3

*Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*
  No. CV 03-5834, 2005 WL 4715213
  (C.D. Cal. Apr. 28, 2005) .............................................................. 19

*Cetacean Cmty. v. Bush*
  386 F.3d 1169 (9th Cir. 2004) ...................................................... 15

*Chavez v. Arte Publico Press*
  204 F.3d 601 (5th Cir. 2000) ........................................................... 6

*Chavez v. Arte Publico Press*
  59 F.3d 539 (5th Cir. 1995) ........................................................... 13

*City of Boerne v. Flores*
  521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) ............... 5

*College Savings Bank v. Fla. Prepaid Postsecondary Educ.*
  *Expense Bd.*
  527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) ............... 5

*Comptoir De L'Industrie Textile De France v. Fiorucci, Inc.*
  No. 78 Civ. 3923, 1979 WL 1062 (S.D.N.Y. Apr. 10, 1979) .......... 16

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*
  109 F.3d 1394 (9th Cir. 1997) ...................................................... 12

*Edelman v. Jordan*
  415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ................... 7

*Employees of Dep't of Pub. Health & Welfare v. Mo. Pub.*
  *Health Dep't*
  411 U.S. 279, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973) ................... 4

*Ex parte Young,*
  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ............. 2, 7, 8, 9

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College*
  *Savings Bank*
  527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999) ........... 5, 6

*Fogerty v. Fantasy, Inc.*
  510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ............. 17

ii

*Green v. Mansour*
    474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) .......................... 5

*Harlow v. Fitzgerald*
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ................. 9, 13

*Harper & Row v. Nation Enters.*
    471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) .................. 11

*Hunter v. Bryant*
    502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) .................... 10

*Jackson v. Hayakawa*
    682 F.2d 1344 (9th Cir. 1982) ................................................... 5

*Jacobsen v. Katzer*
    609 F. Supp. 2d 925 (N.D. Cal. 2009) .................................... 19

*Los Angeles Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ..................................................... 8

*Marketing Info. Masters. Inc. v. Bd. of Trustees of the Cal. State
    Univ. Sys.*
    552 F. Supp. 2d 1088 (S.D. Cal. 2008) ........................... 4, 5, 6, 9

*MDY Indus. v. Blizzard Entertainment*
    Nos. 09-15932. 09-16044. 2010 WL 5141269 (9th Cir.
    Dec. 14, 2010) .......................................................... 19, 20

*Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ.
    Sys. of Ga..No 3:07-cv-084. 2008 WL 1805439*
    (M.D. Ga. Apr. 18, 2008) ........................................... 6, 10

*Nat'l Car Rental v. Computer Assoc.*
    991 F.2d 426 (8th Cir. 1993) .................................... 18, 19

*Olagues v. Russoniello*
    770 F.2d 791 (9th Cir. 1985) ..................................... 14

*Pearson v. Callahan*
    129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .......................... 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) .................. 4, 7

*Pennington Seed. Inc. v. Produce Exchange No. 299*
    457 F.3d 1334 (Fed. Cir. 2006) ..................................... 7, 8

*Perfect 10. Inc. v. Amazon.com. Inc.*
    487 F.3d 701 (9th Cir. 2007) ........................................ 10

*Saucier v. Katz*
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) .................. 9

*Selby v. New Line Cinema Corp.*
    96 F. Supp. 2d 1053 (S.D. Cal. 2000) ................................ 18

*Seminole Tribe of Florida v. Florida*
    517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) .................. 5

*Sony Corp. of Am. v. Universal City Studios. Inc.*
    464 U.S. 417 , 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) .................. 12

*Sybersound Records. Inc. v. UAV Corp.*
    517 F.3d 1137 (9th Cir. 2008) ....................................... 15

iii

*Univ. of Houston v. Chavez*
  517 U.S. 1184, 116 S. Ct. 1667, 134 L. Ed. 2d 772 (1996) ................................ 13

*Warth v. Seldin*
  422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d. 343 (1974) ..................................... 14

**Federal Statutes**

17 U.S.C. § 106 ................................................................................ 16, 17, 19

17 U.S.C. § 107 ........................................................................... 1, 10, 11, 12

17 U.S.C. § 110(1) ............................................................................. 10, 12

17 U.S.C. § 110(2) ................................................................................... 10

17 U.S.C. § 501 ................................................................................. 15, 16

17 U.S.C. § 511 ..................................................................................... 5, 6

17 U.S.C. § 1201 ...................................................................................... 20

Copyright Remedy Clarification Act. § 2. Pub. L. 101-553. 104
  Stat. 2749, 17 U.S.C. § 511 (1990) ................................................................. 6

Patent and Plant Variety Protection Remedy Clarification Act.
  § 2. Pub. L. No. 102-560. 106 Stat. 4230. 35 U.S.C. § 271(h)
  (1992) ......................................................................................................... 6

Trademark Remedy Clarification Act. § 3. Pub. L. No. 102-542.
  106 Stat. 3568, 15 U.S.C. § 1114 (1992) ........................................................ 6

**Constitutional Provisions**

Eleventh Amendment ........................................................................ *passim*

Fourteenth Amendment ............................................................................. 5

**Other Authorities**

H.R. Rep. No. 94-1476 (1976). *reprinted in* 1976
  U.S.C.C.A.N. 5680 ................................................................................... 11

Nimmer on Copyright .................................................................... 16, 18, 19, 21

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          Please take notice that on March 14, 2011, at 11:00 a.m., or as soon

4  thereafter as the matter may be heard in Courtroom 2 of the United States District

5  Court, 312 North Spring St., Los Angeles, California 90012, Defendants The

6  Regents of the University of California and Dr. Gene Block, will and hereby do

7  move this Court to dismiss Plaintiffs' Complaint because of a lack of subject

8  matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure

9  to state a claim upon which relief may be granted under Federal Rule of Civil

10  Procedure 12(b)(6).  This Motion is based on the Notice of Motion, the

11  Memorandum of Points and Authorities in Support Thereof, the Proposed Order,

12  all pleadings and papers filed herein, the oral argument of counsel, and any other

13  matter that may be submitted at the hearing.

14          This motion is made following the conference of counsel pursuant to Local

15  Rule 7-3, which took place on January 19, 2011.

16

17  Dated:  January 24, 2011                              KEKER & VAN NEST LLP

18

19

20                                          By:   /s/ R. James Slaughter
                                                   ROBERT A. VAN NEST
21                                                 R. JAMES SLAUGHTER
                                                   MICHAEL S. KWUN
22                                                 ANDREW F. DAWSON
                                                   Attorneys for Defendants
23                                                 The Regents of the University of
                                                   California and Dr. Gene Block
24

25

26

27

28

1

537798.04

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek to impose liability for the streaming of lawfully acquired video content in The University of California, Los Angeles's ("UCLA") instructional development media lab and in its physical and virtual classrooms. Plaintiffs have initiated this suit even though such use is directly related to the pedagogical purposes of specific classes, is at the direction of the instructor of record, and is restricted to only those students enrolled in the specific class for which the video was assigned.  Under Section 107 of the Copyright Act, a non-profit, public institution of higher education like UCLA has the right to engage in such a fair use of copyrighted content without permission from the copyright owner.

Nevertheless, Plaintiffs Association for Information Media and Equipment ("AIME") and Ambrose Video Publishing, Inc. ("Ambrose") have filed a Complaint alleging six causes of action against The Regents of the University of California ("The Regents") and Dr. Gene Block ("Dr. Block"), the Chancellor of UCLA: breach of contract, copyright infringement, violation of the Digital Millennium Copyright Act's ("DMCA") anti-circumvention provisions, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and tortious interference with business relationships.[1]

Plaintiffs' claims must be dismissed for a multitude of reasons.  First, both The Regents and Dr. Block are shielded by the Eleventh Amendment.  Hence, this Court lacks subject matter jurisdiction to adjudicate the alleged causes of action. Moreover, because the Complaint fails to name any individual personally involved

---

[1]    Although the prayer seeks relief for "Plaintiffs" on all counts, the operative allegations of counts I (breach of contract), IV (good faith and fair dealing), and VI (tortious interference) plead only that Defendants are "liable to Plaintiff [Ambrose]."  *See* Compl. ¶¶ 67, 87, 96.  AIME is thus a plaintiff only for counts II (copyright infringement), III (DMCA violation), and V (unjust enrichment).

1

with the events alleged, it fails to state a claim for injunctive relief under *Ex parte Young*. Similarly, because Dr. Block is not alleged to have participated in the events alleged, he cannot be held personally liable. Even had he participated, because the Complaint fails to allege a violation of clearly established law, he is protected by qualified immunity. For these reasons, every claim alleged in the Complaint must be dismissed.

Even if The Regents and Dr. Block were not immune under the Eleventh Amendment, neither plaintiff has standing to bring certain causes of action alleged. AIME, a trade association that does not own a single copyright at issue in this case, has no standing under the Constitution to bring this action. And even if it had such constitutional standing, it has no statutory standing under the Copyright Act to bring suit for infringement. It is not the beneficial owner of *any* copyright at issue, and is therefore precluded from bringing a claim for infringement. All three of AIME's claims—for infringement, violation of the DMCA, and unjust enrichment—must therefore be dismissed.

Ambrose similarly lacks standing to sue for infringement. It claims to be the "exclusive distributor" of the copyrighted content, but there are no facts sufficient to support this conclusion, and more importantly, that exclusive right does not grant standing to bring an action for unlawful copying, public performance, or public display. The Copyright Act grants the owner of an exclusive right standing to sue only for infringement of that right. An exclusive distributor, therefore, can only sue for unauthorized distribution. The Complaint, however, does not—and cannot—allege facts demonstrating that any distribution of the works in question occurred. Ambrose's claim for infringement must be dismissed.

Additionally, the state law causes of action are preempted by the Copyright Act. These claims seek damages for conduct that is regulated exclusively by the Copyright Act, and state law can neither expand nor diminish the rights established by that Act. Because the conduct alleged consists of nothing more than the alleged

537798.04

1   infringement of an exclusive right under the Copyright Act, state law cannot

2   impose liability.

3   　　　　The Complaint also fails to allege a plausible claim for violation of the

4   DMCA's anti-circumvention provisions.  Plaintiffs don't allege any facts

5   demonstrating that Defendants bypassed Plaintiffs' access controls.  To the

6   contrary, the Complaint alleges that UCLA had a license to access the content.

7   Whether or not that content was subsequently copied is irrelevant to a claim that an

8   access control was circumvented.  Moreover, while Plaintiffs allege in a

9   conclusory manner that UCLA "trafficked" in forbidden anti-circumvention

10  devices, there are no facts alleged to support such a conclusion.  The DMCA

11  claims must be dismissed for this additional reason.

12  　　　　As all claims are barred, the Complaint must be dismissed in its entirety.

13  ## II.　　FACTUAL ALLEGATIONS

14  　　　　Ambrose claims to be a corporation "whose principal business is the creation

15  and distribution of high quality video content for the educational marketplace."

16  Compl. ¶ 12.[2]  AIME is not a producer or distributor at all, and is instead a "non-

17  profit membership organization offering copyright information and support . . . ."

18  *Id.* ¶ 13.  Its mission is "to promote fair and appropriate use of the media and

19  equipment delivering information in a rapidly changing world," and the Complaint

20  specifically alleges that AIME has "standing to sue in this proceeding as an

21  associational Plaintiff on behalf of its members." *Id.*  The Complaint does not

22  identify any particular member of AIME, nor any particular copyright owned by

23  any member of AIME.  Instead, it alleges vaguely that AIME "estimates" that ten

24  AIME members own the rights to works that are at issue in this case. *Id.* ¶ 61 &

25  Ex. 13.

26

27  _____
    [2]  　　　As they must for purposes of this motion, The Regents and Dr. Block

28  assume the truth of all properly pleaded factual allegations in the Complaint. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

1  Plaintiffs allege that that UCLA has purchased a number of DVDs, and has

2  been improperly "streaming" the contents of these DVDs to faculty and students at

3  UCLA without their permission.  *Id.* ¶ 33.  "Streaming" is defined in the Complaint

4  as a process whereby video content is copied and "sent in compressed form over

5  the Internet."  *Id.* ¶ 26.  "With streaming video, a viewer does not have to wait for

6  an entire program to download; rather, the data is displayed as a continuous

7  'stream' of video as it arrives."  *Id.*

8  Plaintiffs filed the instant complaint on December 7, 2010.

9  ### III.   LEGAL ARGUMENT

10  **A.   Both The Regents and Dr. Block are immune from suit under the Eleventh Amendment to the U.S. Constitution.**

11
12  **1.   The claims against The Regents and Dr. Block in his official capacity must be dismissed.**

13  "[A]n unconsenting State is immune from suits brought in federal

14  courts . . . ."  *Employees of Dep't of Pub. Health & Welfare v. Mo. Pub. Health*

15  *Dep't*, 411 U.S. 279, 280, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973).  Moreover,

16  "[t]he Eleventh Amendment bars a suit against state officials when the state is the

17  real, substantial party in interest."  *Pennhurst State Sch. & Hosp. v. Halderman*,

18  465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (quotation marks

19  omitted).  "Thus, the general rule is that relief sought nominally against an officer

20  is in fact against the sovereign if the decree would operate against the latter."  *Id.*

21  A decree "operate[s] against" the sovereign if "the judgment sought would expend

22  itself on the public treasury or domain, or interfere with the public administration,

23  or if the effect of the judgment would be to restrain the Government from acting,

24  or to compel it to act."  *Id.* at 102 n.11.  For this reason, "[s]tate sovereign

25  immunity extends to government officials that are sued for damages in their

26  official capacity."  *Marketing Info. Masters, Inc. v. Bd. of Trustees of the Cal. State*

27  *Univ. Sys.*, 552 F. Supp. 2d 1088, 1095 (S.D. Cal. 2008)

28  Eleventh Amendment immunity applies unless the state consents to be sued

4

1   or Congress validly overrides the state's immunity.[3]  *See Green v. Mansour*, 474

2   U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985).  Here, California has not

3   consented to suit, so it is immune from suit unless Congress has validly abrogated

4   its immunity.  In order to determine whether Congress has abrogated a state's

5   immunity, a court must look to two factors: "(1) whether Congress expressed a

6   clear intent to override the state's immunity and (2) whether Congress acted

7   pursuant to a constitutional grant of authority."  *Marketing Info.*, 552 F. Supp. 2d at

8   1092.

9        Congress has not attempted to abrogate California's immunity as to the state

10  law claims.  Moreover, as several courts have found, Congress's attempt to

11  abrogate immunity as to claims brought under the Copyright Act, *see* 17 U.S.C.

12  § 511, is invalid.  Congress has no authority to abrogate sovereign immunity

13  pursuant to its Article I powers.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44,

14  72-73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  Section 511, then, is

15  constitutional only if enacted pursuant to Congress's enforcement powers under

16  section 5 of the Fourteenth Amendment.  *See id.* at 59.

17       Congress's enforcement powers under the Fourteenth Amendment, however,

18  are limited to remedial measures.  *City of Boerne v. Flores,* 521 U.S. 507, 515-17,

19  117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).  The Supreme Court has held that two

20  analogous attempts to abrogate the states' immunity—for claims of patent and

21  trademark infringement—were void as outside the scope of Congress's

22  enforcement powers.  *See Fla. Prepaid Postsecondary Educ. Expense Bd. v.*

23  *College Savings Bank*, 527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999)

24  (holding invalid Congress's attempt to abrogate Eleventh Amendment immunity

25

26  _____

[3]     The Regents is an "arm of the state," and therefore entitled to the protections

27  of the Eleventh Amendment.  *See Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th
    Cir. 1982) ("[T]he University of California and the Board of Regents are

28  considered to be instrumentalities of the state for purposes of the Eleventh
    Amendment.").

537798.04

for patent infringement); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (same as to trademark infringement).[4]  For example, Congress's attempt to abrogate the Eleventh Amendment for patent claims was invalid because it did not "respond to a history of 'widespread and persisting deprivation of constitutional rights' of the sort Congress has faced in enacting proper prophylactic § 5 legislation."  *Fla. Prepaid*, 527 U.S. at 645 (quoting *City of Boerne,* 521 U.S. at 526).

In contrast to the legislative history for the Patent Remedy Act, which demonstrated Congress's intent to rely on its Enforcement Clause powers, Congress did not even attempt to invoke its Enforcement Clause powers in enacting § 511.  *See Chavez v. Arte Publico Press*, 204 F.3d 601, 604 (5th Cir. 2000).  Moreover, far from suggesting a widespread practice of copyright infringement by the states, the legislative history for § 511 suggests that copyright infringement by the states is a relatively infrequent problem.  *See id.* at 605-06.  Not surprisingly, then, every court to confront the issue has concluded that § 511 did not validly abrogate the Eleventh Amendment.  *See id.* at 607; *Marketing Info.*, 552 F. Supp. 2d at 1095; *Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, No 3:07-cv-084, 2008 WL 1805439 (M.D. Ga. Apr. 18, 2008).

Therefore, the claims against The Regents and against Dr. Block in his official capacity are impermissible suits against the State of California.

---

[4]     The statutes invalidated in *Florida Prepaid* and *College Savings Bank* were passed within two years of the statute at issue in this case, and the three statutes are substantively identical.  *Compare* Trademark Remedy Clarification Act, § 3, Pub. L. No. 102-542, 106 Stat. 3568, 15 U.S.C. § 1114 (1992), *and* Patent and Plant Variety Protection Remedy Clarification Act, § 2, Pub. L. No. 102-560, 106 Stat. 4230, 35 U.S.C. § 271(h) (1992), *with* Copyright Remedy Clarification Act, § 2, Pub. L. 101-553, 104 Stat. 2749, 17 U.S.C. § 511 (1990).  The three laws amended the relevant sections of the U.S. Code using almost identical language.

1

2

**2.      Claims for injunctive relief as to Dr. Block must be dismissed because the Complaint fails to allege any facts as to his involvement in the events alleged.[5]**

3      The only exception to Eleventh Amendment immunity was first recognized

4  by *Ex parte Young*.  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  Under *Ex*

5  *parte Young* and its progeny, the Eleventh Amendment does not bar a suit against a

6  state official that seeks only prospective injunctive relief for that official's

7  violation of federal law.[6]  *See Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39

8  L. Ed. 2d 662 (1974).  However, a plaintiff cannot maintain a suit under *Ex parte*

9  *Young* simply by naming any official tangentially involved in an alleged violation

10  of federal law.  The named official must be more than simply a supervisory

11  official.  *See Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334,

12  1342 (Fed. Cir. 2006).

13      Plaintiffs' requests for injunctive relief under the Copyright Act cannot be

14  justified under *Ex parte Young*:

15          In making an officer of the state a party defendant in a suit to enjoin

16          the enforcement of an act alleged to be unconstitutional, it is plain that

17          such officer must have some connection with the enforcement of the

18

19  [5]      As the Complaint's caption reflects, The Regents of the University of California is a California corporation.  *See also Armstrong v. Meyers*, 964 F.2d

20  948, 949-50 (9th Cir. 1991) (noting that the Board of Regents is "a corporation created by the California constitution").  Nevertheless, the Complaint elsewhere

21  purports to sue The Regents "in their individual capacities as members of the Board of Regents."  Compl. ¶ 1.  But the Complaint does not identify any

22  particular member of the board, nor does it allege that any particular member was involved in any way in the events alleged in the Complaint.  Accordingly, the

23  Complaint fails to allege any facts stating a plausible claim for relief as to any particular member of the Board.  This Motion therefore treats The Regents solely

24  as an official arm of the state.  In any event, even were such a member properly named in his or her individual capacity, the below analysis as to Dr. Block would

25  be equally applicable.

    [6]      The Supreme Court has held that *Ex parte Young* applies only to violations

26  of federal law, not state law.  *See Pennhurst*, 465 U.S. at 106 ("We conclude that *Young . . .* [is] inapplicable in a suit against state officials on the basis of state

27  law.").  Therefore, Plaintiffs cannot seek prospective relief under *Ex parte Young*

28  for the state law claims.

537798.04

1    act, or else it is merely making him a party as a representative of the

2    state, and thereby attempting to make the state a party.

3    *Ex parte Young*, 209 U.S. at 157.  "When a violation of federal law is alleged . . .

4    the state official whose actions violate that law is the rightful party to the suit and

5    prospective injunctive relief can only be had against him."  *Pennington Seed*, 457

6    F.3d at 1342.

7         In the educational context, this forbids a suit against a university official

8    who has a general duty to supervise activities at the university.  In *Pennington*

9    *Seed*, the Federal Circuit held that such a supervisor is not a proper defendant

10   under *Ex parte Young*:

11        Allegations that a state official directs a University's patent policy are

12        insufficient to causally connect that state official to a violation of

13        federal patent law-i.e., patent infringement.  A nexus between the

14        violation of federal law and the individual accused of violating that

15        law requires more than simply a broad general obligation to prevent a

16        violation; it requires an actual violation of federal law by that

17        individual.  The fact that a University Official has a general, state-law

18        obligation to oversee a University's patent policy does not give rise to

19        a violation of federal patent law.

20   *Id.* at 1342-43 (citations omitted).

21        Here, the Complaint only alleges that AIME's counsel wrote Dr. Block a

22   letter long after this dispute began to which he never responded, and that he "is the

23   individual in charge of all university policies and their implementation."  Compl.

24   ¶ 15.  There is no suggestion that Dr. Block chose what material should be used.

25   He did not stream the videos, or do anything to set up that streaming.  Merely

26   alleging that Dr. Block is "in charge" is not sufficient to invoke *Ex parte Young*.

27   *See Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("This

28   connection [between defendant and act] must be fairly direct; a generalized duty to

8

1   enforce state law or general supervisory power over the persons responsible for

2   enforcing the challenged provision will not subject an official to suit.").

3       Because Dr. Block merely is alleged to have "general supervisory power

4   over the persons responsible for enforcing the challenged provision," he is not a

5   proper party under *Ex parte Young* for Plaintiffs' federal claims for injunctive

6   relief.

7       **3.    The claims against Dr. Block in his individual capacity must also**
        **be dismissed for failure to state a claim and because Dr. Block is**
8       **entitled to qualified immunity.**

9       Just as the Complaint's failure to allege facts connecting Dr. Block to the

10  allegedly improper acts precludes Plaintiffs' suit under *Ex parte Young* for acts in

11  his official capacity, it similarly precludes Plaintiffs' attempt to hold Dr. Block

12  personally liable.  *See Marketing Info.*, 552 F. Supp. 2d at 1095-96 (requiring that

13  the named defendant be "personally engaged in the infringing behavior" to

14  establish personal liability).  As noted above, the Complaint is devoid of factual

15  allegations that Dr. Block "personally engaged in the infringing behavior."

16  Without such allegations, he cannot be held personally liable.

17      Moreover, at a bare minimum, Dr. Block is entitled to qualified immunity.

18  "[G]overnment officials performing discretionary functions generally are shielded

19  from liability for civil damages insofar as their conduct does not violate clearly

20  established statutory or constitutional rights of which a reasonable person would

21  have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.

22  2d 396 (1982).  The Supreme Court has repeatedly "stressed the importance of

23  resolving immunity questions at the earliest possible stage in litigation."  *Pearson*

24  *v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (internal quotation

25  marks and citation omitted).

26      Qualified immunity can only be overcome if:  (1) the right the officials are

27  accused of violating was clearly established, and (2) a reasonable official would

28  have known that the conduct alleged had violated that right.  *See Saucier v. Katz*,

9

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM
CASE NO. CV10-09378 CBM (MANx)

533 U.S. 194, 199, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *receded from on other grounds by Pearson*, 129 S. Ct. 808.  "'Clearly established law' is law that is sufficiently defined so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Nat'l Ass'n of Bds. of Pharmacy*, 2008 WL 1805439, at *22 (internal quotation marks and citation omitted).  This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (quotation marks omitted).

The rights Plaintiffs seek to enforce here are by no means clearly established, and a reasonable official would not have known that the facts alleged constitute infringement.[7]  To the contrary, Defendants' conduct qualifies as a fair use, and is therefore not infringement.[8]  Section 107 of the Copyright Act provides that "fair use[s]" of copyrighted materials are not infringements.  It dictates that fair use, "including such use by reproduction in copies . . . *for purposes such as* . . . *teaching* (including multiple copies for classroom use) . . . is not an infringement of copyright." 17 U.S.C. § 107 (emphasis added).  Further, the courts have recognized that the purpose of copyright law is "'[t]o promote the Progress of Science and useful Arts,' U.S. Const. art. I, § 8, cl. 8, and to serve 'the welfare of the public.'" *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 720 (9th Cir. 2007), *quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 n.10 (1984).

While § 107 codifies a special solicitude for uses in the educational context, it does not list with precision which uses are, and which are not, "fair."  Instead,

---

[7]      This fair use argument is not a post hoc rationalization.  Exhibit 7 to the Complaint contains a letter from UCLA's counsel to Ambrose's counsel explaining UCLA's reasoning as to why its streaming constituted a fair use.

[8]      UCLA's video-streaming practices are also independently authorized both by 17 U.S.C. § 110(1)—the face-to-face exemption—and 17 U.S.C. § 110(2)—the TEACH Act.

537798.04

§ 107 sets forth a four-factor test.  The factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature *or is for nonprofit educational purposes*;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

Courts are required to balance *all four* of these factors and apply an equitable rule of reason to determine fair use.  As stated by the relevant House Report:

> Although the courts have considered and ruled upon the fair use doctrine over and over again, no real definition of the concept has ever emerged.  Indeed, since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts . . . .  Beyond a very broad statutory explanation of what fair use is and some of the criteria applicable to it, the courts must be free to adapt the doctrine to particular situations on a case-by-case basis.

H.R. Rep. No. 94-1476, at 65-66 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5680; *see also Harper & Row v. Nation Enters.*, 471 U.S. 539, 560, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) (noting that fair use is "an equitable rule of reason," and quoting H.R. Rep. No. 94-1476).  Therefore, while case law might establish that a particular use is or is not a fair use on a case-by-case basis, precedent does not offer clear guidance for the use of new technology, particularly when that technology is employed in protected context like education.

Application of the four fair use factors supports a finding of fair use.  Importantly, as to the first factor, it is undeniable that UCLA's use had a nonprofit

11

1 educational purpose.  As the Complaint itself alleges, "[t]he DVD streams were

2 linked to course web pages and accessible remotely by students and faculty,

3 enrolled in or teaching the course."  Compl. ¶ 5.

4   The alleged use also had no effect on "the potential market for or value of

5 the copyrighted work."  UCLA lawfully acquired the DVDs in question, which

6 gave instructors the right to display the contents of those DVDs in the classroom.

7 *See* 17 U.S.C. § 110(1).  Had streaming never been offered, there is no reason to

8 conclude that Plaintiffs ever would have sold any more DVDs, or that Ambrose's

9 own streaming offerings would have been more popular.  *See* Compl. ¶ 22.

10 Additionally, the Complaint does not—and indeed cannot—allege that Plaintiffs

11 offered video streaming of the relevant content when UCLA acquired the DVDs.

12   Moreover, while the third factor typically weighs against a party that copies

13 an entire work, the Supreme Court has concluded in the context of television

14 broadcasts that the recording of a motion picture so that it might be performed

15 again at a different time—so called "timeshifting"—constitutes fair use.  *See Sony*

16 *Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448, 104 S. Ct. 774, 78

17 L. Ed. 2d 574 (1984) (in the television context, "timeshifting merely enables a

18 viewer to see such a work which he had been invited to witness in its entirety free

19 of charge, [so] the fact that the entire work is reproduced does not have its ordinary

20 effect of militating against a finding of fair use." (citation omitted)).  As for the

21 second factor, the "nature of the copyrighted work," the Ninth Circuit has held that

22 "this factor typically has not been terribly significant in the overall fair use

23 balancing."  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d

24 1394, 1402 (9th Cir. 1997).

25   Plaintiffs' Complaint contains a legal argument that UCLA's streaming is

26 not a fair use.  *See* Compl. ¶¶ 50-59.  No published opinion, however, adopts their

27 interpretation of § 107 as applied to video streaming in this context.  More

28 importantly, even if Plaintiffs were correct on the law, the question of qualified

12

537798.04

1   immunity turns on a different and more forgiving analysis.  Dr. Block is protected

2   so long as a reasonable official would not have known, at the time of the events

3   alleged, that such streaming was clearly established infringement.

4        Given the fact that there is "no generally applicable definition" of fair use,

5   and the fair use analysis above, Dr. Block at a minimum—and all that need be

6   shown for purposes of qualified immunity—did not have "fair notice" that the use

7   constituted copyright infringement.  Hence, he is entitled to qualified immunity as

8   a matter of law.  *Harlow*, 457 U.S. at 818; *cf. Chavez v. Arte Publico Press*, 59

9   F.3d 539, 547-48 (5th Cir. 1995) (dismissing individual capacity copyright claim

10  on a motion to dismiss), *remanded in part by Univ. of Houston v. Chavez*, 517 U.S.

11  1184, 116 S. Ct. 1667, 134 L. Ed. 2d 772 (1996) (remanding on the issue of

12  sovereign immunity but leaving dismissal of individual capacity claim

13  undisturbed).

14  **B.    AIME lacks constitutional standing.**

15       Article III of the U.S. Constitution imposes minimum requirements for a

16  party to have standing to bring a lawsuit.[9]  AIME asserts that it is entitled to bring

17  this action under Article III because it has "associational" standing.  Compl. ¶ 13.

18  In *Hunt v. Washington State Apple Advertising Commission*, the Supreme Court

19  identified three requirements for an association to bring suit on behalf of its

20  members:

21       (a)  its members would otherwise have standing to sue in their own

22       right; (b) the interests it seeks to protect are germane to the

23       organization's purpose; and (c) neither the claim asserted nor the

24       relief requested requires the participation of individual members in the

25  ─────────────────

26  [9]      As noted above, AIME is alleged to be a plaintiff only as to counts  II
    (copyright infringement), III (DMCA violation), and V (unjust enrichment).  As to

27  Count II, AIME seeks only injunctive relief.  Compl. ¶ 77.  As to Count III, AIME
    requests both injunctive and monetary relief, *id.* ¶ 83, and in Count V, AIME seeks

28  only damages, *id.* ¶ 90.

1    lawsuit.

2     432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)

3        AIME fails the first and third requirements.  Although the Complaint alleges

4    that AIME's "members have standing to sue on their own for infringement of

5    copyrights," there are no factual allegations to support this legal conclusion.  *See*

6    *Ashcrof v. Iqbal*, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (conclusory

7    allegations are "not entitled to be assumed true").  To establish that its members

8    have standing—the first requirement for associational standing—requires proof

9    that AIME's individual members own the necessary copyrights to the works used

10   by UCLA.  This necessarily requires participation of the individual AIME

11   members, which means that AIME cannot satisfy the third requirement for

12   associational standing.  The copyright infringement count requires an

13   individualized inquiry into what copyrights each AIME member owns that UCLA

14   allegedly infringed, whether those copyrights are valid, and the nature of any rights

15   conveyed by those members to UCLA when UCLA acquired copies of their

16   works.[10]  Similarly, the anti-circumvention count requires analysis of the particular

17   access controls that allegedly were circumvented for each work.  And the unjust

18   enrichment count also refers to "license agreements" for the allegedly infringed

19   works,  Compl. ¶ 90, the analysis of which would vary from DVD to DVD.

20   Finally, at least for counts III (DMCA violation) and V (unjust enrichment), AIME

21   appears to be seeking damages, which also would require participation of

22   individual AIME members.  *See Warth v. Seldin*, 422 U.S. 490, 515-16, 95 S. Ct.

23   2197, 45 L. Ed. 2d. 343 (1974) ("Thus, to obtain relief in damages, each member .

24   _____

25   [10]    To be sure, there are situations in which injunctive relief would not require
     individualized participation, because the injunctive relief sought is based on facts
     not specific to any particular person, with an injunction that is equally generalized.

26   *See, e.g., Olagues v. Russoniello*, 770 F.2d 791, 799 (9th Cir. 1985) (injunctive
     relief under the Voting Rights Act).  Here, the injunction sought would relate to

27   specific copyrighted works, and the factual predicate necessary for the injunction
     would require specific proof for each work at issue.

28

14

1  . . who claims injury as a result of respondents' practices must be a party to the suit

2  . . . .").

3      AIME cannot serve as an associational plaintiff, and all three of its claims

4  must be dismissed.

5  **C.    Neither Ambrose nor AIME has statutory standing to bring copyright infringement claims.**

6      Even where a plaintiff has constitutional standing, Congress can further limit

7  the class of individuals who are authorized to bring suit under its statutes.  *See*

8  *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1175 (9th Cir. 2004).  Congress has

9  imposed such a limitation for claims of copyright infringement: only "[t]he legal or

10  beneficial owner of an exclusive right under a copyright" can sue for copyright

11  infringement.  17 U.S.C. § 501(b); *see also Sybersound Records, Inc. v. UAV*

12  *Corp.*, 517 F.3d 1137, 1145 (9th Cir. 2008) ("Under copyright law, only copyright

13  owners and exclusive licensees of copyright may enforce a copyright or a

14  license.").

15      **1.    AIME cannot sue for copyright infringement.**

16      AIME, by its own admission, does not own any of the copyrights it seeks to

17  enforce.  Instead, it seeks to enforce the rights of its members.  *See* Compl. ¶ 13

18  (asserting only associational standing).  But "associational standing is not

19  permitted under the Copyright Act, which expressly limits standing to legal or

20  beneficial owners of exclusive rights."  6 Patry on Copyright § 21:28 (2010).

21  AIME's claim for copyright infringement must therefore be dismissed.

22      **2.    Ambrose has no standing to sue for copyright infringement.**

23      "Under copyright law, only copyright owners and exclusive licensees of

24  copyright may enforce a copyright or a license."  *Sybersound*, 517 F.3d at 1144.

25  The Complaint attaches only one copyright registration, for a "motion picture"

26  production of *Hamlet.  See* Compl., Ex. 12.  That registration lists the BBC and

27  Time-Warner as the owners of the copyright, not Ambrose.  *See id.*  Ambrose

28

15

1   alleges only that it is the exclusive distributor for the "A[mbrose] DVDs"

2   embodying the BBC and Time-Warner productions.  *See id.* ¶ 70.  This does not

3   preclude the possibility that the BBC and/or Time-Warner have retained the right

4   to distribute these works in other formats, or even on DVDs other than the

5   Ambrose DVDs.  As such, the Complaint alleges no more than that Ambrose is *a*

6   distributor of the "motion pictures" at issue.  An allegation that a party is simply a

7   distributor, without more, is not sufficient to confer standing under the Copyright

8   Act.  *See Comptoir De L'Industrie Textile De France v. Fiorucci, Inc.*, No. 78 Civ.

9   3923, 1979 WL 1062 (S.D.N.Y. Apr. 10, 1979).  Because Ambrose is not the

10  copyright owner, and has not adequately alleged that it is the exclusive licensee of

11  the distribution right, it has not established standing for its copyright infringement

12  claims.

13          Moreover, even if Ambrose were the exclusive distributor of the BBC/Time-

14  Warner works for which registration has been alleged, the distribution right for a

15  motion picture is limited to distribution of "copies" of the work.  17 U.S.C.

16  § 106(3).[11]  The Copyright Act only grants standing for an exclusive licensee to

17  sue for infringement of "that particular right."  *See* 17 U.S.C. § 501(b); *see also*

18  Nimmer on Copyright § 12:02[B] ("Of course, an exclusive licensee may not sue

19  for infringement of rights as to which he is not licensed, even if the subject matter

20  of the infringement is the work as to which he is a licensee.").  Ambrose, then, if it

21  is the exclusive distributor, can only sue for infringement of the right to distribute

22  copies.

23          The Copyright Act's definition of "copies" is limited to "material objects."

24  17 U.S.C. § 101.  Nowhere in the Complaint is there any allegation that UCLA has

25  distributed infringing *material objects* by sending DVDs to its students or

26

27  _____

    [11]      The statute also refers to distribution of "phonorecords," 17 U.S.C. § 106(3),
28  but the Copyright Act's definition of phonorecords excludes motion pictures and
    audiovisual works, *id.* § 101.

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM
CASE NO. CV10-09378 CBM (MANx)

1   otherwise.  While the videos may be streamed *using* material objects, the only

2   thing that is *distributed* is a secured link that provides access to digital bits that can

3   only be viewed—not downloaded or copied—and thus cannot infringe the

4   distribution right.  *Cf. Agee v. Paramount Comm'n*, 59 F.3d 317, 325 (2d Cir.

5   1995) ("[D]istribution is generally thought to require transmission of a 'material

6   object' in which the sound recording is fixed . . . .").  Therefore, there is no factual

7   basis for a claim of infringement of the right of distribution.

8        Instead, the Complaint purports to assert rights related to copying, public

9   performance, and public display.  Compl. ¶ 72.  But nowhere in the Complaint

10  does Ambrose allege it is the exclusive licensee of any of these rights, and so it has

11  no standing to assert them.  Any such claim must therefore be dismissed.

12  **D.     Plaintiffs' claims under California state law are preempted by the Copyright Act.**

13       "The Copyright Act specifically preempts 'all legal or equitable rights that

14  are equivalent to any of the exclusive rights within the general scope of

15  copyright.'"  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir.

16  2005) (quoting 17 U.S.C. § 301(a)).  Because the state law claims brought against

17  The Regents and Dr. Block "are equivalent to . . . the exclusive rights within the

18  general scope of copyright," they are preempted.

19       **1.     Claims for unjust enrichment are preempted by the Copyright Act.**

20

21       Unjust enrichment claims that seek recovery based solely on a defendant's

22  copying of a copyrighted work—such as the claim asserted here—are preempted.

23  As explained in *Del Madera Properties v. Rhodes & Gardner, Inc.*, a "promise not

24  to use or copy materials within the subject matter of copyright is equivalent to the

25  protection provided by section 106 of the Copyright Act."  820 F.2d 973, 977 (9th

26  Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

27  114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (reversing judgment denying attorneys'

28  fees, but otherwise affirming).  It is therefore preempted.  *Id.*  Because the instant

1    claim for unjust enrichment relies on the act of copying content, which is an

2    explicit protection under section 106, *see* 17 U.S.C. § 106(1), the claim is

3    preempted.

4        **2.    Claims for breach of contract and tortious interference are**

5            **preempted when they seek recovery based on the exclusive rights protected by the Copyright Act.**

6        The Copyright Act preempts claims for breach of contract where the contract

7    rights at issue are equivalent to rights regulated by the Copyright Act.[12]   The

8    preemption analysis depends on whether "the right in question is 'infringed by the

9    mere act of reproduction, performance, distribution or display.'"   *Selby v. New*

10   *Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061 (S.D. Cal. 2000) (quoting *Nat'l Car*

11   *Rental v. Computer Assoc.*, 991 F.2d 426, 432-33 (8th Cir. 1993)).  Prof. Nimmer

12   supports this approach:

13       [A]t times a breach of contract cause of action can serve as a

14       subterfuge to control nothing other than the reproduction, adaptation,

15       public distribution, etc. of works within the subject matter of

16       copyright. . . .   To the extent such a contract is determined to be

17       binding under state law, then that law may be attempting to vindicate

18       rights indistinguishable from those accorded by the Copyright Act.

19       Under that scenario, the subject contract cause of action should be

20       deemed pre-empted.

21   Nimmer on Copyright § 1.01[B][1][a].

22       Although the Ninth Circuit has not squarely considered the issue, it has

23   endorsed the distinction between contracts that control "use" of a copyrighted

24   work, which are not preempted, and contracts that control rights equivalent to the

25   _____

26   [12]    Claims for breach of contract and for tortious interference with contract turn
     on the same analysis.  *Compare Altera Corp.*, 424 F.3d at 1089 (analyzing tortious

27   interference claim), *and Nat'l Car Rental v. Computer Assoc.*, 991 F.2d 426, 432-
     33 (8th Cir. 1993) (analyzing breach of contract claim).  Therefore, this preemption

28   analysis applies to Plaintiffs' claims for breach of contract and tortious interference
     with contract.

537798.04

1   exclusive rights under copyright law, which are preempted.  *See Altera Corp.*, 424

2   F.3d at 1089 (distinguishing between a contract that controls the use of a work and

3   a contract that controls reproduction); *see also MDY Indus. v. Blizzard*

4   *Entertainment*, Nos. 09-15932, 09-16044, 2010 WL 5141269, at *21 (9th Cir. Dec.

5   14, 2010) ("We conclude that since Blizzard seeks to enforce contractual rights

6   that are *not equivalent* to any of its exclusive rights of copyright, the Copyright Act

7   does not preempt its tortious interference claim." (emphasis added)).  Other circuits

8   have endorsed the same distinction.  *See, e.g.*, *Nat'l Car Rental*, 991 F.2d at 432

9   (8th Circuit).

10         The alleged contract at issue here contains limitations on both UCLA's right

11   to use and its right to copy and publicly perform the content in question, but only

12   the latter limitation is alleged to have been breached.[13]  As alleged in the

13   Complaint, the contract states that UCLA has the right "to use the Content . . . in

14   an educational OR home video setting."  Compl. ¶ 24.  This restriction on use is

15   not alleged to have been breached, since the Complaint does not dispute that the

16   use in question took place in an educational setting.

17         However, the alleged contract goes on to limit UCLA's right to "duplicate[],

18   broadcast, transmit . . . , or display[]" the content.  *Id.*  The Complaint alleges that

19   this term was breached, and it is this term that seeks to control conduct that is

20   equivalent to exclusive rights under copyright law.  *See* 17 U.S.C. §§ 106(1)

21   (protecting the right to copy), 106(4) (protecting the right to perform a motion

22   picture).  The alleged contractual obligation is therefore preempted under *Altera*

23   and *Blizzard*.  *See also Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal.

24   2009) (holding a breach of contract claim to be preempted because it "alleges

25   _____

26   [13]     Because Plaintiffs' claim for breach of the implied covenant of good faith
     and fair dealing challenges the identical conduct, it too is preempted.  In any event,
27   where a claim for breach of the implied covenant of good faith relies on the same
     allegations as a claim for breach of contract, the good faith claim must fail.
28   *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, No. CV 03-5834, 2005 WL
     4715213 at *9 (C.D. Cal. Apr. 28, 2005).

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM
CASE NO. CV10-09378 CBM (MANx)

537798.04

1   violations of the exact same exclusive federal rights protected by Section 106 of

2   the Copyright Act").  Plaintiffs' claims for breach of contract and tortious

3   interference with contract must therefore be dismissed.

4   **E.    Plaintiffs fail to state a cause of action under the DMCA.**

5        The third cause of action in the Complaint alleges a violation of the

6   anticircumvention provisions of 17 U.S.C. § 1201.  First, Plaintiffs purport to bring

7   a claim under § 1201(b) alleging that "Defendants are liable . . . for UCLA's

8   circumventing AVP's technological measures that effectively control . . . *copying*

9   of its programs."  Compl. ¶ 44 (emphasis added).  Section 1201(b), however, does

10  not prohibit the circumvention of a copy-control technology.  Rather, its

11  protections reach only the *trafficking* in devices that circumvent copy-control

12  technologies.  By prohibiting only trafficking in devices that circumvent copy-

13  controls, and not the circumvention itself, § 1201(b) differs from § 1201(a), which

14  prohibits both the circumvention of access controls *and* the trafficking in devices

15  that circumvent such controls.  *See Blizzard*, 2010 WL 5141269, at *10-13

16  (explaining the asymmetry between § 1201(a)(1) and § 1201(b)).  Plaintiffs' claim

17  for violation of Section 1201(b) based on the circumvention of copy-control

18  technology must therefore be dismissed.

19       Second, the Complaint fails to allege that any technological measure

20  controlling access to a work was circumvented in violation of Section 1201(a)(1).

21  According to the Complaint itself, UCLA had a right to access the DVDs.  *See*

22  Compl. ¶¶ 24 ("AVP grants to the Licensee a . . . license to use the Content . . . .");

23  32.  Therefore, there was nothing unlawful about the access itself.  Instead, the

24  claim is that UCLA unlawfully made use of the material in violation of the

25  copyright owners' exclusive rights, which does not state a claim under section

26  1201(a)(1).  Regardless of whether there was something wrongful about what was

27  done after the DVDs were lawfully accessed—namely, the process of converting

28  the contents into a format capable of being streamed over UCLA's password-

20

537798.04

1  protected, secured intranet—such conduct does not concern the unauthorized

2  circumvention of a measure controlling "access."  *See* Nimmer on Copyright §

3  12A.03[D][3].

4         Third, the Complaint fails to allege facts supporting an inference that

5  Defendants have trafficked in devices that circumvent access-controls in violation

6  of § 1201(a)(2), or devices that circumvent copy-controls in violation of § 1201(b).

7  Compl. ¶¶ 80, 81.  The only factual basis for Plaintiffs' trafficking assertion is that

8  UCLA allegedly "worked in close coordination" with the company that makes

9  Video Furnace, the product UCLA uses to prepare digital copies of DVDs that can

10  then be streamed digitally.  Id. ¶ 45.  Even assuming the truth of this allegation,

11  working with a company is not the same as trafficking in its products.  "Threadbare

12  recitals of the elements of a cause of action, supported by mere conclusory

13  statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949-50.

14         Plaintiffs also allege that UCLA "assisted" in the development Video

15  Furnace, that it "acted in concert" in that development, and that this constitutes

16  "trafficking."  *See* Compl. ¶¶ 46-49.  Plaintiffs, however, allege no facts beyond

17  UCLA's supposed assistance with the development of Video Furnace.  The leap

18  from the alleged fact of involvement in development to the legal conclusion of

19  trafficking in the finished device is unsupported.  *See Bell Atl. Corp. v. Twombly*,

20  550 U.S. 544, 555 (2007) ("a formulaic recitation of the elements of a cause of

21  action will not do").  In order to state a claim, the factual allegations in a

22  Complaint "must be enough to raise a right to relief above the speculative level."

23  *Id.*  Because the claim does not "contain sufficient factual matter, accepted as true,

24  to state a claim to relief that is plausible on its face," it must be dismissed.  *Iqbal*,

25  129 S. Ct. at 1949 (quotation marks and citation omitted).

26      **IV.  CONCLUSION**

27         Plaintiffs have failed to allege any viable cause of action.  Most importantly,

28  despite a constitutional amendment and more than two hundred years of precedent

21

to the contrary, Plaintiffs ask this Court to issue a judgment against an agency of a sovereign state.  The Eleventh Amendment strips this Court of jurisdiction to hear such a case, and it must therefore be dismissed.  The Complaint also improperly sues an individual who is not alleged to have participated in the supposedly wrongful conduct, and who is in any event protected by qualified immunity.

Moreover, even if there were no Eleventh Amendment or other immunity, Plaintiffs do not have standing to bring the claims at the core of this case.  AIME, which owns no copyright at issue in this case, has no standing as a matter of both constitutional and statutory law.  Ambrose similarly owns no relevant copyright, and fails to allege facts suggesting that it otherwise has statutory standing to bring an action for copyright infringement.  Perhaps recognizing the futility of their copyright claims, Plaintiffs also seek to enforce those same rights by means of claims under state law.  Such an effort must fail, as those state law claims are preempted by the Copyright Act.  Finally, the Complaint fails to allege facts supporting any cause of action under the DMCA.

As all claims are barred, The Regents and Dr. Block's motion to dismiss should be granted and Plaintiffs' complaint dismissed in its entirety without leave to amend.

Dated:  January 24, 2011                    KEKER & VAN NEST LLP


                                            By:  /s/ R. James Slaughter
                                            ROBERT A. VAN NEST
                                            R. JAMES SLAUGHTER
                                            MICHAEL S. KWUN
                                            ANDREW F. DAWSON
                                            Attorneys for Defendants
                                            The Regents of the University of
                                            California and Dr. Gene Block

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM
CASE NO. CV10-09378 CBM (MANx)

537798.04