KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
R. JAMES SLAUGHTER - #192813
rslaughter@kvn.com
MICHAEL S. KWUN - #198945
mkwun@kvn.com
ANDREW F. DAWSON - #264421
adawson@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
T: 415-391-5400/F: 415-397-7188

JONATHAN BAND - #122369
jband@policybandwidth.com
21 Dupont Circle NW, 8th Floor
Washington, DC 20036
T: 202-296-5675/F: 202-872-0884

CHARLES F. ROBINSON - #113197
charles.robinson@ucop.edu
KAREN J. PETRULAKIS - #168732
karen.petrulakis@ucop.edu
ERIC K. BEHRENS - #79440
eric.behrens@ucop.edu
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
T: 510-987-9800/F: 510-987-9757

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ASSOCIATION FOR INFORMATION MEDIA AND EQUIPMENT, an Illinois nonprofit membership organization; and AMBROSE VIDEO PUBLISHING, INC., a New York corporation,<br><br>                              Plaintiffs,<br><br>     v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation; MARK G. YUDOF, an individual; DR. GENE BLOCK, CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA, LOS ANGELES, an individual; DR. SHARON FARB, an individual; LARRY LOEHER, an individual; PATRICIA O'DONNELL, an individual; and John Does 1-50,<br><br>                              Defendants. | Case No. 10-cv-09378 CBM (MANx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        May 2, 2011<br>Time:        11:00 a.m.<br>Dept:        Courtroom 2<br>Judge:       Hon. Consuelo B. Marshall<br><br>Date Comp. Filed: December 7, 2010 |

# NOTICE OF MOTION AND MOTION TO DISMISS

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on May 2, 2011, at 11:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the United States District Court, 312 North Spring St., Los Angeles, California 90012, Defendants will and hereby do move this Court to dismiss Plaintiffs' Amended Complaint because of a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Proposed Order, all pleadings and papers filed herein, the oral argument of counsel, and any other matter that may be submitted at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 9, 2011.


Dated:  March 14, 2011                              KEKER & VAN NEST LLP


                                         By:   /s/ R. James Slaughter
                                               R. JAMES SLAUGHTER
                                               Attorneys for Defendants
                                               THE REGENTS OF THE
                                               UNIVERSITY OF CALIFORNIA, a
                                               California corporation; MARK G.
                                               YUDOF, an individual; DR. GENE
                                               BLOCK, CHANCELLOR OF THE
                                               UNIVERSITY OF CALIFORNIA,
                                               LOS ANGELES, an individual; DR.
                                               SHARON FARB, an individual;
                                               LARRY LOEHER, an individual;
                                               PATRICIA O'DONNELL, an
                                               individual.

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL ALLEGATIONS ................................................................. 4

III.  ARGUMENT .......................................................................................... 5

    A.   Defendants Are Immune From Suit. .................................................. 5

        1.   Claims for damages against The Regents and the individual defendants in their official capacities must be dismissed. ................................................. 5

            a.   A state's waiver of sovereign immunity must be express and unambiguous, and cannot be implied. ................................. 5

            b.   Congress's attempt to abrogate state sovereign immunity for claims of copyright infringement is invalid. ....................... 7

        2.   Claims for injunctive relief as to President Yudof and Dr. Block must be dismissed because the Complaint fails to allege any facts as to their involvement in the events alleged. ........................... 9

    B.   Defendants Are Entitled to Qualified Immunity as to Copyright Claims Asserted Against Them in Their Individual Capacities. ...................................................... 11

    C.   AIME Has No Standing to Sue Under the Declaratory Judgment Act. ................................................................. 15

        1.   AIME cannot establish associational standing. ........................ 15

        2.   AIME has not suffered an injury in fact. ................................. 17

    D.   Ambrose Cannot State a Claim for Copyright Infringement. ..................................................................... 18

    E.   Ambrose Fails to State a Cause of Action Under the DMCA. .................................................................................. 20

    F.   Ambrose's Claims Under California State Law are Preempted by the Copyright Act or are Otherwise Barred. ............... 21

        1.   Ambrose's unjust enrichment and tortious interference claims are preempted. ................................. 22

2.      Ambrose's breach of contract claims are preempted because they seek recovery based on the exclusive rights protected by the Copyright Act..........................................................................23

IV.     CONCLUSION ............................................................................24

MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Federal Cases

*Agee v. Paramount Comm'n*
  59 F.3d 317 (2d Cir. 1995)..................................................................... 19

*Altera Corp. v. Clear Logic, Inc.*
  424 F.3d 1079 (9th Cir. 2005)......................................................... 22, 24

*Armstrong v. Meyers*
  964 F.2d 948 (9th Cir. 1991)..................................................................... 2

*Ashcrof v. Iabal*
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 16

*Atascadero State Hosp. v. Scanlon*
  473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985)................... 6, 7

*B. Braun Medical, Inc. v. Abbott Labs.*
  124 F. 3d 1419 (Fed. Cir. 1997)............................................................ 17

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)................................................................................ 21

*Brosseau v. Hagan*
  543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)...................... 12

*Cahill v. Liberty Mut. Ins. Co.*
  80 F.3d 336 (9th Cir. 1996)..................................................................... 4

*Chavez v. Arte Publico Press*
  204 F.3d 601 (5th Cir. 2000)............................................................... 8, 9

*Chavez v. Arte Publico Press*
  59 F.3d 539 (5th Cir. 1995)................................................................... 15

*City of Boerne v. Flores*
  521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)...................... 8

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*
  527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)................. 6, 8

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*
  109 F.3d 1394 (9th Cir. 1997)............................................................... 14

*Edelman v. Jordan*
  415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)......................... 9

*Employees of Dep't of Pub. Health & Welfare v. Mo. Pub. Health Dep't*
  411 U.S. 279, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973)......................... 5

*Ex parte Young*
  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)................... 9, 10, 11

*Falcon Enters., Inc. v. Nobel Developments, Inc.*
  CV06-1404, 2007 WL 737347 (W.D. Wash. Mar. 5, 2007) .............. 22

*Fla. Dept. of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*
  450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981)................... 6, 7

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*
   527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999)................................ 8, 9

*Green v. Mansour*
   474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) .................................... 5

*Harlow v. Fitzgerald*
   457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).............................. 12, 15

*Harper & Row v. Nation Enters.*
   471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) .................................... 13

*Hunt v. Washington State Apple Advertising Commission*
   432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)............................... 15

*Hunter v. Bryant*
   502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) .................................... 12

*Jackson v. Hayakawa*
   682 F.2d 1344 (9th Cir. 1982)................................................................ 5

*Jacobsen v. Katzer*
   609 F. Supp. 2d 925 (N.D. Cal. 2009) .......................................................... 24

*Kennecott Copper Corp. v. State Tax Comm'n*
   327 U.S. 573, 66 S. Ct. 745, 90 L. Ed. 2d 862 (1946)...................................... 6, 7

*Kerby v. Parsons Corp.*
   No. C06-687. 2007 WL 2570248 (W.D. Wash. Aug. 31. 2007).............................................................................. 17

*Los Angeles Cnty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992).................................................................. 11

*Marketing Info. Masters. Inc. v. Bd. of Trustees of the Cal. State Univ. Sys.*
   552 F. Supp. 2d 1088 (S.D. Cal. 2008) ........................................... 5, 8, 9

*Montz v. Pilgrim Films & Tel.. Inc.*
   606 F.3d 1153 (9th Cir. 2010)................................................................ 24

*Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*
   No. 08-13417, 2011 WL 649951 (11th Cir. Feb. 24, 2011) ............................ 8, 9

*Nat'l Car Rental v. Computer Ass'n*
   991 F.2d 426 (8th Cir. 1993)................................................................ 24

*Oldcastle Precast. Inc. v. Granite Precasting & Concrete. Inc.*
   No. C10-322, 2010 WL 2217910 (W.D. Wash. June 1, 2010)...................... 22, 23

*Pearson v. Callahan*
   129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ..................................................... 12

*Pennhurst State Sch. & Hosp. v. Halderman*
   465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ........................................ 5, 9

*Pennington Seed. Inc. v. Produce Exchange No. 299*
   457 F.3d 1334 (Fed. Cir. 2006)............................................................. 10, 11

*Perfect 10. Inc. v. Amazon.com. Inc.*
   508 F.3d 1146 (9th Cir. 2007)................................................................ 19

MOTION TO DISMISS AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Principal Life Ins. Co. v. Robinson*
    394 F.3d 665 (9th Cir. 2005)..........................................................17

*Saucier v. Katz*
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).................12

*Sega Enters. v. Accolade. Inc.*
    977 F.2d 1510 (9th Cir. 1993).......................................................20

*Selby v. New Line Cinema Corp.*
    96 F. Supp. 2d 1053 (S.D. Cal. 2000)...........................................23

*Seminole Tribe of Florida v. Florida*
    517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).....................8

*Sony Corp. of Am. v. Universal City Studios. Inc.*
    464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984).....................14

*Spann v. Colonial Village. Inc.*
    899 F.2d 24 (D.C. Cir. 1990) ........................................................18

*Sybersound Records. Inc. v. UAC Corp.*
    517 F.3d 1137 (9th Cir. 2008)......................................................16

*Thompson v. Ill. Dept. of Prof. Regulation*
    300 F.3d 750 (7th Cir. 2002)...........................................................4

*Univ. of Houston v. Chavez*
    517 U.S. 1184, 116 S. Ct. 1667, 134 L. Ed. 2d 772 (1996).............15

*Walker v. City of Lakewood*
    272 F.3d 1114 (9th Cir. 2001)......................................................18

*Worldwide Church of God v. Philadelphia Church of God. Inc.*
    227 F.3d 1110 (9th Cir. 2000)......................................................19

*Zito v. Steeplechase Films. Inc.*
    267 F. Supp. 2d 1022 (N.D. Cal. 2003) ........................................22

**State Cases**

*Careau & Co. v. Sec. Pac. Bus. Credit. Inc.*
    222 Cal. App. 3d 1371 (1990)......................................................24

*Minor v. Minor*
    184 Cal. App. 2d 118 (1960)........................................................23

**Federal Statutes**

17 U.S.C. § 101.............................................................................19

17 U.S.C. § 106(3).........................................................................19

17 U.S.C. § 107........................................................................13, 15

17 U.S.C. § 501(b).........................................................................17

17 U.S.C. § 511...........................................................................8, 9

17 U.S.C. § 1201......................................................................20, 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**State Statutes**

California Government Code § 820.2 ........................................................... 4, 21, 25

**Constitutional Provisions**

Eleventh Amendment .......................................................................... *passim*

Fourteenth Amendment ............................................................................. 8

**Other Authorities**

H.R. Rep. No. 94-1476 (1976) ................................................................ 13

MOTION TO DISMISS AMENDED COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs filed their initial complaint on December 7, 2010, and alleged six causes of action.  *See* Doc. 1.  Plaintiffs seek to impose liability for the streaming of lawfully purchased video content in The University of California, Los Angeles's ("UCLA") instructional development media lab and in its physical and virtual classrooms.  Plaintiffs brought this suit even though such use is directly related to the pedagogical purposes of specific classes, is at the direction of the instructor of record, is restricted to only those students enrolled in the specific class for which the video was assigned, and is accessible only during the term of the class.

Plaintiffs' initial complaint was fatally flawed for a number of independent reasons.  Among other problems, the original complaint asserted claims barred by the Eleventh Amendment to the U.S. Constitution, failed to specify which plaintiff brought which claims, alleged claims for which neither plaintiff had standing, sued individual defendants who did not participate in any way in the events alleged, and sought to assert rights under state law that are preempted by the Copyright Act. Defendants therefore moved to dismiss the action.  *See* Doc. 16.

Plaintiffs did not oppose Defendants' motion, and instead filed an amended complaint on February 14, 2011.  *See* Doc. 19.  But rather than cure the deficiencies pointed out by Defendants' motion, Plaintiffs have doubled down. They now allege more claims, sue more individual defendants unconnected to the underlying facts, and assert more preempted state-law causes of action.  Rather than drop the claims barred by the Eleventh Amendment, Plaintiffs instead attach hundreds of pages of irrelevant exhibits that Plaintiffs claim reflect Defendants' implied waiver of sovereign immunity, despite the fact that the Supreme Court has rejected similar claims of implied waiver.  Further, while Plaintiffs now recognize that there is no such thing as associational standing in copyright infringement suits, rather than drop the claim, Plaintiffs attempt to repackage the same infringement

MOTION TO DISMISS AMENDED COMPLAINT

1  claim as a claim under the Declaratory Judgment Act.  These amendments not only

2  fail to save Plaintiffs' claims, they create new problems that require dismissal.

3         Plaintiffs' Amended Complaint alleges nine causes of action against The

4  Regents of the University of California ("The Regents")[1]; Mark G. Yudof

5  ("President Yudof"), Dr. Gene Block ("Dr. Block"), Dr. Sharon Farb, Larry

6  Loeher, and Patricia O'Donnell.  Yudof is the President of the University of

7  California, and the other individual defendants are all current or former officials at

8  UCLA.  The causes of action alleged are breach of contract, anticipatory breach of

9  contract, copyright infringement, declaratory relief, violation of the Digital

10  Millennium Copyright Act's ("DMCA") anti-circumvention provisions, breach of

11  the implied covenant of good faith and fair dealing, unjust enrichment, and tortious

12  interference with contract and prospective business relations.[2]

13         All claims must be dismissed.  First, both The Regents and the individual

14  defendants in their official capacities are protected by the Eleventh Amendment.

15  Moreover, because the Complaint fails to allege a violation of clearly established

16  law, the individual defendants are protected by qualified immunity and cannot be

17  held personally liable for violations of federal law.  Similarly, California exempts

18  public employees from personal liability under state law where the conduct

19

20  [1]  As the Amended Complaint's caption reflects, The Regents of the University of
    California is a California corporation.  *See also Armstrong v. Meyers*, 964 F.2d
21  948, 949-50 (9th Cir. 1991) (noting that the Board of Regents is "a corporation
    created by the California constitution").  Nevertheless, the Complaint elsewhere
22  purports to sue The Regents "in their individual capacities as members of the
    Board of Regents."  Am. Compl. ¶ 1.  These individuals have not been served, and
23  the Complaint does not allege that any particular member was involved in any of
    the events alleged in the Complaint, nor does it name these individuals in the
24  caption.  Indeed, it is hard to imagine how some board members—such as newly
    elected Governor Jerry Brown—could plausibly have been involved.  Accordingly,
25  the Complaint fails to allege any facts stating a plausible claim for relief as to any
    particular member of the Board.  This Motion therefore treats The Regents solely
26  as an official arm of the state.  This Motion is filed only on behalf of those
    defendants who have been served.
27  [2]  The Association for Information Media and Equipment ("AIME") is the sole
    plaintiff for the declaratory relief claim, and Ambrose Video Publishing, Inc.
28  ("Ambrose"), is the sole plaintiff for the remaining claims.

2

MOTION TO DISMISS AMENDED COMPLAINT

1  challenged was a matter of discretion.  Therefore, every claim against the

2  individual defendants in their individual capacities must also be dismissed.

3      Even if Defendants were not immune from suit, the Association for

4  Information Media and Equipment ("AIME") lacks standing under Article III to

5  bring its claim for declaratory relief.  And even if it had such constitutional

6  standing, its suit for declaratory relief is merely a suit for copyright infringement

7  repackaged in different terms.  As Defendants pointed out in their first motion to

8  dismiss, AIME has no statutory standing to sue for infringement.

9      And while Ambrose may have *standing* to sue for copyright infringement, it

10  does not state a claim for copyright infringement.  The attachments to its complaint

11  reflect that Defendants have the right to publicly perform the works in question.

12  Ambrose fails to adequately allege infringement of any other protected right, and

13  regardless, any such incidental infringement would be a non-infringing fair use.

14  Thus, Ambrose's copyright claims fail for this independent reason.

15      The Complaint also fails to allege a plausible claim for violation of the

16  DMCA's anti-circumvention provisions.  Ambrose does not allege any facts

17  demonstrating that Defendants bypassed its access controls.  To the contrary, the

18  Complaint alleges that UCLA had a *license* to access the content.  Whether or not

19  that content was subsequently copied is irrelevant to a claim that an access control

20  was circumvented.  Moreover, while Plaintiffs allege in a conclusory manner that

21  UCLA "trafficked" in forbidden anti-circumvention devices, the facts alleged do

22  not support such a conclusion.  The DMCA claims must therefore be dismissed.

23      Additionally, Plaintiffs' state-law causes of action are preempted by the

24  Copyright Act.  These claims seek damages for conduct that is regulated

25  exclusively by the Copyright Act, and state law can neither expand nor diminish

26  those rights.  Moreover, Ambrose's factual allegations are insufficient to support

27  liability under state law.  First, under California law, a party cannot be sued for

28  anticipatory breach of contract when the contract in question is unilateral.  Second,

1   the individual defendants are all immune from liability pursuant to California

2   Government Code § 820.2.  Claims against the individual defendants under state

3   law must be dismissed.

4          For all these reasons, the Amended Complaint must be dismissed.  Because

5   Plaintiffs have already had the opportunity to cure the deficiencies of their

6   complaint and have failed to do so, dismissal should be with prejudice.

7                      **II.     FACTUAL ALLEGATIONS**

8          While Plaintiffs' complaint is lengthy, their theory of liability is simple:

9   Plaintiffs allege that UCLA has purchased a number of DVDs, and has been

10   improperly "streaming"[3] the contents of these DVDs to faculty and students at

11   UCLA without Plaintiffs' permission.  *See* Amended Complaint ("Am. Compl.")

12   ¶¶ 3-6, 41-45.[4]

13          Plaintiffs attached to the Amended Complaint a copy of the Ambrose video

14   catalogue, which they contend applies to UCLA's purchases.  *Id.*, ex. 8.  The

15   catalogue contains the following notice in bold print: "**All purchases by schools**

16   **and libraries include public performance rights."**  *Id.* (at p. 71 of Doc. 19-2).

17   Similarly, Exhibit 7 indicates that the listed purchase prices for Ambrose DVDs

18   "include public performance rights."  *Id.*, ex. 7 at 4.  Despite this unambiguous

19   license, the instant complaint alleges that UCLA's streaming infringes Ambrose's

20   exclusive public performance right.  *See id.* ¶ 93.

21

22   _____

[3]   "Streaming" is defined in the Amended Complaint as a process whereby video
23   content is "distributed in compressed form over the Internet."  Am. Compl. ¶ 42.
     With streaming video, "the user does not have to wait to download an entire
24   program to begin viewing; rather, the compressed data is decompressed and
     transmitted from a temporary file to a video display as a continuous 'stream' of
25   video files."  *Id.*

[4]   As they must for purposes of this motion, Defendants assume the truth of all
26   properly pleaded factual allegations in the Amended Complaint.  *See Cahill v.*
     *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, where an
27   exhibit attached to a complaint contradicts the assertions in the complaint, "the
     exhibit trumps the allegations."  *Thompson v. Ill. Dept. of Prof. Regulation*, 300
28   F.3d 750, 754 (7th Cir. 2002) (quotation marks and citation omitted).

# III.   ARGUMENT

## A.   Defendants Are Immune From Suit.

### 1.   Claims for damages against The Regents and the individual defendants in their official capacities must be dismissed.

"[A]n unconsenting State is immune from suits brought in federal courts." *Employees of Dep't of Pub. Health & Welfare v. Mo. Pub. Health Dep't*, 411 U.S. 279, 280, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973).  "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (quotation marks omitted).  "Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."  *Id.*  For this reason, "[s]tate sovereign immunity extends to government officials that are sued for damages in their official capacity."  *Marketing Info. Masters, Inc. v. Bd. of Trustees of the Cal. State Univ. Sys.*, 552 F. Supp. 2d 1088, 1095 (S.D. Cal. 2008).

Eleventh Amendment immunity applies unless the state consents to be sued or Congress validly overrides the state's immunity.[5]  *See Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985).  Neither California nor The Regents has consented to be sued, nor has Congress validly overridden California's immunity.  Therefore, immunity applies.

#### a.   A state's waiver of sovereign immunity must be express and unambiguous, and cannot be implied.

Plaintiffs' Amended Complaint includes new allegations and voluminous exhibits purporting to reflect The Regents' waiver of sovereign immunity.  *See* Am. Compl. ¶¶ 19-23, exs. 3-7.  The "test for determining whether a State has

---

[5]  The Regents is an "arm of the state," and therefore entitled to the protections of the Eleventh Amendment.  *See Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) ("[T]he University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment.").

MOTION TO DISMISS AMENDED COMPLAINT

waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985) (superseded by statute on other grounds).  "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a *clear declaration* that it intends to submit itself to our jurisdiction." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotation marks omitted; emphasis added).

The Supreme Court has repeatedly declined to find such a "clear declaration" absent unambiguous, unqualified, and explicit language.  For example, the Supreme Court has rejected a finding of waiver even where a state has specifically authorized suits against it "in any court of competent jurisdiction." *See Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577-79, 66 S. Ct. 745, 90 L. Ed. 2d 862 (1946).  Because the waiver did not specifically waive immunity in *federal* court, it was ineffective.  *Id.* at 580.  Similarly, a state does not consent to suit in federal court merely by stating its intention to "sue and be sued." *Fla. Dept. of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 149, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981) (per curiam).  This is so even where the state entity "agreed explicitly to obey federal law . . . ."  *Id.* at 150.  More recently, the Supreme Court clarified that state sovereign immunity cannot be impliedly waived.  *See College Sav. Bank*, 527 U.S. at 682 (noting that a waiver of *federal* sovereign immunity must in all circumstances be express, and holding that there is "no reason why the rule should be different with respect to state sovereign immunity").

Plaintiffs allege that the exhibits attached to the complaint reflect "an express waiver of any claim to sovereign immunity with respect to Plaintiffs' claims herein."  *Id.* ¶ 22.  This is absurd.  Neither the allegations in the complaint nor the documents attached thereto mention federal court, let alone waive

MOTION TO DISMISS AMENDED COMPLAINT

sovereign immunity.  Plaintiffs point to the University of California's commitment to "uphold[ing] copyright law," Am. Compl. ¶ 19, and various provisions of the University's Electronic Communications Policy that detail that commitment.  But the Supreme Court has already found that a promise to obey federal law does not constitute a waiver of Eleventh Amendment immunity.  *See Fla. Dept. of Health*, 450 U.S. at 150.  Indeed, the Supreme Court found that such a promise, even when coupled with the express consent to "sue and be sued," did not waive immunity. *Id.* at 149.  Therefore, it cannot be that a bare commitment to uphold federal law, without any reference to consent to be sued, amounts to such a waiver.

Plaintiffs also point to terms of the alleged license agreements and suggest that these licenses "expressly waived any claim to sovereign immunity or qualified immunity."  Am. Compl. ¶ 23.  Nothing in the licenses suggests any waiver, implicit or explicit.  Both licenses, as alleged in the Amended Complaint, provide that "[n]othing herein shall derogate from any rights of Ambrose . . . under the United States Copyright Law."  That is not an express waiver of anything.  The Amended Complaint fails to explain how this could constitute an express waiver of sovereign immunity.  The language merely suggests that no other contractual term in the agreement undermines Ambrose's rights under Copyright Law.  This has nothing at all to do with a state's consent to be sued in federal court.

Under *College Savings Bank*, *Florida Department of Health*, *Atascadero*, and *Kennecott*, the Amended Complaint fails to allege facts indicating that California has waived its sovereign immunity.

### b.  Congress's attempt to abrogate state sovereign immunity for claims of copyright infringement is invalid.

If a state has not waived its immunity, it is subject to suit only if Congress has validly abrogated its immunity.  In order to determine whether Congress has done so, a court must look to two factors: "(1) whether Congress expressed a clear intent to override the state's immunity and (2) whether Congress acted pursuant to

MOTION TO DISMISS AMENDED COMPLAINT

a constitutional grant of authority."  *Marketing Info.*, 552 F. Supp. 2d at 1092.

Congress has not attempted to abrogate California's immunity as to the state law claims.  Moreover, as several courts have found, Congress's attempt to abrogate immunity as to claims brought under the Copyright Act, *see* 17 U.S.C. § 511, is invalid.  *See Chavez v. Arte Publico Press*, 204 F.3d 601, 604 (5th Cir. 2000); *Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 08-13417, 2011 WL 649951, at *12-19 (11th Cir. Feb. 24, 2011); *Marketing Info.*, 552 F. Supp. 2d at 1095.

Congress has no authority to abrogate sovereign immunity pursuant to its Article I powers.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  Section 511, then, is constitutional only if enacted pursuant to Congress's enforcement powers under section 5 of the Fourteenth Amendment.  *See id.* at 59.  Congress's enforcement powers under the Fourteenth Amendment, however, are limited to remedial measures.  *City of Boerne v. Flores*, 521 U.S. 507, 515-17, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).  The Supreme Court has held that two analogous attempts to abrogate the states' immunity—for claims of patent and trademark infringement—were void as outside the scope of Congress's enforcement powers.  *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999) (holding invalid Congress's attempt to abrogate Eleventh Amendment immunity for patent infringement); *College Sav. Bank*, 527 U.S. 666 (same as to trademark infringement).  For example, Congress's attempt to abrogate the Eleventh Amendment for patent claims was invalid because it did not "respond to a history of 'widespread and persisting deprivation of constitutional rights' of the sort Congress has faced in enacting proper prophylactic § 5 legislation."  *Fla. Prepaid*, 527 U.S. at 645 (quoting *City of Boerne*, 521 U.S. at 526).

In contrast to the legislative history for the Patent Remedy Act, which

1  demonstrated Congress's intent to rely on its Enforcement Clause powers,

2  Congress did not even attempt to invoke its Enforcement Clause powers in

3  enacting § 511.  *See Chavez v. Arte Publico Press*, 204 F.3d 601, 604 (5th Cir.

4  2000).  Moreover, far from suggesting a widespread practice of copyright

5  infringement by the states, the legislative history for § 511 suggests that copyright

6  infringement by the states is a relatively infrequent problem.  *See id.* at 605-06.

7  Not surprisingly, then, every court to confront the issue has concluded that § 511

8  did not validly abrogate the Eleventh Amendment.  *See id.* at 607; *Nat'l Assoc. of*

9  *Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 08-13417, 2011

10  WL 649951, at *12-19 (11th Cir. Feb. 24, 2011); *Marketing Info.*, 552 F. Supp. 2d

11  at 1095.

12       Therefore, the claims against The Regents and against the individual

13  defendants in their official capacities are impermissible suits against the State of

14  California.

15       **2.    Claims for injunctive relief as to President Yudof and Dr. Block**
            **must be dismissed because the Complaint fails to allege any facts**
16          **as to their involvement in the events alleged.**

17       The only exception to Eleventh Amendment immunity was first recognized

18  by *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  Under *Ex*

19  *parte Young* and its progeny, the Eleventh Amendment does not bar a suit against a

20  state official that seeks only prospective injunctive relief for that official's

21  violation of federal law.[6]  *See Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39

22  L. Ed. 2d 662 (1974).  However, a plaintiff cannot maintain a suit under *Ex parte*

23  *Young* simply by naming any official tangentially involved in an alleged violation

24  of federal law.  The named official must be more than simply a supervisory

25  ─────────────────────
   [6]  The Supreme Court has held that *Ex parte Young* applies only to violations of
26  federal law, not state law.  *See Pennhurst*, 465 U.S. at 106 ("We conclude that
   *Young . . .* [is] inapplicable in a suit against state officials on the basis of state
27  law.").  Therefore, Plaintiffs cannot seek prospective relief under *Ex parte Young*
   for the state law claims.

28

9

official.  *See Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006).

Plaintiffs' requests for injunctive relief under the Copyright Act against President Yudof and Dr. Block cannot be justified under *Ex parte Young*:[7]  "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.  "When a violation of federal law is alleged . . . the state official whose actions violate that law is the rightful party to the suit and prospective injunctive relief can only be had against him."  *Pennington Seed*, 457 F.3d at 1342.

In the educational context, this forbids a suit against a university official who has a general duty to supervise activities at the university.  In *Pennington Seed*, the Federal Circuit held that such a supervisor is not a proper defendant under *Ex parte Young*:

> Allegations that a state official directs a University's patent policy are insufficient to causally connect that state official to a violation of federal patent law—i.e., patent infringement.  A nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual.  The fact that a University Official has a general, state-law obligation to oversee a University's patent policy does not give rise to a violation of federal patent law.

---

[7]  To the extent the Amended Complaint properly names other officials subject to an *Ex parte Young* claim, the claims fail for the substantive reasons discussed below.  *See infra* Parts III.C-III.E.

MOTION TO DISMISS AMENDED COMPLAINT

545651.03

*Id.* at 1342-43 (citations omitted).

Here, the Complaint does not allege that President Yudof or Dr. Block had anything to do with the challenged streaming. They did not select which videos to stream, determine the process by which they would be streamed, stream the videos, or do anything to set up that streaming. Merely alleging that they are in some way "in charge" is not sufficient to invoke *Ex parte Young*.[8] *See Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("This connection [between defendant and act] must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.").

Because President Yudof and Dr. Block merely are alleged to have "general supervisory power over the persons responsible for enforcing the challenged provision," Plaintiffs have failed to allege that they are proper parties under *Ex parte Young*.

**B.    Defendants Are Entitled to Qualified Immunity as to Copyright Claims Asserted Against Them in Their Individual Capacities.**

Sovereign immunity does not extend to suits against officials acting in their individual capacities. However, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (internal quotation marks and citation omitted). Because the

---

[8]  For the same reason, the claims asserted against President Yudof and Dr. Block in their individual capacities must be dismissed. Because the Amended Complaint fails to allege any facts as to their participation, it fails to allege any cause of action.

1  individual defendants are all entitled to qualified immunity, the claims against

2  them in their individual capacities must also be dismissed.

3        Qualified immunity can only be overcome if a reasonable official would

4  have known that the alleged conduct violated a clearly established right.  *See*

5  *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001),

6  receded from on other grounds by *Pearson*, 129 S. Ct. 808.  To meet this burden,

7  "clearly established" law must give a public official "fair notice that her conduct

8  was unlawful."  *Brosseau v. Hagan*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed.

9  2d 583 (2004).  This standard "gives ample room for mistaken judgments by

10  protecting all but the plainly incompetent or those who knowingly violate the law."

11  *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)

12  (quotation marks omitted).

13        On the facts alleged, a "reasonable official" would not have believed the

14  alleged conduct to be actionable infringement.  Indeed, as the exhibits to Plaintiffs'

15  complaint make plain, a reasonable official had good cause to believe the alleged

16  conduct to be authorized.  Plaintiffs attach as Exhibit 8 to the Amended Complaint

17  Ambrose's DVD Catalogue, which contains the following language in bold-faced

18  type: "**All purchases by schools and libraries include public performance**

19  **rights.**"  Am. Compl., ex. 8 (at p. 71 of Doc. 19-2).  Another exhibit indicates that

20  the prices of the Ambrose DVDs "include public performance rights."  *Id.*, ex. 7, at

21  4.  These are the very same rights at the heart of Ambrose's claim for infringement.

22  *See* Am. Compl. ¶¶ 90-98.  Given Ambrose's own marketing material, a

23  reasonable official had good cause to believe public performances of the Ambrose

24  DVDs were explicitly authorized.

25        Even without this explicit right to publicly perform, Defendants' conduct

26  qualifies as a fair use.  Therefore, Defendants did not violate any right at all, let

27  alone a "clearly established" one.  Section 107 of the Copyright Act provides that a

28  "fair use" of copyrighted materials is not infringement.  It dictates that fair use,

12

1   "including such use by reproduction in copies . . . *for purposes such as . . .*

2   *teaching* (including multiple copies for classroom use) . . . is not an infringement

3   of copyright."  17 U.S.C. § 107 (emphasis added).

4         While § 107 codifies a special solicitude for uses in the educational context,

5   it does not list with precision which uses are, and which are not, "fair."  Instead,

6   § 107 requires the balancing of four factors:

7         (1) the purpose and character of the use, including whether such use is

8         of a commercial nature or is for *nonprofit educational purposes*;

9         (2) the nature of the copyrighted work;

10        (3) the amount and substantiality of the portion used in relation to the

11        copyrighted work as a whole; and

12        (4) the effect of the use upon the potential market for or value of the

13        copyrighted work.

14   17 U.S.C. § 107 (emphasis added).

15        Courts are required to balance these factors and apply an equitable rule of

16   reason to determine fair use.  "[S]ince the doctrine is an equitable rule of reason,

17   no generally applicable definition is possible, and each case raising the question

18   must be decided on its own facts."  H.R. Rep. No. 94-1476, at 65-66 (1976); *see*

19   *also Harper & Row v. Nation Enters.*, 471 U.S. 539, 560, 105 S. Ct. 2218, 85 L.

20   Ed. 2d 588 (1985) (noting that fair use is "an equitable rule of reason").

21        Application of the fair use factors and consideration of the equities supports

22   a finding of fair use.  As to the first factor, it is undeniable that UCLA's use had a

23   nonprofit educational purpose.  As the Complaint itself alleges, the streams were

24   "linked to course web pages and remotely accessed by students and faculty."  Am.

25   Compl. ¶ 6.  The Ninth Circuit has held that the second factor, the nature of the

26   copyrighted work, "typically has not been terribly significant in the overall fair use

27   balancing."  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d

28   1394, 1402 (9th Cir. 1997).

1    While the third factor typically weighs against a party that copies an entire

2 work, the Supreme Court has concluded in the context of television broadcasts that

3 the recording of a motion picture so that it might be performed again at a different

4 time—so-called "time shifting"—constitutes fair use.  *See Sony Corp. of Am. v.*

5 *Universal City Studios, Inc.*, 464 U.S. 417, 448, 104 S. Ct. 774, 78 L. Ed. 2d 574

6 (1984) (in the television context, "timeshifting merely enables a viewer to see such

7 a work which he had been invited to witness in its entirety free of charge, [so] the

8 fact that the entire work is reproduced does not have its ordinary effect of

9 militating against a finding of fair use." (citation omitted)).  Similarly here,

10 UCLA's streaming simply allows students who are authorized to view the DVDs

11 in class to "time shift" when and how they view the videos.

12    Finally, as to the last factor, the alleged use also had no effect on "the

13 potential market for or value of" the Ambrose DVDs.  UCLA lawfully acquired the

14 DVDs in question, which gave instructors the right to perform the contents of those

15 DVDs in the classroom.  Had streaming never been offered by UCLA, there is no

16 reason to conclude that Plaintiffs ever would have sold any more DVDs to UCLA,

17 or that UCLA would have purchased Ambrose's own streaming service.

18 Additionally, the Complaint does not—and indeed cannot—allege that Plaintiffs

19 offered video streaming of the relevant content when UCLA acquired the Ambrose

20 DVDs.

21    Plaintiffs' Complaint contains a legal argument that UCLA's streaming is

22 not a fair use.  Am. Compl. ¶¶ 72-76.  No published opinion, however, adopts their

23 interpretation of § 107 as applied to video streaming in the educational context.

24 More importantly, even if Plaintiffs were correct on the law, the question of

25 qualified immunity turns on a different and more forgiving analysis.  The

26 individual defendants are protected so long as a reasonable official would not have

27 known, at the time of the events alleged, that such streaming was clearly

28 established infringement.

14

1   Since there is "no generally applicable definition" of fair use, and in light of
2   the fair use analysis above, the individual defendants at a minimum—and all that
3   need be shown for purposes of qualified immunity—did not have "fair notice" that
4   the use in question constituted copyright infringement.  Hence, they are entitled to
5   qualified immunity as a matter of law.  *Harlow*, 457 U.S. at 818; *cf. Chavez v. Arte*
6   *Publico Press*, 59 F.3d 539, 547-48 (5th Cir. 1995) (dismissing individual capacity
7   copyright claim on a motion to dismiss), remanded in part by *Univ. of Houston v.*
8   *Chavez*, 517 U.S. 1184, 116 S. Ct. 1667, 134 L. Ed. 2d 772 (1996).

9   Therefore, the infringement claims brought against the individual defendants
10  in their individual capacities must be dismissed.

11  **C.   AIME Has No Standing to Sue Under the Declaratory Judgment Act.**

12  Article III of the U.S. Constitution imposes minimum requirements for a
13  party to have standing to bring a lawsuit.  AIME erroneously asserts that it has
14  standing both because it has "associational" standing on behalf of its members and
15  because it has standing in its own right.  Am. Comp. ¶¶ 15-16.  Both theories fail.

16  **1.   AIME cannot establish associational standing.**

17  In *Hunt v. Washington State Apple Advertising Commission*, the Supreme
18  Court identified three requirements for an association to bring suit on behalf of its
19  members:

20  (a)  its members would otherwise have standing to sue in their own
21  right; (b) the interests it seeks to protect are germane to the
22  organization's purpose; and (c) neither the claim asserted nor the
23  relief requested requires the participation of individual members in the
24  lawsuit.

25  432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

26  AIME fails the first and third requirements.  Although the Complaint alleges
27  that AIME's "members . . . have standing to sue on their own for infringement of
28  copyrights," Am. Compl. ¶ 15, there are no factual allegations to support this legal

15

MOTION TO DISMISS AMENDED COMPLAINT

1   conclusion.  *See Ashcrof v. Iqbal*, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)

2   (conclusory allegations are "not entitled to be assumed true").  Indeed, only three

3   paragraphs of the Amended Complaint are devoted to AIME's declaratory relief

4   claim, and those paragraphs consist of nothing more than conclusory assertions.

5   *See* Am. Compl. ¶¶ 99-101.

6        To establish that its members have standing to sue for infringement requires

7   allegations that AIME's individual members own the necessary copyrights to the

8   works used by UCLA, and proof that those copyrights have been registered.  This

9   necessarily requires participation of the individual AIME members, which means

10  that AIME cannot satisfy the third requirement for associational standing.  The

11  declaratory judgment count requires an individualized inquiry into what copyrights

12  each AIME member owns that UCLA allegedly infringed, whether those

13  copyrights are valid, and the nature of any rights conveyed by those members to

14  UCLA when UCLA acquired copies of their works.

15       This analysis is not altered by the fact that AIME proceeds under the

16  Declaratory Judgment Act rather than the Copyright Act itself.  Associational

17  standing is prohibited under the Copyright Act because "only copyright owners

18  and exclusive licensees of copyright may enforce a copyright or a license."

19  *Sybersound Records, Inc. v. UAC Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *see*

20  *also* 6 Patry on Copyright § 21:28 (2010) ("[A]ssociational standing is not

21  permitted under the Copyright Act, which expressly limits standing to legal or

22  beneficial owners of exclusive rights.").  AIME seeks to plead its way around

23  Congress's explicit limitation of standing by suing instead for declaratory relief.

24  Such artful pleading, however, should not be permitted to override Congress's

25  express limitation of standing.

26       Moreover, AIME seeks not just a declaration of rights, but a permanent

27  injunction.  The Declaratory Judgment Act does not provide independent

28  substantive authority for injunctive relief, and a plaintiff seeking injunctive relief

16

1  must satisfy the standing requirements of the Copyright Act. *See B. Braun*

2  *Medical, Inc. v. Abbott Labs.*, 124 F. 3d 1419, 1428 (Fed. Cir. 1997) (Declaratory

3  Judgment Act "was not designed . . . to allow a declaratory judgment plaintiff to

4  avoid the requirements imposed by the substantive law as a predicate to obtaining

5  . . . relief").  Because AIME lacks standing to sue under the Copyright Act, its

6  claim for injunctive relief under the Declaratory Judgment Act must be dismissed.

7       Finally, a district court has "discretion in deciding whether to entertain an

8  action under [the] Declaratory Judgment Act." *Kerby v. Parsons Corp.*, No. C06-

9  687, 2007 WL 2570248, at *3 (W.D. Wash. Aug. 31, 2007).  The Ninth Circuit has

10  found a number of factors to be relevant to the exercise of this discretion, including

11  concerns of judicial administration, fairness and convenience to the litigants, and

12  the "availability and relative convenience of other remedies." *Principal Life Ins.*

13  *Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005).  All these factors counsel in

14  favor of rejecting AIME's claim.

15       First, the claim is nothing more than an attempted end run around

16  Congress's limitation of standing under the Copyright Act, and would permit any

17  injured party to bring a *de facto* infringement action under the guise of declaratory

18  relief.  This would undermine Congress's intention for the regulation of copyrights.

19  *See* 17 U.S.C. § 501(b) (granting standing only to "[t]he legal or beneficial owner

20  of an exclusive right under a copyright").  Second, allowing such a camouflaged

21  infringement claim to proceed would impose needless procedural entanglements on

22  the Court and on Defendants, as any such suit would require extensive

23  participation of the non-party copyright owners themselves.  Finally, an

24  independent and adequate remedy is available: if the copyright owners wish to file

25  suit, they can do so themselves.  These factors all militate against this Court

26  exercising discretion to permit a declaratory judgment claim.

27       **2.    AIME has not suffered an injury in fact.**

28       AIME also alleges that it "has a personal stake in the outcome of this

17

1   litigation, suffering injury in fact."  Am. Compl. ¶ 16.  The Amended Complaint

2   identifies only one injury in fact:  AIME claims to have "suffered from the

3   diversion of its resources to deal with the Defendants' infringements of

4   [Ambrose's] copyrighted works," and "has been forced to spend much of its

5   limited resources directly addressing the problem created by the Defendants for the

6   educational video publishers."  *Id.*  In other words, AIME claims that the costs of

7   this litigation constitute an injury in fact that grants it standing to sue.

8        It is well established, however, that expenses of litigation are not injuries in

9   fact for standing purposes.  *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27

10  (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury

11  necessary to maintain a suit from its expenditure of resources on that very suit.

12  Were the rule otherwise, any litigant could create injury in fact by bringing a case,

13  and Article III would present no real limitation."); *see also Walker v. City of*

14  *Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001) (agreeing with *Spann*).  AIME

15  simply has no standing to sue on its own behalf and its suit must be dismissed.

16  **D.   Ambrose Cannot State a Claim for Copyright Infringement.**

17       Ambrose contends that UCLA's practice of streaming the Ambrose DVDs

18  constitutes copyright infringement because Ambrose owns the exclusive right to

19  publicly perform these DVDs.  Am. Compl. ¶¶ 57, 94.  But Ambrose granted to

20  Defendants the *explicit right* to publicly perform the DVDs.  *See* Am. Compl., ex.

21  8 ("All purchases by schools and libraries include public performance rights.").

22  "The existence of a license creates an affirmative defense to a claim of copyright

23  infringement."  *Worldwide Church of God v. Philadelphia Church of God, Inc.*,

24  227 F.3d 1110, 1114 (9th Cir. 2000).  Therefore, Defendants cannot infringe the

25  public performance right.

26       Ambrose's claims of infringement of other exclusive rights are similarly

27  unavailing.  First, Ambrose alleges that UCLA's streaming infringes its public

28  display right under § 106.  But the Copyright Act defines "display" of a motion

---

18

MOTION TO DISMISS AMENDED COMPLAINT

picture narrowly, as the "show[ing] of individual images *nonsequentially*." 17 U.S.C. § 101 (emphasis added). The Amended Complaint does not allege any nonsequential display. Therefore, no claim for infringement of display rights can stand. Next, Ambrose alleges that UCLA has infringed the right to distribute copies of the work. The distribution right for a motion picture concerns only the distribution of "copies" of the work. 17 U.S.C. § 106(3). The Copyright Act's definition of "copies" is limited to "material objects" in which a copy is "fixed." 17 U.S.C. § 101. Section 101 further clarifies that for a copy to be "fixed," it must be "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of *more than a transitory duration*." *Id.* (emphasis added). Nowhere in the Complaint is there any allegation that UCLA has distributed infringing "material objects" to its students. While the videos may be streamed using material objects, the only thing that is distributed is a secured link that provides access to digital bits that can only be viewed for a transitory period, and thus cannot infringe the distribution right. *Cf. Agee v. Paramount Comm'n*, 59 F.3d 317, 325 (2d Cir. 1995) ("[D]istribution is generally thought to require transmission of a 'material object' in which the sound recording is fixed . . . ."). No claim for infringement of distribution rights can survive.

Finally, as to the allegation that unauthorized copies were made in the streaming process, any such copy was a fair use. Because UCLA had the right to publicly perform the Ambrose DVDs, Ninth Circuit law indicates that incidental exercises of other exclusive rights are non-infringing fair uses. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) (finding the creation of short-term copy to be a fair use); *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1993) (finding copying to be fair use because it furthered protected conduct). Similarly here, given Defendants' right to perform the Ambrose DVDs, incidental copies made to permit more efficient use of such performance rights is not infringement.

MOTION TO DISMISS AMENDED COMPLAINT

1    In sum, because UCLA had authority to publicly perform the Ambrose

2    DVDs, it and its employees cannot be liable for infringement.  Therefore, even if

3    Defendants were not immune to suit as discussed above, Ambrose has failed to

4    allege a cognizable claim for infringement.

5    **E.    Ambrose Fails to State a Cause of Action Under the DMCA.**

6    The fifth cause of action alleges a violation of the anti-circumvention

7    provisions of 17 U.S.C. § 1201.  Again, Plaintiffs have failed to cure the fatal

8    deficiencies identified in Defendants' first motion to dismiss.

9    First, Ambrose contends that Defendants have violated § 1201(a)(1)(A) by

10   "circumvent[ing] . . . technological measures that effectively control access to" its

11   DVDs.  Am. Compl. ¶ 103.  But the Amended Complaint is devoid of factual

12   allegations that such a measure was in fact circumvented.  Indeed, according to the

13   Complaint itself, UCLA *had a right* to access the DVDs.  Ambrose's real

14   contention is that UCLA, after accessing the DVDs, unlawfully copied and

15   streamed their contents.  But regardless of whether there was something wrongful

16   about what was done *after* the DVDs were lawfully accessed, such conduct does

17   not concern the unauthorized circumvention of a measure controlling "access."

18   *See* Nimmer on Copyright § 12A.03[D][3] ("[A] person who engages in prohibited

19   *usage* of a copyrighted work to which he has lawful access does not fall afoul of

20   any provision of Section 1201.").

21   Second, the Complaint similarly fails to allege facts supporting the inference

22   that Defendants have trafficked in devices that circumvent access controls in

23   violation of § 1201(a)(2), or devices that circumvent copy controls in violation of

24   § 1201(b).  Am. Compl. ¶¶ 104-05.  The only factual basis for Ambrose's

25   trafficking claim is that UCLA allegedly "worked in close coordination" with the

26   company that makes Video Furnace, the product UCLA uses to prepare digital

27   copies of DVDs that can then be streamed digitally.  *Id.* ¶ 60.  According to

28   Ambrose, this "coordination" and UCLA's "willingness to lend [its] name and

1    reputation to the marketing effort of" Video Furnace amounts to "trafficking" in

2    violation of § 1201(a)(2) and § 1201(b).[9]

3           Ambrose alleges no facts regarding the substance of UCLA's supposed

4    assistance with the development of Video Furnace, and its leap from the alleged

5    fact of involvement in development to the legal conclusion of trafficking in the

6    finished device is unsupported.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

7    (2007) ("a formulaic recitation of the elements of a cause of action will not do").

8    The statutory language provides that, in order to be liable for trafficking, a person

9    must "manufacture, import, offer to the public, provide, or otherwise traffic in any

10   technology."  17 U.S.C. § 1201(a)(2).  The statute does not impose liability for the

11   use of a name in marketing, and no reasonable definition of "otherwise traffic" can

12   be stretched to encompass Defendants' conduct.

13          Therefore, even if Defendants were not immune as discussed above,

14   Ambrose's DMCA claim fails to state a claim and must therefore be dismissed.

15   **F.    Ambrose's Claims Under California State Law are Preempted by the Copyright Act or are Otherwise Barred.**[10]

16          "The Copyright Act specifically preempts 'all legal or equitable rights that

17   are equivalent to any of the exclusive rights within the general scope of

18   copyright.'"  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir.

19   2005) (quoting 17 U.S.C. § 301(a)).  A state-law claim is preempted "if: (1) the

20   work involved falls within the general subject matter of the Copyright Act as

21   specified by sections 102 and 103; and (2) the rights that the plaintiff asserts under

22   state law are equivalent to those protected by the Act in section 106."  *Zito v.*

23   *Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003).  In

24

25   _____

     [9]  Plaintiffs have been informed that UCLA did not, in fact, participate in any way
     in the development of Video Furnace.

26   [10]  Even if the claims were not preempted, there can be no individual liability under

27   state law for the conduct alleged.  *See* Cal. Gov't Code § 820.2 ("[A] public
     employee is not liable for an injury resulting from his act . . . where the act . . . was

28   the result of the exercise of the discretion vested in him, whether or not such
     discretion be abused.").

1   addition to the various grounds for dismissal discussed above, Ambrose's state-law

2   claims must be dismissed because they are preempted by the Copyright Act.

3       **1.    Ambrose's unjust enrichment and tortious interference claims are preempted.**

4

5       "[C]laims for unjust enrichment are . . . generally preempted" by the

6   Copyright Act.  *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D.

7   Cal. 2003).  In *Zito*, the court explained that "where the unjust enrichment arises

8   from defendants' unauthorized use of a copyrighted work," there is no "extra

9   element" to bring the claim out from beneath the preemptive scope of the

10  Copyright Act.  *Id.*  Ambrose's claim for unjust enrichment relies solely on

11  Defendants' allegedly unauthorized use of the Ambrose DVDs.  *See* Am. Compl.

12  ¶¶ 113-15.  Therefore, it is preempted.

13      Similarly, claims for tortious interference are preempted where they

14  "involve[] the essential elements of [a] Plaintiff's Copyright Act claim."  *Oldcastle*

15  *Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. C10-322, 2010 WL

16  2217910, at *3 (W.D. Wash. June 1, 2010).  Even though tortious interference

17  claims require proof of elements not necessary to a claim for copyright

18  infringement, such extra elements "do[] not make the rights qualitatively

19  different," as required to avoid preemption.  *Id.*; *see also Falcon Enters., Inc. v.*

20  *Nobel Developments, Inc.*, CV06-1404, 2007 WL 737347, at *3 (W.D. Wash. Mar.

21  5, 2007) (holding that where "the act of unauthorized publication . . . causes the

22  violation[,] . . . tortious interference claims are preempted." (internal quotation

23  marks and citation omitted)).

24      Ambrose alleges that Defendants' streaming of the works in question

25  constitutes both tortious interference with contract and tortious interference with

26  prospective business advantage.  Both claims, however, "involve[] the essential

27  elements of [Ambrose's] Copyright Act claim."  *Oldcastle*, 2010 WL 2217910, at

28  *3.  For example, at paragraph 124, Ambrose alleges that by "streaming [Ambrose]

MOTION TO DISMISS AMENDED COMPLAINT

1  Shakespeare DVDs to faculty and students, . . . UCLA is depriving Plaintiffs of"

2  potential customers.  Am. Compl. ¶ 124.  The same conduct underlies Ambrose's

3  claim for copyright infringement.  *See id.* ¶ 94 ("Defendants' copying and

4  streaming . . . constitute violations of Plaintiff [Ambrose's] exclusive rights" under

5  the Copyright Act).  Ambrose's tortious interference claims are therefore

6  preempted.

7      **2.   Ambrose's breach of contract claims are preempted because they
8  seek recovery based on the exclusive rights protected by the
Copyright Act.[11]**

9      The Copyright Act preempts claims for breach of contract where the contract

10  rights at issue are equivalent to rights regulated by the Copyright Act.[12]  The

11  preemption analysis depends on whether "the right in question is 'infringed by the

12  mere act of reproduction, performance, distribution or display.'"  *Selby v. New*

13  *Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061 (S.D. Cal. 2000) (quoting *Nat'l Car*

14  *Rental v. Computer Ass'n*, 991 F.2d 426, 432-33 (8th Cir. 1993)).  Prof. Nimmer

15  supports this approach:

16      [A]t times a breach of contract cause of action can serve as a

17  subterfuge to control nothing other than the reproduction, adaptation,

18  public distribution, etc. of works within the subject matter of

19  copyright. . . .  To the extent such a contract is determined to be

20  binding under state law, then that law may be attempting to vindicate

21  rights indistinguishable from those accorded by the Copyright Act.

22  Under that scenario, the subject contract cause of action should be

23  deemed pre-empted.

24  _____
[11]  Ambrose alleges that a contract limits UCLA's rights, but discovery will show
25  that UCLA purchased the DVDs without restriction.  And as explained below,
even if such a contract did exist, its enforcement is preempted.
26  [12]  Ambrose's claim for anticipatory breach is barred for an independent reason.
Because Ambrose has discharged its duties under the contract, the contract is now
27  "unilateral."  Under California law, a party may not bring an anticipatory breach
claim where the contract at issue has become unilateral.  *See Minor v. Minor*, 184
28  Cal. App. 2d 118, 123 (1960).

1    Nimmer on Copyright § 1.01[B][1][a][iii].

2          Although the Ninth Circuit has not squarely considered the issue, it has

3    endorsed the distinction between contracts that control "use" of a copyrighted

4    work, which are not preempted, and contracts that control rights equivalent to the

5    exclusive rights under copyright law, which are preempted.  *See Altera Corp.*, 424

6    F.3d at 1089 (distinguishing between a contract that controls the use of a work and

7    a contract that controls reproduction); *cf. Montz v. Pilgrim Films & Tel., Inc.*, 606

8    F.3d 1153, 1158 (9th Cir. 2010) (finding a claim for breach of implied contract to

9    be "part and parcel of a copyright claim," and therefore preempted by the

10   Copyright Act).  Other circuits have endorsed the same distinction.  *See, e.g.*, *Nat'l*

11   *Car Rental*, 991 F.2d at 432 (8th Circuit).

12         Ambrose's contract claim seeks to control rights equivalent to those under

13   copyright law.[13]  Its entire claim is premised on allegations that UCLA copied,

14   performed, and distributed the Ambrose DVDs.  The rights to copy, perform, and

15   distribute copyrighted works are core rights under the Copyright Act, and therefore

16   cannot be remedied via contract law.  *See, e.g.*, *Jacobsen v. Katzer*, 609 F. Supp.

17   2d 925, 933 (N.D. Cal. 2009).  Plaintiffs' claims for breach of contract and

18   anticipatory breach of contract must therefore be dismissed.

19                            **IV.   CONCLUSION**

20         Plaintiffs have failed to allege any viable cause of action.  Plaintiffs

21   improperly ask this Court to issue a judgment against an agency of a sovereign

22   state in contravention of the Eleventh Amendment.  The Amended Complaint also

23   improperly seeks civil damages from government officials despite their entitlement

24   to qualified immunity and protection under California Government Code § 820.2.

25   _____

26   [13]   Because Plaintiffs' claim for breach of the implied covenant of good faith and
     fair dealing challenges the identical conduct, it too is preempted.  In any event,
27   where a claim for breach of the implied covenant of good faith relies on the same
     allegations as a claim for breach of contract, the good faith claim must fail.
28   *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394-95
     (1990).

1    Not only are Defendants immune, but AIME has no standing to bring its

2 claim.  In addition, Ambrose purports to bring a claim for infringement even

3 though its own complaint reflects that UCLA has a license to publicly perform the

4 works in question.  Perhaps recognizing the futility of this claim, Ambrose also

5 seeks to enforce those same rights by means of state law.  Such an effort must fail,

6 as those state law claims are preempted by the Copyright Act.  Finally, the

7 Complaint fails to allege facts supporting any cause of action under the DMCA.

8    As all claims are barred, Defendants' motion to dismiss should be granted.

9 And because Plaintiffs have already had the opportunity to amend their complaint,

10 dismissal should be with prejudice.

11 Dated:  March 14, 2011                          KEKER & VAN NEST LLP

12

13

14                                     By:   /s/ R. James Slaughter
                                        R. JAMES SLAUGHTER
15                                      Attorneys for Defendants
                                        THE REGENTS OF THE
16                                      UNIVERSITY OF CALIFORNIA, a
                                        California corporation; MARK G.
17                                      YUDOF, an individual; DR. GENE
                                        BLOCK, CHANCELLOR OF THE
18                                      UNIVERSITY OF CALIFORNIA,
                                        LOS ANGELES, an individual; DR.
19                                      SHARON FARB, an individual;
                                        LARRY LOEHER, an individual;
20                                      PATRICIA O'DONNELL, an
                                        individual.

21

22

23

24

25

26

27

28

MOTION TO DISMISS AMENDED COMPLAINT

545651.03