Arnold P. Lutzker, DC Bar No. 101816, admitted PRO HAC VICE
Jeannette M. Carmadella, DC Bar No. 500586, admitted PRO HAC VICE
Allison L. Rapp, MD Bar, admitted PRO HAC VICE
Lutzker & Lutzker LLP
1233 20th Street, NW, Suite 703
Washington, DC 20036
Telephone No. 202-408-7600 Ext. 1/Fax 202-408-7677
Email: arnie@lutzker.com

James M. Mulcahy (SBN 213547)
jmulcahy@mulcahyllp.com
Kevin A. Adams (SBN 239171)
kadams@mulcahyllp.com
Mulcahy LLP
One Park Plaza, Suite 225
Irvine, California 92614
Telephone No. (949) 252-9377/Fax 949-252-0090
ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION FOR INFORMATION MEDIA AND EQUIPMENT, an Illinois nonprofit membership organization; and AMBROSE VIDEO PUBLISHING, INC., a New York corporation,<br><br>     Plaintiffs,<br><br>        v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation; MARK G. YUDOF, an individual; DR. GENE BLOCK, CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA, LOS ANGELES, an individual; DR. SHARON FARB, an individual; LARRY LOEHER, an individual; PATRICIA O'DONNELL, an individual; and John Does 1-50,<br><br>     Defendants. | Case No.: CV 10-09378 CBM (MANx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................1

II.  STANDARD OF REVIEW .................................................... 1

III. SPECIFIC RESPONSES TO DEFENDANTS'
     ARGUMENTS.........................................................…...…………......2

     A. Sovereign Immunity Does Not Bar AVP's
        Claim for Damages...............................................…..2

        1. California has waived its immunity by its express
           consent in the 2008-2011 AVP License to be sued
           in federal court........................................................ 2

        2. Because Defendants' copyright infringements
           amount to an actual violation of the due process
           clause of the Fourteenth Amendment, the Court does
           not need to determine whether Congress validly
           abrogated state sovereign immunity by enacting
           the CRCA..................................................................4

     B. Under *Ex parte Young* Plaintiffs Are Entitled to Injunctive
        Relief............................................................................ 7

     C. Officials are not entitled to Qualified Immunity as to
        Copyright Claims Asserted Against Them in their
        Individual Capacities.............................................…...... 9

     D. AIME Has Standing to Sue.........................................10

        1. AIME meets all requirements to sue on behalf
           of its members.......................................................10

        2. AIME has standing to sue in its own right because it
           has suffered an injury in fact.......................................13

i

E. AVP Has Standing to Sue for Copyright Infringement and has Stated a
   Valid Copyright Infringement Claim........................................14

   1. AVP has met its pleading burden.....................................14

   2. Fair use is not a valid defense to Defendants'
      actions...........................................................15

      a) *The fair use defense in this situation is particularly
         inappropriate to decide on a Motion to Dismiss*................15

      b) *Under no reasonable analysis could fair use sanction
         Defendants' conduct*..........................................17

      c) *Defendants' actions were not incidental to
         protected conduct*............................................19

F. Defendants' Challenge to DMCA Cause of Action
   Must Fail...........................................................19

G. Not All AVP's State Law Claims Are Preempted or Barred...............21

   1. Plaintiffs' Claims for Breach of Contract, and
      Breach of the Implied Covenant of Good Faith
      and Fair Dealing, Breach of Anticipatory Contract
      and Unjust Enrichment contain the "extra element"
      needed to survive preemption....................................21

   2. Plaintiffs' Claims for Tortious Interference Are
      Likewise Not Preempted..........................................24

IV.   CONCLUSION ......................................................25

ii

# TABLE OF AUTHORITIES

## Federal Cases

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*
   307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................20

*Advocacy Ctr. v. Mink*
   322 F.3d 1101 (9th Cir. 2003)..........................................11

*Altera Corp. v. Clear Logic*
   424 F.3d 1079 (9th Cir. 2005)......................................21, 25

*Anderson v. Angelone*
   86 F.3d 932 (9th Cir. 1996)............................................ 1

*Atascadero State Hosp. v. Scanlon*
   473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985).....................3

*Architectronics, Inc. v. Control Sys.*
   935 F. Supp. 425 (S.D.N.Y. 1996)........................................22

*Baum Research & Dev. Co. v. Univ. of Mass. at Lowell*
   503 F.3d 1367 (Fed. Cir. 2007)..........................................3

*Brackett v. Hilton Hotels Corp.*
   619 F. Supp.2d 810 (N.D. Cal. 2008)....................................25

*Brooks v. Alameida*
   NO. 04CV2059-H, 2006 U.S. Dist LEXIS 81727
   (S.D. Cal. Oct. 11, 2006)...............................................6

*BV Eng'g v. Univ. of Cal.*
   858 F.2d 1394 (9th Cir. 1988)..........................................4

*Campbell v. Acuff-Rose Music, Inc.*
   510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) ..........16, 17, 18

*Cambridge Univ. Press v. Becker*
   1:08-CV-1425-ODE, (N.D. Ga. Mar. 17. 2011)..............................8

*Catholic League for Religious & Civ. Rights v. City & Cnty of S.F.*

iii

624 F.3d 1043 (9th Cir. 2010)..........................................................14

*Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*
   CV 03-5834-GHK (VBKx), 2005 U.S. Dist. LEXIS 7920
   (C.D. Cal. April 28 2005) ..........................................................25

*Chavez v. Arte Publico Press*
   204 F.3d 601 (5th Cir. 2000) .......................................................5

*Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't Inc.*
   177 F. Supp. 2d 1050 (C.D. Cal. 2001)..................................22, 23, 24

*Computer Assoc. v. State St. Bank & Trust*
   789 F. Supp. 470 (D. Mass. 1992) .................................................24

*Del Madera Props. v. Rhodes & Gardner, Inc.*
   820 F.2d 973 (9th Cir. 1987).......................................................21

*Ex parte Young*
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ........................... 7, 8

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*
   527 U.S. 627, 119 S. Ct. 2199, 144 L. Ed. 2d 575 (1999)........................6

*Firoozye v. Earthlink Network*
   153 F. Supp. 2d 1115 (N.D. Cal. 2001)...........................................23

*United States v. Georgia*
   546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) .........................4

*Gilligan v. Jamco Dev. Corp.*
   108 F.3d 246 (9th Cir. 1997) ........................................................2

*Gregerson v. Vilana Fin., Inc.*
   446 F. Supp. 2d 1053 (D. Minn. 2006)...........................................16

*Grosso v. Miramax Film Corp.*
   No. 01-57255, 2004 U.S. App. LEXIS 28043
   (9th Cir. Sept. 8, 2004)............................................................ 21

*Groubert v. Spyglass Entm't Grp, LP*
   CV 02-01803-SVW (JTLx), 2002 U.S. Dist. LEXIS 17769
   (C.D. Cal. July 22, 2002) .....................................................22, 23

iv

*Harper & Row, Publrs. v. Nation Enters.*
  471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)..........................17, 18

*Havens Realty Corp. v. Coleman*
  455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).................. ..............13

*Hernandez v. Vallco Int'l Shopping Ctr., LLC*
  No.10-CV-02848-LHK, 2011 U.S. Dist. LEXIS 30262
  (N.D. Cal. March 14, 2011)........................................................................ 2

*Hudson* v. *Palmer*
  468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984).....................................6

*Hunt v. Wash. State Apple Adver. Comm'n*
  432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)........................10, 11

*Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*
  No. C-92-20718 JW,1993 U.S. Dist. LEXIS 11510
  (N.D. Cal. June 24, 1993)...................................................................16

*Jacobsen v. Katzer*
  609 F. Supp. 2d 925 (N.D. Cal. 2009) ....................................................23

*Kucharczyk v. Regents of the Univ. of Cal.*
  946 F. Supp. 1419 (N.D. Cal. 1996)..........................................................9

*La Asociacion De Trabajadores De Lake v. City of Lake Forest*
  624 F.3d 1083 (9th Cir. 2010) ...............................................................13

*Leadsinger v. BMG Music Publishing*
  512 F. 3d 522 (9th Cir. 2008)...........................................15, 16, 17

*League of Academic Women v. Regents of the Univ. of Cal.*
  343 F. Supp. 636 (N.D. Cal. 1972) .......................................................... 8

*Lenz v. Universal Music Corp.*
  572 F. Supp.2d 1150 (N.D. Cal. 2008)...................................................17

*Long Haul, Inc. v. Regents of the Univ. of Cal.*
  No. C 09-00168 JSW, 2009 U.S. Dist. LEXIS 119791
  (N.D. Cal. Nov. 30, 2009) .................................................................1, 2

v

*M. Shanken Communs., Inc. v. Cigar500.com*
  07 Civ. 7371 (JGK), 2008 U.S. Dist. LEXIS 51997
  (S.D.N.Y. July 7, 2008)................................................................15

*Matteo v. Rubin*
  No. 07 C 2536, 2007 U.S. Dist. LEXIS 88394
  (N.D. Ill. Dec. 3, 2007) ...........................................................15

*MDY Indus. v. Blizzard Entm't, Inc.*
  No. 09-15932, 2010 U.S. App. LEXIS 25424
  (9th Cir. Dec. 14, 2010)........................................................ 22, 25

*Miller v. Miramax Film Corp*
  No. CV 99-08526 DDP (AJWx), 1999 U.S. Dist. LEXIS 23422
  (C.D. Cal. Nov. 22, 1999)..........................................................25

*Motta v. Samuel Weiser, Inc.*
  768 F.2d 481 (1st Cir. 1985)...................................................... 12

*Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*
  No. 08-13417, 2011 U.S. App. LEXIS 3543
  (11th Cir. Feb. 24, 2011) ..................................................4, 5, 7, 10

*Nat'l Car Rental Sys., Inc. v. Computer Assocs Int'l, Inc.*
  991 F.2d 426 (8th Cir. 1993).....................................................24

*Olan Mills Inc. v. Linn Photo Co.*
  795 F. Supp. 1423 (8th Cir. 1994).................................................11

*Pennington Seed, Inc. v. Produce Exch. No. 299*
  457 F.3d 1334 (Fed. Cir. 2006)..................................................... 8

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir. 1993)..................................................17, 19

*Port Auth. Trans-Hudson Corp. v. Feeney*
  495 U.S. 299, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990) ....................3, 4

*Principal Life Ins. Co. v. Robinson*
  394 F.3d 665 (9th Cir. 2005)......................................................12

*Romero v. Cal. DOT*

vi

CV 08-8047 PSG (FFMx), 2009 U.S. Dist. LEXIS 23193
(C.D. Cal. March 12, 2009)......................................................2, 3, 4

*Sedgwick Claims Mgmt Servs v. Delsman*
No.C 09-1468 SBA, 2009 U.S. Dist. LEXIS 61825
(N.D. Cal. July 17, 2009) ........................................................16

*Sega Enters. v. Accolade, Inc.*
977 F.2d 1510 (9th Cir. 1993) ................................................ 19

*Selby, New Line Cinema Corp.*
96 F. Supp. 2d 1053 (C.D. Cal. 2000) .................................... 22

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*
No. CV 99-12633 AHM (AIJx), 2007 U.S. Dist. LEXIS 39599
(C.D. Cal. May 16, 2007).......................................................21

*Sony Corp. of Am.v. Universal City Studios, Inc.*
464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)...............19

*Spingola v. Regents of the Univ. of Cal.*
No. C 99-1076 CRB, 2000 U.S. Dist. LEXIS 17378
(N.D. Cal. Nov. 21, 2000)........................................................9

*Taquino v. Teledyne Monarch Rubber*
893 F.2d 1488 (5th Cir. 1990).................................................22

*Trenton v. Infinity Broad. Corp.*
865 F. Supp. 1416 (C.D. Cal. 1994)......................................... 23

*United Food & Commer. Workers Union Local 751 v. Brown Grp*
517 U.S. 544,116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) ............11, 12

*Universal City Studios, Inv. v. Corley*
273 F.3d 429 (2d Cir. 2001)....................................................20

*Universal City Studios, Inv. v. Reimerdes*
82 F. Supp. 2d 211 (S.D.N.Y. 2000).........................................20

*W. Watersheds Project v. Kraayenbrink*
No. 08-35359, 2011 U.S. App. LEXIS 1143

vii

(9th Cir. Jan. 19, 2011)..................................................................... 13

*West v. Keve*
   541 F. Supp. 534 (D. Del. 1982) .........................................................10

*Xechem Int'l, Inc. v. Univ. of Tex.*
   382 F.3d 1324 (Fed. Cir. 2004) ............................................................ 7


**State Cases**

*Becerra v. Cnty of Santa Cruz*
   68 Cal. App. 4th 1450 (Cal. Ct. App. 1998).......................................... 21

*Kabehie v. Zoland*
   102 Cal. App. 4th 513 (Cal. Ct. App. 2002)...................................... 22, 23


**Federal Statutes**

17 U.S.C. § 106................................................................................24

17 U.S.C. § 107.......................................................................... 18, 19

17 U.S.C. § 110................................................................................17

17 U.S.C. § 1201 ("DMCA") .......................................................... 19, 20

42 U.S.C. § 1983..............................................................................6

FED R. CIV. P. 8 ...............................................................................14

FED R. CIV. P. 12(b)(1) .....................................................................1

FED R. CIV. P. 12(b)(6) .....................................................................1

FED R. CIV. P. 15(a)(2) ......................................................................6

FED R. CIV. P. 56 .............................................................................1

1

## State Statutes

2
CAL GOV'T CODE § 820.2 ........................................................21

3

4

5

## Constitutional Provisions

6
U.S. CONST. amend. XI..............................................................*passim*

7
U.S. CONST. amend. XIV ......................................................4, 5

8

9

10

## Other Authorities

11
2-12 Moore's Federal Practice – Civil §12.34......................... 2

12

13
1-1 Nimmer on Copyright § 1.01 [B][1][a][iii] ......................18

14
3-12 Nimmer on Copyright § 12.02[B] .................................11

15

16
5A Wright & Miller, Federal Practice and Procedure § 1357 (1990).................. 16

17
75 Fed. Reg. 43825 (July 27, 2010)....................................... 20

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Association for Information Media and Equipment ("AIME") and Ambrose Video Publishing, Inc ("AVP" or "Ambrose") (collectively, the "Plaintiffs") respectively submit this Opposition to the Motion to Dismiss Amended Complaint ("Motion") by Defendants, (collectively, the "Defendants").

## I.    INTRODUCTION

Defendants seek to avoid all responsibility for past infringements of AVP's copyrights and establish an unfettered right to stream thousands of motion pictures, including all of AVP's and many others belonging to other AIME members, in contravention of the clear language of their license agreements and the copyright laws.  By invoking sovereign immunity while arguing that all state law claims are preempted, Defendants would violate due process, leaving Plaintiffs with no remedies whatsoever. Despite lip service to the standard of review that must be applied to the Motion, Defendants would have the Court adopt innumerable facts not in evidence that are contrary to the allegations in the Amended Complaint.  For many reasons their arguments fail, and the Motion should be denied.

## II.    STANDARD OF REVIEW

Defendants cite both FED. R. CIV. P. 12(b)(1) and 12(b)(6) as bases for the Motion.[1] Although they do not specify which rule they are applying to which claim, the standard of review is the same.[2]  Thus, all allegations in the complaint are assumed to be true and are

---

[1] The Ninth Circuit has clearly stated that in instances where a statute provides both subject matter jurisdiction and the plaintiff's substantive claim for relief, a motion to dismiss based on 12(b)(1) is inappropriate unless the allegations of the complaint are frivolous. *See Long Haul, Inc. v. Regents of the Univ. of Cal.*, No. C 09-00168 JSW, 2009 U.S. Dist. LEXIS 119791, at *10-11 (N.D. Cal. Nov. 30, 2009) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 734 (9th Cir. 1979)). Clearly Plaintiffs' claims are not frivolous.
[2] Because Defendants concede that all facts alleged by Plaintiff must be assumed to be true (*see* Motion, at 4, FN 4), any arguments based on 12(b)(1) must be taken as a facial, and not a factual, challenge. Under 12(b)(6), the court's reliance on outside facts would convert a motion to dismiss into a motion for summary judgment under FED. R. CIV. P. 56. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  Given the present posture of the case, that would not be appropriate.

-1-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

construed in favor of Plaintiffs. *See Long Haul, Inc. v. Regents of the Univ. of Cal.*, No. C
09-00168 JSW, 2009 U.S. Dist. LEXIS 119791, at *11-12 (N.D. Cal. Nov. 30, 2009).
Although it is the plaintiff's burden to allege enough facts for a plausible claim of relief,
Ninth Circuit courts construe this requirement broadly and do not dismiss the complaint
"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248
(9th Cir. 1997). The court is also limited to the facts in the pleadings, documents attached as
exhibits or incorporated by reference in the pleadings, and matters of which the judge may
take judicial notice. 2-12 Moore's Federal Practice – Civil § 12.34 [2]; *see Gilligan*, 108
F.3d at 248.  Nevertheless, Defendants violate this standard repeatedly, using outside facts
which go beyond those stated in the pleadings to support the Motion.[3] *See Hernandez v.
Vallco Int'l Shopping Ctr., LLC,* No.: 10-CV-02848-LHK, 2011 U.S. Dist. LEXIS 30262, at
*10 (N.D. Cal. Mar. 14, 2011).

### III.   SPECIFIC RESPONSES TO DEFENDANTS' ARGUMENTS

**A.   Sovereign Immunity Does Not Bar AVP's Claim for Damages.**

Under the Eleventh Amendment states are entitled to sovereign immunity from suits
in federal court unless (i) the state has waived its immunity or (ii) Congress has validly
abrogated its immunity. *See Romero v. Cal. DOT*, CV 08-8047 PSG (FFMx), 2009 U.S.
Dist. LEXIS 23193, at *5 (C.D. Cal. Mar. 12, 2009) (citing *In re Jackson*, 184 F.3d 1046,
1048-49 (9th Cir. 1999)).  Both elements are present in this case.

> *1.   California has waived its immunity by its express consent in the 2008-
> 2011 AVP License to be sued in federal court.*

---

[3] For example, *see* Motion, at 1 (use is directly related to the pedagogical purposes of
specific classes, at the direction of the instructor, restricted to students enrolled in the class,
accessible only during the term); Motion, at 11 (University officials had no specific
involvement in the selection or streaming of videos); Motion, at 13-24 (extensive discussion
of facts which necessarily go hand in hand with fair use factors); and Motion at 21, FN 9
(UCLA did not participate in the development of Video Furnace).

-2-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Courts will find that a state has waived its Eleventh Amendment immunity if there has been "an unequivocal indication that the State intends to consent to federal jurisdiction[.]" *Romero*, 2009 U.S. Dist. LEXIS 23193 at *5-6 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985)), *superseded by statute on other grounds*. "Consent can only be through express language or clear implication that leaves room for no other interpretation." *Id.* (citing *Atascadero*, 472 U.S. at 240). [4] *See e.g., Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 307, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990) (holding that Eleventh Amendment immunity was waived because, through the terms of a statutory venue provision, the States of New York and New Jersey expressly consented to suit in a federal court located in New York); *see also Baum Research & Dev. Co. v. Univ. of Mass. at Lowell*, 503 F.3d 1367, 1370-71 (Fed. Cir. 2007), rehearing denied 2007 U.S. App. LEXIS 30295 (Fed. Cir. 2007) (finding that a University's Eleventh Amendment immunity was waived by a contract's explicit provision wherein all parties agreed to submit to jurisdiction of the appropriate federal or state court sitting in Michigan). As in *Feeney* and *Baum*, California's waiver of immunity in the 2008-2011 AVP License meets the *Romero* and *Atascadero* tests. Indeed, paragraph 14 (the "Governing Law Provision") states:

> These Terms of Use are governed by the laws of the United States and the
> State of New York, without giving effect to any principles of conflicts of laws.
> Licensee hereby consents to the jurisdiction of the state *and federal courts*
> located in New York, New York. (emphasis added). Am. Compl., Ex. 7, ¶14

---

[4] Although it is not necessary to reach the issue here, Plaintiffs have alleged a course of conduct that implies Defendants have waived immunity as to copyright matters; *i.e.,* the promulgation of extensive policies aimed at upholding copyright law while registering 1,762 University works with the US Copyright Office. *See* Am. Compl. ¶¶ 19-21, Exs. 3-5. At the very least such course of conduct undermines Defendants' naïve assertions of fair use (*see* Motion, at 12-15 and 19-20) and go to its lack of good faith in reinstituting its streaming activities after Plaintiffs' cease and desist efforts.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

California, in short, has, in crystal clear language which cannot be given any other reasonable construction, voluntarily subjected itself to suit in federal court and thus triggered a general waiver of Eleventh Amendment immunity that extends beyond New York.[5]

### 2. *Because Defendants' copyright infringements amount to an actual violation of the due process clause of the Fourteenth Amendment, the Court does not need to determine whether Congress validly abrogated state sovereign immunity by enacting the CRCA.*

In addition to their waiver of immunity by express consent, Defendants' unconstitutional actions have abrogated immunity. It is well established that Congress may abrogate state sovereign immunity in statutes enacted under Section 5 of the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 158, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006); *BV Eng'g v. Univ. of Cal.*, 858 F.2d 1394, 1396 (9th Cir. 1988). This Court, among others, has held that Congress, in enacting the CRCA, did not do that. *See Romero*, 2009 U.S. Dist. LEXIS at *13. However, "...no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the [Fourteenth] Amendment by creating private remedies against the States for *actual* violations of those provisions." *Georgia*, 546 U.S. at 158. "Thus, insofar as [the statute] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, [the statute] validly abrogates state sovereign immunity." *Id.* at 159.

Section 5, the Due Process Clause, requires, at a minimum, "notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Nat'l Ass'n of Bds of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 08-13417, 2011 U.S. App. LEXIS 3543, at *52 (11th Cir. Feb. 24, 2011) (quoting

---

[5] The unambiguous language in the Governing Law Provision eliminates the danger noted in some cases "that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of *Eleventh Amendment* immunity." *See Port Auth. Trans-Hudson Corp.*, 495 U.S. at 307.

-4-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).[6] A copyright is a property interest protected under the Due Process Clause. *Id.* (citing *Roth v. Pritkin*, 710 F.2d 934, 939 (2d Cir. 1983), *cert. denied*, 464 U.S. 961 (1983)). [7]

Due process may precede or follow the deprivation. *Id.* at *52-53. In the instant case, where there was no hearing or other "pre-deprivation" process by which Plaintiffs could contest the violation of their copyrights, the process due them is "post-deprivation."[8] Defendants, however, would deny AVP post-deprivation due process by immunizing themselves from copyright infringement while at the very same time preventing AVP from redressing those wrongs through state law claims which, according to Defendants, are preempted by the Copyright Act.[9] By leaving AVP with no redress whatsoever,

_____

[6] "The lack of a meaningful opportunity to be heard is at the core of a due process claim because 'the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Nat'l Ass'n of Bds of Pharm.*, 2011 U.S. App. LEXIS 3543, at *52 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

[7] *See also Chavez v. Arte Publico Press*, 204 F.3d 601, 605, FN 6 (5th Cir. 2000) ("The Supreme Court held in Florida Prepaid that patents are considered property within the meaning of the due process clause. Since patent and copyright are of a similar nature, and patent is a form of property protectable against the states, copyright would seem to be so too.") (citation omitted).

[8] Typically, pre-deprivation process is provided where a state procedure is designed to deprive individuals of a protected interest; for example, involuntary placements in mental hospitals. See *Nat'l Ass'n of Bds of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 2008 U. S. Dist. LEXIS 32116, *28-29 (M.D. Ga. 2008), aff'd in part and vacated in part No. 08-13417, 2011 U.S. App. LEXIS 3543, at *52 (11th Cir. Feb. 24, 2011) . Here, Defendants acted in contravention of, rather than pursuant to, University procedures requiring adherence to copyright law, so no pre-deprivation process was feasible.

[9] As discussed below, Ninth Circuit decisions suggest that breach of contract claims based solely on Defendants' streaming practices would be held to be preempted.  In the Amended Complaint, however, AVP alleges violations of other contractual rights that survive preemption.  It is the preemption of state law claims alleging violations of the same rights protected by copyright law that, coupled with Defendants' assertion of sovereign immunity from copyright claims, give rise to AVP's claim that it has been deprived of the due process required by the Fourteenth Amendment.

-5-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    Defendants actually violate AVP's constitutionally-protected rights, and in so doing

2    sovereign immunity is abrogated.[10]    In a 1999 patent infringement case the Supreme Court

3    recognized that the due process concerns of the Fourteenth Amendment could be

4    implicated, not when a state remedy is "uncertain" or "less convenient," but when it is

5    shown that state action leaves the owner of a property interest with "no remedy, or only

6    inadequate remedies." *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings*

7    *Bank*, 527 U.S. 627, 643, 119 S. Ct.2199, 144 L. Ed. 2d 575 (1999) (citations omitted).

8           In challenging a property deprivation, the claimant must either avail himself of

9           the remedies guaranteed by state law or prove that the available remedies are

10          inadequate . . . . When adequate remedies are provided and followed, no . . .

11          deprivation of property without due process can result." *Hudson* v. *Palmer*, 468

12          U.S. 517, 539, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984) (O'Connor, J.,

13          concurring). [11]

14

---

15    [10] In light of the fact that AVP's claim of an actual constitutional violation arises out of

16    Defendants' attempts in the Motion to bar AVP from any avenue to vindicate its rights,

17    AVP should not be held responsible for any lack of specificity in pleading such a violation

      in the Amended Complaint.  Plaintiffs believe they have pled facts that sufficiently support

18    this claim.  In the event the Court disagrees, AVP requests leave to amend the Amended

      Complaint to include the specific allegation and, if necessary, including a claim under 42

19    U.S.C. §1983.  FED. R. CIV. P. 15(a)(2), which allows amendment of a pleading with the

20    opposing party's written consent or the court's leave, provides: "The court should freely

      give leave when justice so requires."  In the Ninth Circuit district courts, in exercising

21    discretion as to whether to grant a motion for leave to amend a complaint, typically consider

22    four factors:  "(1) bad faith or dilatory motive on the part of the movant; (2) the futility of

      the proposed amendment; (3) undue delay in filing the motion; and (4) prejudice to the

23    opposing party."  *Brooks v. Alameida*, NO. 04CV2059-H (CAB), 2006 U.S. Dist LEXIS

24    81727, at *7 (S.D. Cal. Oct. 11, 2006) (citations omitted).  All four factors weigh in favor of

25    AVP's being allowed to amend if the Court finds that it has not adequately pled an actual

      constitutional violation.

26    [11] The *Florida Prepaid* court noted that the State of Florida provided remedies to patent

27    owners for alleged infringement on the part of the State through a legislative claims process

28    or a judicial remedy through a takings or conversion claim. 527 U.S. at 644 FN.9.  That is

      not the case here regarding AVP's copyright claims.

-6-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    In a 2004 Federal Circuit patent case against a university, Judge Newman, presenting

2  additional views, disagreed that the court should have found on the basis of the pleadings

3  that there was no violation of due process:

4    The circumstances of this case illustrate that when a state is charged with

5    contravention of federal law in a way that directly affects private property, and

6    if no remedy is indeed available within the state's tribunals – *whether by the*

7    *state's invocation of immunity or by federal preemption of the cause of action-*

8    there can arise an affront to the fundamentals of due process.  Respect for the

9    principles of federalism does not automatically immunize the state from due

10    process considerations. *Xechem Int'l, Inc. v. Univ. of Tex.*, 382 F.3d 1324, 1335

11    (Fed. Cir. 2004), *cert denied*, 543 U.S. 1149 (2005) (emphasis added).

12    The effect of California's assertion of sovereign immunity combined with its position

13  on preemption creates exactly the situation anticipated by Judge Newman, leaving AVP

14  with no remedies whatsoever and, if the Motion is granted, no opportunity to prove its

15  contentions.[12]

16  **B.    Under *Ex parte Young* Plaintiffs Are Entitled to Injunctive Relief**

17    As Defendants note, another exception to Eleventh Amendment sovereign immunity

18  exists in the form of the *Ex parte Young* doctrine,[13] which allows federal courts to grant

19  "prospective injunctive relief to prevent a continuing violation of federal law." *Nat'l Ass'n of*

20  *Bds. of Pharm.*, 2011 U.S. App. LEXIS 3543, at *24 (quoting *Green v. Mansour*, 474 U.S.

21  64, 68, 106 S. Ct. 423, 88 L.Ed. 2d 371 (1985), *reh'g denied*, 474 U.S. 1111 (1986).  To

22  analyze an *Ex parte Young* claim, courts must only conduct a "'straightforward inquiry into

23  _____

24  [12] By contrast in *Nat'l Ass'n of Bds. of Pharm.*, where the district court had found that the
state law remedies were not preempted, the Eleventh Circuit upheld the district court's

25  finding that Georgia provided adequate post-deprivation remedies in the form of a breach of
contract claim, as well as a legislative "claims review procedure" and remedies under the

26  Georgia Tort Claims Act.  *Nat'l Ass'n of Bds. of Pharm.*, 2011 U.S. App. LEXIS 3543, at

27  *60.

28  [13] 209 U.S, 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   whether [the] complaint alleges an ongoing violation of federal law and seeks relief

2   properly characterized as prospective.'" *Pennington Seed, Inc. v. Produce Exch. No. 299*,

3   457 F.3d 1334, 1341 (Fed. Cir. 2006) (citations omitted). Thus, the inquiry does not involve

4   an analysis of the merits of the claim.

5       Defendants argue, citing *Pennington Seed*, that a plaintiff cannot maintain a suit

6   under *Ex parte Young* "simply by naming any official tangentially involved in an alleged

7   violation of federal law."[14]  *See* Motion at 9.This issue was addressed very recently by the

8   Northern District of Georgia District Court, which declined <u>in the context of a motion to</u>

9   <u>dismiss</u> to address the defendants' argument that the officials were not personally involved

10  in the alleged copyright because the plaintiff's complaint alleged "that Defendants' own

11  copying, scanning, displaying, and distributing Plaintiffs' materials violated Plaintiffs'

12  copyrights" and that was sufficient at the pleading stage. *See Cambridge Univ. Press v.*

13  *Becker,* No. 1:08-CV-1425-ODE (N.D. Ga. Mar. 17, 2011). ("*At trial,* the parties will need

14  to present evidence and argument that will allow the Court to rule on the question whether

15  Plaintiffs may proceed under *Ex Parte Young* or whether the case must be dismissed for

16  lack of subject matter jurisdiction") (emphasis added).[15] *See also League of Academic*

17  *Women v. Regents of the Univ. of Cal.*, 343 F. Supp. 636, 644 (N.D. Cal. 1972) (holding that

18  individual Regents, President and Chancellor were proper parties to discrimination suit

19  because they were entrusted with operation of the educational unit).

20      As alleged in the Amended Complaint, Plaintiffs have hardly, in the words of

21  *Pennington Seed*, attempted to apply *Ex parte Young* to "any random state official" or an

22  official who is merely "a representative of the state" such that the state is improperly made a

23  party to the suit. 457 F.3d at 1342. Instead, Plaintiffs, as contrasted with the plaintiffs in

24  *Pennington Seed*, have specifically alleged how <u>each </u>Defendant against whom *Ex parte*

25

26  [14] Defendants do not question that Plaintiff has alleged sufficient facts to point to a
continuing violation of federal law, and it is very clear that Plaintiffs will be subject to the

27  same injury over and over in the absence of injunctive relief.

28  [15] This new unpublished decision from another jurisdiction is cited for the limited purpose
of supporting the adequacy of Plaintiffs' allegations for purposes of *Ex parte Young*.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   *Young* is sought to be applied was causally connected to the infringements.  *See* Am.

2   Compl.¶¶18-19, 24-28.[16]

3       In further contrast to *Pennington Seed*, Plaintiffs seek relief for a violation of federal,

4   not state, law, so there is no danger that the Court will be asked to determine whether state

5   law requires them to take action to avert copyright violations.

6   **C.   Officials are not entitled to Qualified Immunity as to Copyright Claims Asserted**

7   **Against Them in their Individual Capacities.**

8       Defendants would insulate named individuals from liability for their egregious

9   violations of federal copyright law and contracts under the doctrine of qualified immunity.

10  While Plaintiffs strongly disagree that the defense will ultimately be applicable to any of the

11  Defendants, it certainly cannot be sustained at the pleading stage because the Court must

12  accept as true for purposes of the Motion the facts asserted in the Amended Complaint and

13  cannot look to additional facts the Defendants attempt to introduce.[17]

14      Under Ninth Circuit criteria Defendants are not entitled to qualified immunity.  *See*

15  *Spingola v. Regents of the Univ. of Cal.*, No. C 99-1076 CRB, 2000 U.S. Dist. LEXIS

16  17378, at *21-22 (N.D. Cal. Nov. 21, 2000).  Plaintiffs have alleged that Defendants acted

17  in violation of their copyright rights as well as established University policies requiring

18  adherence to copyright law (which policies have the force and effect of statutes).[18]  Such

19

20  [16] It is particularly disingenuous of Defendants to suggest that Dr. Block was unconnected

21  to the specific actions complained of since it was the Office of the Chancellor that was at
    the center of the entire series of events leading to this lawsuit, including the temporary

22  cessation by UCLA of its streaming and then its publicly announced resumption of the

23  practice.   It would also be difficult to believe that this series of events could have unfolded
    without any involvement of President Yudof.

24  [17] *See, e.g.,* Motion, at 11 as to President Yudof and Dr. Block ("They did not select which

25  videos to stream, determine the process by which they would be streamed, stream the
    videos, or do anything to set up that streaming").

26  [18] *Kucharczyk v. Regents of the Univ. of Cal.*, 946 F. Supp. 1419, 1426 (N.D. Cal. 1996)

27  ("The Patent Policy itself is not an agreement between the parties. Instead, as a policy of the
    University it has the force and effect of statute.") (citing *Regents of Univ. of Cal. v. City of*

28  *Santa Monica*, 77 Cal. App. 3d 130, 135 (1978)).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

"clearly established law" provided Defendants with "fair notice" that their conduct was prohibited. "The unlawfulness of the conduct must be apparent in light of preexisting law, but the precise action in question need not have been previously held unlawful." *Nat'l Ass'n of Bds of Pharm.*, 2011 U.S. App. LEXIS 3543 at *72 (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 666 (2002)). Officials in the position of the named Defendants could not have reasonably believed their conduct was lawful - conduct which violated the unambiguous anti-streaming provisions of the AVP Licenses they were charged with administering as well as University copyright policy which they were bound to follow. Defendants' attempt to hide behind their twisted reading of the term "public performance rights" to suggest that they thought the AVP Licenses granted them the multifaceted right to stream (i.e., to copy, reformat, transmit and publicly distribute and display) the programs is unavailing.

Moreover, as Plaintiffs allege (Am. Compl.¶¶51-56), once the Defendants were unequivocally told by Plaintiffs that their conduct violated copyright law, they accordingly ceased the activity. Then intentionally, and with public pronouncements (including an entirely new rationale to emphasize their bold resolve), they resumed it. This willful behavior furnishes the subjective component some courts also look to in assessing a claim of qualified immunity. *See West v. Keve*, 541 F. Supp. 534, 539 (D. Del. 1982) ("to be protected by his or her qualified immunity, an official must establish that he or she acted in good faith, without intending to violate any of plaintiff's constitutional or statutory rights").

Defendants hide behind the fair use defense to argue that their actions did not constitute copyright infringement at all. This argument not only must rely on facts not before the Court, but also fails utterly for all the reasons discussed in Section E below.

**D.    AIME Has Standing to Sue**

   *1.    AIME meets all requirements to sue on behalf of its members.*

The test for associational standing is set forth in *Hunt v. Wash. State Apple Adver. Comm'n*: an association has standing to sue on behalf of its members if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

are germane to the organization's purpose, and (3) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit. 432 U.S. 333,

343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). Defendants challenge AIME's ability to

meet the first and third prongs of the *Hunt* test.

With respect to the first prong of *Hunt*, similar copyright infringement cases have not

found the question of whether an association's members would otherwise have standing to

sue in their own right to be an obstacle. *See Olan Mills, Inc. v. Linn Photo Co.*, 795 F. Supp.

1423, 1428 (N.D. Iowa 1991), *rev'd on other grounds,* 23 F.3d 1345 (8th Cir. 1994):

> The court finds that the requirements set out in *Apple* have been met by
> plaintiff PPA. In short, PPA members who own the copyrights to their
> photographic works would have standing to sue in their own right.

The first prong of *Hunt* is directly satisfied by the allegation in the Amended

Complaint that Ambrose, as a member of AIME, has standing to sue in its own right

because it owns the exclusive rights to the copyrighted works that UCLA infringed by its

streaming activity. *See* Am. Compl. ¶5. Moreover, it is alleged in the Amended Complaint

(¶¶15-16 and Ex. 2) that other AIME members also hold exclusive copyrights.

Defendants overlook the fact that the third prong of *Hunt* is no longer considered a

constitutional requirement. *See United Food & Commer. Workers Union Local 751 v.*

*Brown Grp*, 517 U.S. 544, 555-57, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996). This means

that Congress can confer standing where the obstacles are "judicially fashioned and

prudentially opposed." *See Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003); *see*

*also United Food*, 517 U.S. at 558 (citations omitted) ("prudential limitations are rules of

'judicial self-governance' that 'Congress may remove . . . by statute'").

Further, to the extent that the question of whether Congress has allowed for

associational standing under the Copyright Act is an unresolved issue in the Ninth Circuit, it

is not suitable for decision on a motion to dismiss. According to the leading copyright

authority "[i]t is possible, nonetheless, that the societies could have associational standing

to bring suit." 3-12 Nimmer on Copyright § 12.02[B]. Defendants' reliance on Patry on

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    Copyright for the contrary position is additionally dubious because the case on which Patry

2    relies is readily distinguished from the present facts.[19]

3         Moreover, the U.S. Supreme Court has said that the third requirement of *Hunt* "…is

4    best seen as focusing on …. matters of administrative convenience and efficiency," *United*

5    *Food*, 517 U.S. at 555-57, and such considerations weigh heavily in favor of finding AIME

6    has associational standing in this case.  Ambrose's participation as a plaintiff in the suit is a

7    given, and any argument as to its ownership rights will be heard in the context of its

8    standing as such.  Therefore, no additional individualized inquiries need to be made, and no

9    participation of other members is required. In addition, because AIME is seeking a

10   declaratory judgment and not damages, there is no danger that the case will proceed to the

11   damage stage.  While district courts do have discretion to hear cases involving declaratory

12   judgments, the factors that a district court must weigh lie in Plaintiffs' favor. [20]

13

14   _____

15   [19] In *Motta v. Samuel Weiser, Inc*, the issue was whether an association could establish
     ownership rights over the copyrighted work. 768 F.2d 481, 487 (1st Cir. 1985) ("The

16   district court did not commit error in addressing that sub-issue of [the association's]
     capacity to own the Crowley copyrights").  In contrast, AIME is not asserting standing by

17   proving personal ownership over the works, but is instead establishing standing *on behalf of*
     its members. The First Circuit in *Motta* does not even attempt to apply the *Hunt* test.

18   [20] The three main factors that courts consider are (1) avoiding needless determination of

19   state law issues; (2) discouraging litigants from forum shopping, and (3) avoiding

20   duplicative litigation. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir.
     2005). First, all state law claims are a direct result of Defendants' conduct; thus the state

21   law claims that are included in this suit are not "needless." Plaintiffs are not guilty of forum

22   shopping or duplicative litigation; Defendants' silence on these points further evidences
     Plaintiffs' good faith in filing this suit. Furthermore, any concerns of "judicial

23   administration, comity, and fairness" (*Id.*) also favor Plaintiffs - not only are AIME's

24   members being robbed of valuable copyright rights, but without this suit their rights will be

25   continue to be infringed as Defendants have made it clear that they will not cease their
     streaming policy unless there is court action.  Given the magnitude of the infringing

26   activities, short of a class action, a multiplicity of suits would be involved if each individual

27   AIME member needed to sue separately.

28

---
-12-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**2.** ***AIME has standing to sue in its own right because it has suffered an injury in fact.***

Even if the Court were to conclude that AIME is unable to establish associational standing (which Plaintiffs do not believe is appropriate), AIME nevertheless is able to sue in its own right because it fulfills the constitutional requirements for standing: (1) injury in fact; (2) causation; and (3) redressability. *See La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). The Ninth Circuit has recently held that an association can establish the first prong, injury in fact, if it suffered "both a diversion of its resources and a frustration of its mission." *Id.* A diversion of resources is a showing that the association was forced to choose between suffering an injury and diverting resources to counteract the injury. *Id.* at FN4. The U.S. Supreme Court held in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).that there was a diversion of resources where an association had to divert resources from its principal purpose of counseling low and moderate home seekers in order to combat the defendant's discriminatory housing practices. AIME meets both requirements to establish injury in fact. AIME has suffered much more than litigation expenses. As the Amended Complaint states (¶16), AIME has had to divert its limited resources away from its other priorities and, had it not done so, Defendants' infringing actions would have continued unchallenged. Furthermore, if UCLA's infringement is allowed to continue, AIME's principal purpose of promoting fair use of media and equipment in a rapidly changing world would be assuredly frustrated because not only would UCLA continue its infringing streaming activities, but also it would signal to other educational institutions that such actions are legally permissible.

Injury in fact is the most important element to prove for constitutional standing and if it is shown, the other two requirements of causation and redressability are relaxed. *See W. Watersheds Project v. Kraayenbrink*, No. 08-35359, 2011 U.S. App. LEXIS 1143, at *28. (9th Cir. Jan. 19, 2011). There is no question that Defendants are the cause of the injury and that Plaintiffs instituted this action in response to Defendants' refusal to cease the infringing

-13-

1   activities. Moreover, due to UCLA's commitment to continue the streaming activities

2   despite warnings to cease and desist (*see* Am. Compl. ¶¶9, 56 and Exs. 10-13), the only

3   way Plaintiffs' injuries may be redressed is through the current action. *See Catholic League*

4   *for Religious & Civ. Rights v. City & Cnty of S.F.*, 624 F.3d 1043, 1053 (9th Cir. 2010), ")

5   (citations omitted) ("Redressability... that it is 'likely, as opposed to merely speculative, that

6   the injury will be redressed by a favorable decision.'), *petition for cert. filed* (Feb. 15, 2011)

7   (No.10-1034).

8   **E.    AVP Has Standing to Sue for Copyright Infringement and Has Stated a Valid**

9   **Copyright Infringement Claim.**

10         While Defendants concede that AVP "may have *standing* to sue," Motion at 3, they

11   claim that the Amended Complaint fails adequately to state a claim for infringement of

12   protected copyrights and that, even if infringements were properly pleaded, the Defendants'

13   actions are fair use.   There is no question that AVP has standing to sue, as it unequivocally

14   asserts possession of all exclusive rights in the AVP Shakespeare DVDs, acquired from

15   Time Life Films before entering into the license agreement with UCLA, as well as other

16   DVDs licensed to UCLA. *See* Am. Compl. ¶¶ 2 and 5.  Any suggestion to the contrary is

17   simply bogus.

18         ***1.    AVP has met its pleading burden.***

19         AVP also asserts that Defendants' streaming activities infringed multiple exclusive

20   rights in its DVDs, including the rights to control copying, public performance, public

21   display and public distribution. *See* Am. Compl. ¶¶44-45.  All that is required is for AVP to

22   state a "short and plain statement" of the infringement claims," FED. R. CIV. P. 8, and that

23   has been done.

24         The Motion would impose a more complex standard on AVP.  For example, even

25   though Plaintiffs allege infringement of the public display right, Defendants insist the

26   complaint must fail because it does not specifically allege that infringing images appear

27   "nonsequentially," which they note is already a part of the definition of "display." *See*

28   Motion at 18-19.  Next, despite the explicit claim that to stream an AVP DVD, Defendants

-14-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  utilize a device "that copies, conforms the work to a usable digital format and transmits it,"
2  (Am Compl.¶43), Defendants falsely charge this formulation fails to plead distribution of
3  copies fixed in material form.  Alleging that Defendants copied, conformed  the AVP DVDs
4  to digital format, and transmitted to a viewer who received copies of files and sent those
5  files to a video display screen clearly and succinctly sets forth the allegation of the
6  infringement of the exclusive public distribution, public display and reproduction rights, and
7  no more is required of AVP.[21]

8              2.    *Fair use is not a valid defense to Defendants' actions.*

9          Finally, Defendants would not only have the Court  find that individual officials are
10  immune from suit on the grounds of fair use, but also would have the Court dismiss AVP's
11  claim for copyright infringement on the basis that any unauthorized copies of the DVDs
12  made in the streaming process were a fair use.  These arguments fail completely.

13            a)    *The fair use defense in this situation is particularly*
14                  *inappropriate to decide on a Motion to Dismiss.*

15          While it is generally accepted that a court can in appropriate cases resolve the issue of
16  fair use in the context of a motion for summary judgment,[22] it is unusual to grant a motion
17  to dismiss for failure to state a claim on the basis of fair use.  *See Leadsinger v. BMG Music*

18

19

---

20  [21] Again attempting to introduce complex new facts, Defendants assert "the only thing that
21  is distributed is a secured link that provides access to digital bits that can only be viewed for
22  a transitory period."  Motion at 19.  Such extraneous and unsupported factual claims cannot
     be relied upon to support a motion to dismiss.
23  [22] But the Second Circuit Court of Appeals has cautioned "due to the 'fact-driven nature of
24  the fair use determination,' courts should be cautious in finding fair use as a matter of law
     *even on a motion for summary judgment...*"  *M. Shanken Communs., Inc. v. Cigar500.com*,
25  07 Civ. 7371 (JGK), 2008 U.S. Dist. LEXIS 51997, at *28 (S.D.N.Y.July 7, 2008)
26  (emphasis added) (citations omitted), (noting the defendant had not pointed to any cases in
     the Circuit that granted a motion to dismiss on the basis of fair use); *see also Matteo v.*
27  *Rubin*, No. 07 C 2536, 2007 U.S. Dist. LEXIS 88394, at *9  (N.D. Ill. Dec. 3, 2007)
28  (concluding that the defense of fair use to justify use of plaintiff photographer's image on
     client website was "better suited to be analyzed at a later stage of litigation").

-15-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    *Publ'g*, 512 F. 3d 522, 530 (9th Cir, 2008). [23]   Fair use involves a heavily fact-based

2    analysis raising questions appropriate for discovery. *See, e.g., Gregerson v. Vilana Fin.,*

3    *Inc.*, 446 F. Supp. 2d 1053, 1057-1058 (D. Minn. 2006) (declining to dismiss complaint as

4    to *one* photograph because the plaintiff had "adequately noticed his cause of action in the

5    Complaint, and should be allowed discovery to prove his claims"). The massive scale of the

6    alleged infringement alone[24] distinguishes this case from the limited number of other cases

7    in which courts have ruled on fair use in the context of a motion to dismiss. [25]

8         As regards any affirmative defense, the burden of proving fair use is on the party

9    asserting the defense. *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590,114 S. Ct.

10   1164, 127 L. Ed. 2d 500 (1994).   As Defendants acknowledge, citing from the legislative

11   history of Section 107 (*see* Motion, at 13), each case must be decided on its facts.

12

13   _____

14   [23] The Ninth Circuit decision in *Leadsinger* affirming the district court's decision to dismiss
     is actually a decision that the use was not fair since it was the *plaintiff* karaoke device

15   manufacturer who asserted fair use in its declaratory judgment action against defendant
     music publishers.  The Court recognized that the posture of the case was unusual but found

16   that the plaintiff's allegations, taken as true for purposes of the motion to dismiss, did not

17   support a finding of fair use.

18   [24] In response to Plaintiffs' California Public Records Act request, Plaintiffs received a
     document that lists more than 2500 works streamed by UCLA in the recent past.  Ten AIME

19   members, including Plaintiff AVP, have 162 titles on the list.  UCLA refused to provide the
     number of times each program was streamed but acknowledged that 13 AVP DVDS were

20   streamed by UCLA more than 130 times. *See* Am. Compl. ¶¶77-79.

21   [25] *See Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*, No. C-92-20718 JW, 1993 U.S. Dist.

22   LEXIS 11510, at *6 (N.D. Cal. June 24, 1993) (rejecting defendant publishing company's
     fair use claim) ("…while affirmative defenses may be raised in a motion to dismiss,

23   defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue
     and are best resolved by summary judgment motions or adjudication at trial") (citing 5A

24   Wright & Miller, Federal Practice and Procedure § 1357 (1990)). The handful of cases in

25   which district courts in the Ninth Circuit have granted a motion to dismiss on fair use
     grounds involved either transformative, parodic uses of the copyrighted work or use of a

26   single copyrighted work for purposes of political criticism, situations patently different from

27   the instant case of wholesale copying. *See, e.g, Sedgwick Claims Mgmt Servs v. Delsman*,

28   No: C 09-1468 SBA, 2009 U.S. Dist. LEXIS 61825 , at *20 (N.D. Cal. July 17, 2009).

-16-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### b)   Under no reasonable analysis could fair use sanction Defendants' conduct.

Even if such an "in-gross" review of untold numbers of works were feasible in the context of the Motion, under <u>no</u> reasonable analysis could fair use sanction the blanket right claimed by Defendants to copy and stream AVP DVDs in violation of the very clear terms of their license.

Section 107 requires a factual evaluation based on four stated criteria as applied to the specific use of each work (more than three dozen AVP DVDs). *See Harper & Row, Publrs. v. Nation Enters.,* 471 U.S. 539, 560, 105 S. Ct. 2218; 85 L. Ed. 2d 588 (1985). The four factors are not to be taken in isolation and must be weighed together. *Campbell,* 510 U.S. at 578. Moreover, they are not exclusive; rather the analysis "is a flexible one that we perform on a case-by-case basis." *See Leadsinger,* 512 F. 3d at 577 (quoting *Campbell,* 510 U.S. at 577). One additional highly significant factor in this case is the sophistication of the party making the fair use claim, a major university system which, according to its own voluminous promulgations to educate faculty and administration[26] is fully committed to upholding copyright law. Thus Defendants' fair use claim flies in the face of the "good faith and fair dealing underpinnings of the fair use doctrine" (*see Perfect 10, Inc. v. Google, Inc.,* 508 F.3d 1146, 1164, FN 8 (9th Cir. 2007)),[27] especially since Defendants temporarily ceased their streaming activities upon being advised of their illegality by Plaintiff's counsel, then resumed them with a public pronouncement and a new justification. *See* Am. Compl. ¶¶54-56 and Exs.14-16.[28]

---

[26] *See* Am. Compl. ¶¶19-21.
[27] *See Lenz v. Universal Music Corp.,* 572 F. Supp.2d 1150, at *1156 (N.D. Cal. 2008) (sophistication and familiarity with copyright actions relevant to good faith determination).
[28] Defendants do not mention in the Motion their initial justification that their actions were sanctioned by § 110(1) of the Copyright Act (strictly limited to public performance or display) or the additional justification under § 110(2) (which excludes works marketed like the AVP DVDs and entire motion pictures) they advanced when they resumed streaming.

-17-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    Although listed fourth in Section 107, "the effect of use upon the potential market for

2    or value of the copyrighted work" is "undoubtedly the single most important element of fair

3    use." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 566-67, 105 S. Ct. 2218, 85

4    L. Ed. 2d 588 (1985) *(*"Fair use, when properly applied, is limited to copying by others

5    which  does not materially impair the marketability of the work which is copied") (citing 1

6    Nimmer § 1.10[D], at 1-87). And, "[s]ince fair use is an affirmative defense, its proponent

7    would have difficulty carrying the burden of demonstrating fair use without favorable

8    evidence about relevant markets." *Campbell*, 510 U.S. at 590 (citing *Harper & Row*, 471

9    U.S. at 561).[29]

10    Defendants will not be able to prove their bald assertion (*see* Motion, at 14) – made

11    despite the fact that AVP offered a higher-priced license to do exactly what Defendants

12    claim they can do without paying - that the "alleged use … had no effect on 'the potential

13    market for or value of' the Ambrose DVDs." In any event their burden is not one that can be

14    discharged in the context of the Motion, especially since the Court must accept as true

15    Plaintiffs' specific allegations as to the harm that will result.  *See* Am. Compl. ¶¶11, 124

16    (new faculty/student markets for AVP streaming products).

17    The first Section 107 factor is "the purpose and character of the use, including

18    whether such use is of a commercial nature or is for nonprofit educational purposes." 17

19    U.S.C. § 107(1) (2010).  "the mere fact that a use is educational …does not insulate it from

20    a finding of infringement." *Campbell*, 510 U.S. at 584.  Determining whether the work is

21    transformative is the main purpose of this inquiry. *Id.* at 579.  Defendants rely solely on

22    their educational use argument and do not suggest they transformed the copyrighted works.

23    The second factor under Section 107 is "the nature of the copyrighted work." 17

24    U.S.C. § 107(2) (2010). Fair use is less likely when works of creative expression are

25    involved. *Campbell*, 510 U.S. at 586.  The works at issue will withstand factual analysis as

26

27

28    [29] *See Campbell,* 510 U.S. at 591, FN 21("Even favorable evidence, without more, is no
guarantee of fairness").

-18-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  original programs in science, history and drama, enriched with supplemental educational

2  content such as computer graphics.  *See* Am. Compl. ¶¶33- 34 and Ex. 8.

3      The third factor is "the amount and substantiality of the portion used in relation to the

4  copyrighted work as a whole." 17 U.S.C. § 107(3) (2010). Defendants use the *Sony* case[30] to

5  suggest that they are merely "time-shifting" and to excuse their taking of the entirety of

6  Plaintiffs' protected works; however, *Sony* dealt only with home use and is irrelevant.

7          *c)*      ***Defendants' actions were not incidental to protected conduct.***

8      To have any legs at all, Defendants' attempt to characterize their unauthorized

9  copying as "incidental" to their lawful exercise of licensed public performance rights would

10  require the Court to accept their factual allegations - not in evidence - that copies made in

11  the streaming process are of such transitory duration and incidental nature as not to infringe

12  the copyright owner's distribution right.  But Plaintiffs claim, and will prove, that such

13  copying is not merely incidental but in fact central to streaming, which implicates, in

14  addition to public performance rights, other exclusive rights of the copyright owner.

15  Moreover, even were their copying an incidental activity, it would not be able to transform

16  an unauthorized primary activity into a protected one. Neither of the cases cited by

17  Defendants [31]is relevant to a motion to dismiss since each involved appellate review of

18  district court grants of preliminary injunctions following hearings and, in *Sega* at least,

19  following discovery.

20      **F.**    **Defendants Challenge to DMCA Cause of Action Must Fail**

21      Defendants incorrectly charge that the Amended Complaint is "devoid of factual

22  allegations" to support AVP's claim for violation of the DMCA (17 U.S.C. §1201), *see*

23  Motion, at 20-21. First, the Amended Complaint (¶¶60-62) sets forth facts taken directly

24  from the website of the manufacturer of Video Furnace that trumpets UCLA's involvement

25  

26  ------

[30] *See Sony Corp. of Am.v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984).

27  

28  [31] *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 1993); *see also Sega Enters. v. Accolade, Inc.* 977 F.2d 1510 (9th Cir. 1993).

-19-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   in the development of Video Furnace,[32] a technology used to bypass AVP's Content

2   Scrambling System ("CSS"), a judicially-vetted "access control and copy prevention

3   system." *See Universal Studios Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001); *see also*

4   *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 308 (S.D.N.Y. 2000).

5   Whether UCLA had the right to view the particular videos is not the gravamen of violation

6   of §1201(a); rather, the Amended Complaint charges Defendants with trafficking in the

7   technology that bypasses technological measures designed to protect AVP videos. *See 321*

8   *Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004).

9        Second, Defendants urge that merely because they have a license to perform AVP

10  videos for educational purposes, they are allowed to bypass CSS copy controls and replicate

11  videos to achieve the illegal streaming purpose. Such actions infringe §1201(b) as set forth

12  in the Amended Complaint (¶¶63-64) and are clearly contrary to law. *See* "Exemption to

13  Prohibition on Circumvention of Copyright Protection Systems for Access Control

14  Technologies," Library of Congress, 75 Fed. Reg. 43825, 43827-43828 (July 27, 2010)

15  (rejecting requests for broad educational exemptions, establishing rule to permit limited

16  circumvention of CSS only to incorporate short portions of "lawfully made and acquired"

17  DVDs into new works of comment or criticism by documentary filmmakers, producers of

18  non-commercial videos and collegiate and university film and media studies students and

19  faculty). As set forth in the Amended Complaint (¶¶60-64), and in defiance of the DMCA

20  and the Librarian's rules, the Defendants have taken upon themselves wrongfully to expand

21  the definition of permissible CSS circumvention. Contrary to the Motion, the claims are

22  succinctly and adequately set forth, and the Defendants have not given this Court any basis

23  to dismiss the DMCA count.

---

[32] Defendants again seek to introduce new facts when they assert that "UCLA did not, in fact, participate in any way in the development of Video Furnace." Motion at 21, FN 9. That unsupported assertion contradicts the facts as stated in the Amended Complaint and cannot be considered for purposes of the Motion.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**G.     Not All AVP's State Law Claims Are Preempted or Barred.**[33]

> ### 1.     *Plaintiffs' Claims for Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Anticipatory Contract and Unjust Enrichment contain the "extra element" needed to survive preemption.*[34]

The test for determining when state law is preempted by the Copyright Act is whether: (1) the work at issue is considered to be within the subject matter of copyright; and (2) the state law rights are equivalent to any of the exclusive rights of copyright. *Grosso v. Miramax Film Corp.*, No. 01-57255, 2004 U.S. App. LEXIS 28043, at *3 (9th Cir. Sept. 8, 2004); *see also Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987). Only the second prong is at issue here. A state law claim survives preemption under the second prong of the *Grosso* test if the state law rights at issue contain an *extra element* that makes the rights asserted qualitatively different from those protected under the Copyright Act. *See Altera Corp. v. Clear Logic*, 424 F.3d 1079, 1089 (9th Cir. 2005); *see Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635 JCS, 2007 U.S. Dist. LEXIS 39599, at *21 (N.D. Cal. May 16, 2007).

---

[33] Defendants argue (*See* Motion, at 22, FN 10) that Plaintiffs' state law claims, if not preempted by the Copyright Act, would be barred by CAL. GOV'T CODE §820.2.  However, the case law makes it clear that it is inappropriate to address such a discretionary immunity claim at the demurrer stage. *See Becerra v. Cnty of Santa Cruz*, 68 Cal. App. 4th 1450, 1464 (Cal. Ct. App. 1998).  In addition, Defendants' argument (Motion, at 23, FN 12) that Ambrose's claim for anticipatory breach is barred because the contract at issue is "unilateral" fails because Ambrose has continuing obligations under the contracts.  For example, it must refrain from sharing personally identifiable information (*See* Am. Compl. , Ex. 7, ¶ 12) and it is obligated to replace defective products (*See* Am. Compl., Ex. 6, ¶ 11 and Ex. 7, ¶ 10).

[34] Plaintiff AVP believes that the fact-specific analysis of its breach of contract claims described in this section also applies to its claims for breach of the implied covenant of good faith and fair dealing, anticipatory breach of contract and unjust enrichment.  Its claims for tortious interference are addressed separately below.

-21-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

When addressing the preemption of state law claims under the Copyright Act, the "majority of courts" have found that such claims are not preempted because they contain an extra element.[35]  While some courts have held that the existence of a contract's express promise to perform – in itself – constitutes the extra element needed for a state claim to survive preemption, [36] federal district courts in California utilize a fact-specific, case-by-case analysis to determine whether a claim is preempted.  *See Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't Inc.*, 177 F. Supp. 2d 1050, 1057 (C.D. Cal. 2001); *see Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2000); *see also Groubert v. Spyglass Entm't Grp*, CV 02-01803-SVW (JTLx), 2002 U.S. Dist. LEXIS 17769, at *9 (C.D. Cal. July 22, 2002) (finding that in order to determine if a contract claim is preempted, "the Court must look to the rights actually created by the alleged contract, and then determine whether *any of those rights* differ from the prohibition of unauthorized reproduction, performance, distribution, or display of work protected under copyright law") (emphasis added).

The Court of Appeal of California has concisely summarized the holdings of the cases engaging in a fact-specific inquiry, finding that an extra element exists--and, therefore, preemption is inappropriate – where the contractual provision at issue respects "a right to payment, a right to royalties, or *any other independent covenant*."[37]  *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 528 (Cal. Ct. App. 2002) (emphasis added).  Ninth Circuit district court decisions are consistent with the *Kabehie* court's determination that

---

[35] *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1059 (C.D. Cal. 2000)(citing *Lennon v. Seaman*, 63 F. Supp. 2d 428, 437 (S.D.N.Y. 199)); *see also* Nimmer on Copyright § 1.01 [B][1][a][iii] (concluding that, although "the rule safeguarding contract causes of action against copyright preemption is less than categorical[,]…the *vast majority* of contract claims will presumably survive scrutiny")(emphasis added).

[36] *See, e.g. Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Architectronics, Inc. v. Control Sys.*, 935 F. Supp. 425, 438-39 (S.D.N.Y. 1996).

[37] Contractual terms that limit a license's scope are deemed <u>conditions</u>; all other license terms are referred to as <u>covenants</u>. *See MDY Indus. v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).

-22-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   contractual covenants – i.e. collateral terms addressing issues independent from the scope of

2   the license's grant – are to be considered an extra element qualitatively different from the

3   exclusive rights of copyright.  *See, e.g., Chesler*, 177 F. Supp. 2d at 1058 (holding that

4   express promises to pay specific amounts at specific times and to hire particular employees

5   were extra elements not preempted by the Copyright Act).[38]

6        To make their case for preemption, Defendants rely mainly on cases involving

7   implied, not express, contracts, presumably because "[I]mplied contracts are more often

8   found to be preempted." *Chesler,* 177 F. Supp. 2d at 1059.  While it may be appropriate for

9   a state contract claim to be preempted when the promisor of the contract has merely

10  reaffirmed its duties under copyright law and thus failed to provide consideration for the

11  contractual promises at issue, the fact remains that courts have refused to find preemption

12  unless the claim "allege[s] *nothing more* than an act of copyright infringement." *Trenton*

13  *v.Infinity Broad. Corp.* 865 F. Supp. 1416, 1429 (C.D. Cal. 1994) (emphasis added);

14  *Kabehie*, 102 Cal. App. 4th at 528.[39]   Thus Plaintiffs' state claims cannot be preempted en

15  masse.

16        As in *Chesler* and *Trenton*, Plaintiffs' claims – with two exceptions[40] – go far beyond

17  merely reasserting their exclusive rights of copyright and allege that Defendants breached

18

19  [38] *See also Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1127 (N.D. Cal. 2001); *see*
20  *also Groubert*, 2002 U.S. Dist. LEXIS 17769, at *11; *see also Trenton v. Infinity Broad.*
    *Corp.*, 865 F. Supp. 1416, 1429-30 (C.D. Cal. 1994).
21  [39] The cases cited by Defendants--with the exception of *Montz*, which is not good law--do
22  not suggest otherwise.  *See Jacobsen v. Katzer*, 609 F. Supp. 925,  933-34 (N.D. Cal.
23  2009) (recognizing that a state contract claim is not preempted if the plaintiff is capable of
    demonstrating that "there are rights or remedies available under the contract claims that are
24  not otherwise available under the copyright claim").
25  [40] Plaintiffs concede that, unless the Court is willing to find that the promise to perform the
    contract per se constitutes the required extra element to avoid preemption, the reasoning of
26  *Jacobsen v. Katzer* and similar cases would suggest that the claims for breach of the
27  following provisions in the 2006-2007 and the 2008-2011 AVP Licenses would, *standing*
    *alone*, be preempted by the Copyright Act:  (1) "the term that prohibits duplication,
28  broadcast, transmission on any multi-receiver open or internet system" and (2) "the

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   independently bargained-for covenants, which created collateral rights distinct from those

2   protected by § 106.  Accordingly, preemption is inappropriate for Plaintiffs' claims

3   regarding:  (1) the use provisions - present in both AVP Licenses - that guarantee, *inter alia*,

4   that each program be exhibited "only in its entirety" with "complete copyright notices and

5   credits"; (2) the promise in the 2008-2011 License that UCLA would pay "a higher price for

6   streaming rights"; and (3) the 2008-2011 License's covenant "prohibiting use of Plaintiff

7   AVP's trademarks." [41]  *See* Am. Compl. ¶¶83. [42]

8             **2.    *Plaintiffs' Claims for Tortious Interference Are Likewise Not***

9                     ***Preempted.***

10          Under Ninth Circuit and California district court holdings AVP's allegations that

11   Defendants interfered with (i) AVP's contractual obligations to the BBC and BBC's

12   contractual obligations to others and (ii)  AVP's huge potential market of professors and

13   students who would otherwise pay to license AVP videos but now get them free both

14   contain the extra element necessary to avoid preemption.  The Ninth Circuit recently held in

15

16   covenant that Ambrose's rights under U.S. copyright law will not be derogated.")  *See, e.g.*
     Am. Compl.¶83.

17   [41] The use restrictions on the AVP DVDs are similar to those in computer program cases

18   where preemption was held inappropriate because the defendant failed to use the product at
     issue in a manner consistent with its contractual promises. *See Nat'l Car Rental Sys., Inc. v.*

19   *Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 429-30 (8th Cir, 1993) and *Computer Assoc. v,*

20   *State St. Bank & Trust,* 789 F. Supp. 470, 475 (D. Mass. 1992). The covenant to compensate
     Plaintiff for streaming rights is just like the promises to pay that were determined to provide

21   the requisite extra element in *Chesler.* Finally, while no case directly considers whether a

22   covenant respecting trademarks should be preempted, it would defy both logic and the
     reasoning behind the preemption decisions to hold that trademark rights were not

23   qualitatively different from those rights protected by Section 106 of the Copyright Act.

24   [42] As to Plaintiffs' claim that Defendants profited unjustly by enjoying the benefits of

25   streaming without paying for it, *see Chesler/Perlmutter Prods., Inc.,* 177 F. Supp, 2d at
     1059 ( allegations that defendants were unjustly enriched by retaining sums they had

26   promised to pay sufficient to create extra element ); *see also Nat'l Car Rental Sys., Inc. v.*

27   *Computer Assoc. Int'l, Inc.,* 991 F.2d  at 435 (unjust enrichment claim not preempted based
     on the court's reading  allegation of damage "as a further explanation of the damages [it]

28   intends to prove arising from the breach of contract").

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  *MDY Industries v. Blizzard Entm't* that a software company's tortious interference with

2  contract claim against an online gaming company was not preempted by the Copyright Act,

3  finding that the rights sought to be enforced were contractual rights not equivalent to

4  copyright rights. 629 F.3d at 957. The Court relied on its earlier decision in *Altera Corp. v.*

5  *Clear Logic, Inc.*, 424 F.3d 1079 (9th Circuit 2005) where it found a similar tortious

6  interference claim not preempted. *See also Celestial Mechanix, Inc. v. Susquehanna Radio*

7  *Corp.*, No.: CV 03-5834-GHK(VBKx), 2005 U.S. Dist. LEXIS 7920, at *34 (C.D. Cal. Apr.

8  28, 2005) (citing *Lattie v. Murdach*, No. C-96-2524 MHP, 1997 U.S. Dist. LEXIS, at *15-

9  16 ("finding claim for interference with prospective business advantage to be qualitatively

10  different from copyright, and thus not preempted, because 'in order to state…a claim,

11  plaintiff must show some prospective business advantage relationship and that defendants'

12  conduct deprived him of it.'")). [43,44,45]

### IV.    CONCLUSION

14     For all the foregoing reasons the Motion should be denied in its entirety.

---

16  [43] AVP's claim is factually similar to claims that survived preemption in *Celestial Mechanix*
17  (plaintiff alleged it had been deprived of potential opportunities to derive license fees from
   syndication of a commercial produced from its script) and in *Lattie* (plaintiff alleged
18  defendants knowingly deprived him of potential market for creating a book with other
19  antique dealers or owners ).
   [44] At the very least, it would be premature to reject Plaintiffs' tortious interference claims on
20  a motion to dismiss without factual analysis as to the specific actions which constitute the
21  interference.  See *Miller v. Miramax Film Corp.*, 1999 U.S. Dist. LEXIS 23422 (C.D. Cal.
   1999).
22  [45] *See also Brackett v. Hilton Hotels Corp.*, 619 F. Supp.2d 810, 822 (N.D. Cal. 2008),
23  rejecting the defendants' argument that plaintiff's claims could not exist absent the alleged
24  copying of her work by defendants ("Holding as such would essentially preempt any state
   law claim stemming from alleged copyright infringement even if that claim added an
25  element that changed the nature of the action.  The Ninth Circuit has made clear that where
26  a state law claim adds an additional element, it is not preempted by Section 301.")

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

DATED:  April 4, 2011

Respectfully Submitted,


/s/James M. Mulcahy
James M. Mulcahy (SBN 213547)
jmulcahy@mulcahyllp.com
Kevin A. Adams (SBN 239171)
kadams@mulcahyllp.com
Mulcahy LLP
One Park Plaza
Suite 225
Irvine, California 92614
Telephone No. (949) 252-9377
Fax 949-252-0090

/s/Arnold P. Lutzker
Arnold P. Lutzker, DC Bar No. 101816,
Admitted PRO HAC VICE
Jeannette M. Carmadella , DC Bar No. 500586,
Admitted PRO HAC VICE
Allison L. Rapp, Member MD Bar
Admitted PRO HAC VICE
Lutzker & Lutzker LLP
1233 20th Street, NW
Suite 703
Washington, DC 20036
Telephone No. 202-408-7600 Ext. 1
Fax 202-408-7677
arnie@lutzker.com

*Counsel for Plaintiffs*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address 1 Park Plaza, Suite 225, Irvine, CA 92614.

On **April 4, 2011**, I served document(s) described as **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the following person at the addresses and/or facsimile number below:

R. James Slaughter
Michael S. Kwun
Andrew F. Dawson
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111-1704

[ ]   VIA FACSIMILE – Based on an agreement by the parties to accept service by fax transmission, I faxed the documents from a fax machine in Irvine, California, with the number 949-252-0090, to the parties and/or attorney for the parties at the facsimile transmission number(s) shown herein. The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission upon which the transmission was made, a copy of which is attached hereto.

[X]   BY ELECTRONIC SERVICE – Based on a court order or agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed herein on the above referenced date. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ]   BY MAIL - I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid, at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   BY CERTIFIED MAIL - I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid, at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   BY FEDERAL EXPRESS – I am readily familiar with the firm's practice of collection and processing correspondence for Federal Express. Under that practice it would be deposited

PROOF OF SERVICE

with Federal Express on that same day in the ordinary course of business for overnight delivery with delivery costs thereon fully prepaid by sender, at Irvine, California.

[ ]    BY MESSENGER SERVICE – I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed herein and providing them to a professional messenger service for service.  A declaration by the messenger service will be filed separately.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on **April 4, 2011** at Irvine, California.

By: *Tamara Wester*
Tamara Wester

PROOF OF SERVICE