UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ASSOCIATION FOR
INFORMATION MEDIA AND
EQUIPMENT, an Illinois nonprofit
membership organization; and
AMBROSE VIDEO PUBLISHING,
INC., a New York corporation,

Plaintiff,

vs.

THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA, a
California corporation; MARK G.
YUDOF, an individual; DR. GENE
BLOCK, CHANCELLOR OF THE
UNIVERSITY OF CALIFORNIA,
LOS ANGELES, an individual; DR.
SHARON FARB, an individual;
LARRY LOEHER, an individual;
PATRICIA O'DONNELL, an
individual; and John Does 1-50,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:10-cv-09378-CBM
(MANx)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

The matter before the Court is Defendants' Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss").  [Docket No. 43.]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Overview

#### 1.   The Parties

Plaintiff Ambrose Video Publishing, Inc. ("AVP") is an educational video producer and the alleged holder of all exclusive rights associated with the specific copyrighted works in question in this case.  (Second Amended Complaint ("SAC") ¶ 2, Docket No 38.)  Association for Information Media and Equipment ("AIME") is a national trade association whose mission is to help ensure copyright education and compliance, and whose membership includes AVP and other video copyright owners.  (*Id.*)  Plaintiffs filed suit against The Regents of the University of California, Mark Yudof, President of the University of California, Dr. Gene Block, Chancellor of UCLA, Dr. Sharon Farb, UCLA's Associate University Librarian for Collection Management and Scholarly Communication, Larry Loeher, UCLA's Associate Vice Provost and Director of Instructional Development, and Patricia O'Donnell, Manager of UCLA's Instructional Media Collections and Services and Media Lab, all in their official and individual capacities, and John Does 1-50.  (*Id.* at ¶ 1.) [Docket No. 38.]

#### 2.   Alleged Licensing Agreement  and UCLA's Alleged Use

Plaintiffs allege that Defendants copied DVDs licensed by AVP and other AIME members, reformatted them, and put the DVD content on the "Internet or UCLA intranet."  (*Id.* at ¶ 3.)  Plaintiffs also allege that UCLA, at the direction or supervision of Defendants Farb, Loeher, and O'Donnell, copied an AVP program "The Plays of William Shakespeare" and put it on the internet so the students and faculty could access the content online through a practice referred to as streaming.  (*Id.* at ¶¶ 6-7.)  AVP alleges that a viewer of the DVD does not have to be in an

1   educational setting to stream the content, but that the person can view the video
2   wherever the person can access the UCLA network.  (*Id*. at ¶¶ 46-48.)  According
3   to the SAC, Defendants utilize Video Furnace, a system manufactured and sold by
4   Hai Vision Systems, Inc., that allows for the recording and "transmission and
5   distribution to computers and set top boxes."  (*Id*. at ¶ 4.)

6      In 2009, AVP, through AIME, contacted UCLA through its Chancellor,
7   objecting to this use of the AVP DVDs.  (*Id*. at ¶ 9.)  UCLA, after initially
8   desisting the practice, informed AVP that it believed it had the right to copy or
9   stream the AVP DVDs and reinstated its streaming process.  (*Id*. at ¶ 12.)

10   **B.    Procedural History**

11      Plaintiffs' First Amended Complaint ("FAC") asserts nine claims for breach
12   of contract, anticipatory breach of contract, copyright infringement, declaratory
13   relief, circumvention under the Digital Millennium Copyright Act ("DMCA"),
14   breach of implied covenant of good faith and fair dealing, unjust enrichment,
15   tortious interference with contractual relations, and tortious interference with
16   prospective business advantage.  (FAC at ¶¶ 33-44, Docket No. 21.)

17      Defendants' filed a Motion to Dismiss the First Amended Complaint based
18   on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and arguing that: (1)
19   they are immune from suit; (2) Plaintiff AIME lacks standing; and (3) Plaintiffs
20   have failed to state a claim upon which relief can be granted.  [Docket No. 27.]
21   The Court granted that motion and dismissed (1) all claims against the Regents
22   and any claims seeking damages against individuals in their official capacity  with
23   prejudice; (2) the declaratory relief claim asserted by AIME without prejudice for
24   lack of sufficient allegations to support standing; (3) all claims for injunctive relief
25   against Defendants Yudof and Block without prejudice for failure to state a claim;
26   (4) Plaintiffs' federal copyright infringement claim and DMCA claim without
27   prejudice for failure to state a claim; (5) and Plaintiff's state law claims without

28

prejudice for failure to state a claim not preempted by the Copyright Act.  [Docket No. 34.]

The Plaintiffs then filed a Second Amended Complaint ("SAC") asserting the same nine causes of action plus a new cause of action for deprivation of property without due process of law.  [Docket No. 38.]  Defendants' present Motion to Dismiss argues that (1) AIME has not alleged any new facts to alter this Court's finding that AIME lacks standing, (2) they are either sovereignly or qualifiedly immune, and (3) Plaintiffs have failed to state a claim upon which relief can be granted.  [Docket No. 43.]  Plaintiffs filed an opposition ("Pls.' Opp'n") and Defendants filed a reply ("Defs.' Reply Br."), both of which the Court has considered.  [Docket Nos. 44, 45.]

## II.   STANDARD OF LAW

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  A plaintiff bears the burden to establish that subject matter jurisdiction exists.  *Id.*  A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction."  *United States v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002).  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can be either a facial or factual attack.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial attack on subject matter jurisdiction, the court is confined to the allegations in the complaint.  In a factual attack, the court is permitted to look beyond the complaint and may consider evidence.  *See id.* (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1036 (9th Cir. 2004)), *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  Jurisdiction must generally be determined prior to a federal court considering a

case on its merits.  *See United States v. Larson*, 302 F.3d 1016, 1019 (9th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  On a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded allegations of material fact, and construes them in light most favorable to non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1938, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, at 555.

## III.  DISCUSSION

**A.      Repleaded Claims That Were Dismissed With Prejudice**

In its order dismissing the FAC, the Court dismissed with prejudice all claims against the Regents and claims seeking damages against individual defendants in their official capacity on the grounds that these individual defendants are immune from suit under the doctrine of sovereign immunity. (Order at 4:9-6:3, 13:10-12.)  Plaintiffs have verbatim re-pleaded those claims from the FAC for purposes of appeal.  (SAC ¶¶ 95-98.)  As these claims have already been dismissed with prejudice, the Court does not analyze them further.

**B.      AIME Lacks Standing**

        **1.  AIME Lacks Associational Standing**

In its order dismissing the FAC, the Court held that AIME lacked associational standing because this case does not require the participation of individual members in the lawsuit, which is the third prong of the associational-standing test under *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  (Order at 7:10-11.)  Plaintiffs have not alleged any new facts to change the Court's previous ruling as to AIME's associational standing.  The ruling remains the same.

        **2.  AIME Lacks Standing on its Own for Lack of Injury in Fact**

In its prior order, the Court held that Plaintiffs had not pleaded sufficient facts under applicable case law to give AIME standing to bring suit on its own. (Order at 7:24-27.)  The FAC alleged that Plaintiff AIME "suffered from the diversion of its resources to deal with the Defendants' infringement of [the] copyright works." (FAC at ¶ 16.)  This Court held that under *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990), litigation costs do not constitute injury in fact for purposes of standing.  (Order at 7:16-19.)

In the SAC, in addition to arguing diversion of resources rising from dealing with the current litigation, Plaintiffs also allege that they have been forced to cut back on providing copyright advice and information in order to focus on the streaming issue dating as far back as 2009, prior to this lawsuit, have lost members, and have lost opportunities to attract new members.  (SAC at ¶ 20.)

The Supreme Court has held that only injuries likely to be redressed by a judgment in the plaintiff's favor are relevant.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  As stated in *Ashcroft v. Iqbal*, 129 S.Ct. 1938 (2009), speculation cannot serve as the basis to defeat a motion to dismiss.  AIME

1  therefore lacks standing in its own right and associational standing, and the Court

2  dismisses with prejudice AIME's claims.

3  **C.    Mr. Yudof's and Dr. Block's Sovereign Immunity**

4          States possess sovereign immunity under the Eleventh Amendment and are

5  generally immune from being sued in federal court without their consent. *Hans v.*

6  *Louisiana*, 134 U.S. 1 (1890). An exception to Eleventh Amendment immunity

7  was first recognized by *Ex parte Young,* 209 U.S. 123 (1908). Under *Ex parte*

8  *Young* and its progeny, the Eleventh Amendment does not bar a suit against a state

9  official that seeks only prospective injunctive relief for that official's violation of

10 federal law so long as there is a causal connection between the officer and the

11 alleged violation of federal law. *See Pennington Seed, Inc. v. Produce Exch. No.*

12 *299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006). The Court previously dismissed

13 without prejudice the claims against Defendants Yudof and Block because

14 Plaintiffs had not alleged this causal connection. (Order at 8:2-17.) In their

15 Second Amended Complaint, Plaintiffs add a few factual details to the allegations,

16 but the new details are insufficient to cure this defect.

17         The Second Amended Complaint alleges that AVP received a letter from

18 Senior Campus Counsel detailing the school's decision to resume streaming and

19 that the decision had been reached by the highest level of administration. The

20 letter allegedly referred to both Yudof and Block, which Plaintiffs believe is

21 evidence that the two authorized or oversaw the infringing activity. (SAC at ¶¶

22 67-69.) The language refers to Block being: "'the chief campus officer  . . . [i.e.]

23 the executive head of all activities on . . . campus . . . [who is] responsible for the

24 organization and operation of the campus [and] its internal administration'" and

25 Mr. Yudof "'who is authorized to develop and implement policies and procedures

26 on matters pertaining to intellectual property, including . . . copyrights.'" (SAC at

27 ¶ 69.) Plaintiffs allege that the decision to continue streaming was followed after

28

1  Dr. Block received principles on the use of streaming videos adopted by UCLA's
2  Information Technology Planning Board.  (*Id.*)

3       These additional allegations fail to establish the essential causal connection
4  between the officer and alleged violation necessary to invoke the *Ex parte Young*
5  exception to sovereign immunity.  209 U.S. 123.  Simply overseeing or
6  supervising the infringing activity is not enough.  (Defs.' Reply Br. 4:6-24.)  *See*
7  *Pennington Seed, Inc.*, 457 F.3d at 1342 (holding that *Ex Parte Young* requires
8  more of a nexus between the violation and the accused individual than allegations
9  accusing the individual of supervising or failing to prevent the violation).

10      The Court also finds Plaintiffs' contributory-infringement argument
11 unavailing.  (Pls. Opp'n at 12:24-13:11.)  Contributory infringement applies when
12 a defendant knowingly induces, causes, or materially contributes to another's
13 direct infringement by, for example, "providing the site and facilities for known
14 infringing activity."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667
15 F.3d 1022, 1047 (9th Cir. 2011) (citation and quotation marks excluded).  The
16 Second Amended Complaint fails to allege these types of facts.

17      The Court dismisses with prejudice the damages claims against Mr. Yudof
18 and Dr. Block in their official capacity because they are sovereignly immune and
19 the facts alleged fail to invoke the *Ex Parte Young* exception.

20 **D.    The Individual Defendants' Qualified Immunity**

21      Qualified immunity is an affirmative defense, and where the facts alleged in
22 the complaint establish the existence of an affirmative defense, a court may
23 dismiss the claim on a Rule 12(b)(6) motion.  *See Jones v. Bock*, 549 U.S. 199,
24 215 (2007) ("Whether a particular ground for opposing a claim may be the basis
25 for dismissal for failure to state a claim depends on whether the allegations in the
26 complaint suffice to establish that ground"); *Holomaxx Technologies v. Microsoft*
27 *Corp.*, 783 F.Supp.2d 1097, 1103 (N.D. Cal., 2011) ("The assertion of an

28

1    affirmative defense properly may be considered on a Rule 12(b)(6) motion where

2    the defense is 'apparent from the face of the [c]omplaint'") (citation omitted).

3        When an official's conduct does not violate "clearly established statutory or

4    constitutional rights of which a reasonable person would have known," that

5    official is shielded from liability for civil damages. *Harlow v. Fitzgerald*, 457

6    U.S. 800, 818 (1982). While most cases applying qualified immunity are in the

7    civil rights context, some courts have applied the doctrine in copyright cases. The

8    Court must determine not whether copyright law is clearly established in a broad

9    sense, but whether a specific right is clearly established under copyright law. *See*

10   *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("Plaintiffs would be able to

11   convert the rule of qualified immunity that our cases plainly establish into a rule of

12   virtually unqualified liability simply by alleging violation of extremely abstract

13   rights. . . . "[O]ur cases establish that the right the official is alleged to have

14   violated must have been 'clearly established' in a more particularized, and hence

15   more relevant, sense: The contours of the right must be sufficiently clear that a

16   reasonable official would understand that what he is doing violates that right. This

17   is not to say that an official action is protected by qualified immunity unless the

18   very action in question has previously been held unlawful, but it is to say that in

19   the light of pre-existing law the unlawfulness must be apparent.") (citations

20   omitted).

21       Courts have considered the doctrine of qualified immunity when a

22   particular area of copyright law was not clearly established. *See Molinelli-Freytes*

23   *v. Univ. of P.R.*, 792 F. Supp.2d 150, 157 (D.P.R. 2011) (applying qualified

24   immunity in a copyright case and finding, "as the law regarding the potential

25   application of the work-for-hire doctrine in an academic context has not been

26   conclusively settled at the instant time, it is exceedingly unlikely that Plaintiffs

27   can overcome the presumption of qualified immunity as applied to any individual

28

defendant"); *Campinha-Bacote v. Bleidt*, No. H-10-3481, 2011 WL 4625394, *3 (S.D. Tex. Oct. 3, 2011) ("Because it was objectively reasonable for Demps to believe that she would not be violating copyright law in administering the survey in 2007-09, she is entitled to summary judgment.").

The question before the Court as to the Defendants in their individual capacity is not whether their actions as alleged violate a law, but whether a reasonable Defendant would have known that the alleged actions violated clearly established copyright law. The Court finds that a reasonable person would not have known that the alleged conduct violated any clearly established rights pursuant to copyright law because it is ambiguous whether the use was fair use under copyright law. *See Harlow*, 457 U.S. at 818.

### 1. Whether an Average Person Would Have Known That the Streaming Constitutes Fair Use

Section 107 of the Copyright Act provides that "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as . . . teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The code section provides four factors to be balanced in determining whether a use constitutes fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyright work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id*.

The first factor balances in favor of finding fair use. The second factor

1   recognizes that fair use is more difficult to establish with creative works than

2   informational and functional works.  *See Dr. Seuss Enterprises, L.P. v. Penguin*

3   *Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997).  "[T]his factor typically has

4   not been terribly significant in the overall fair use balancing . . . ."  *Id*.  The works

5   here—Shakespeare plays—are clearly creative works, but are used within an

6   informational and educational context.  The Court finds that this factor is neutral.

7   The third factor weighs in favor of not finding fair use because the entire works

8   were streamed, not just portions.  Plaintiff makes a compelling argument,

9   however, that this situation is analogous to "time shifting" in the context of

10  television broadcasts in which a motion picture is recorded to be performed again

11  at a different time.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464

12  U.S. 417, 449-50 (1984).  Nevertheless, the Court finds that this factor weighs

13  slightly against a finding of fair use.  Finally, the fourth factor weighs in favor of

14  finding fair use because a student who watches an AVP DVD in a classroom is no

15  more likely to purchase the DVD than if the student watches the DVD on his or

16  her computer.

17       After balancing these factors, the Court concludes that there is, at a

18  minimum, ambiguity as to whether Defendants' streaming constitutes fair use and

19  that it would not have been clear to a reasonable person in Defendants' position

20  that its streaming did not constitute fair use.  Notably, no Court has considered

21  whether streaming videos only to students enrolled in a class constitutes fair use,

22  which reinforces the ambiguity of the law in this area.

23            **2.  Whether An Average Person Would Have Known that the**
                  **Streaming Violates the Terms of the Licensing Agreement**
24

25       Plaintiffs argue that qualified immunity does not apply because, in part, the

26  language of the licensing agreement "should have (and did) set of loud warning

27  bells as to whether creating hundreds of copies of a single DVD was really

28

1    authorized by the licensing agreement."  (Pls.' Opp'n at 9:3-5.)  This Court

2    previously held that UCLA's placing of a DVD on the UCLA network was part of

3    the rights that Plaintiff licensed to Defendants.  (Order at 10:7-15.)  Plaintiffs

4    argue that the Court erroneously relied too heavily on a marketing brochure or

5    ordering catalogue in reaching its conclusion rather than the actual "licensing

6    agreement."  In pertinent part, the marketing brochure or ordering catalogue

7    states: "All purchases by schools and libraries include public performance rights."

8    (SAC, Ex. 9.)  The Terms and Conditions that were allegedly controlling for the

9    purchase of the set of "BBC Shakespeare Plays" ("Shakespeare Terms and

10   Conditions") state:

11         Ambrose grants Customer and Customer accepts from
           Ambrose the limited license under copyright to exhibit

12         one or more of the films, video, and/or sound filmstrip
           programs or both ordered or rented by Customer . . . but

13         only for exhibition to non-paying private audiences
           during the period set forth and in accordance with the

14         specific terms of said order or rental . . .  CUSTOMER
           ACKNOWLEDGES THAT THE PROGRAMS MAY

15         NOT BE DUPLICATED, BROADCAST,
           TRANSMITTED BY CABLE OR OTHERWISE, ON

16         ANY MULTI-RECEIVER OPEN OR INTERNET
           SYSTEM, OR DISPLAYED BEFORE THE PUBLIC,

17         WHETHER OR NOT ADMISSION IS CHARGED . . . .

18   (SAC, Exs. 7, 24.)  It is not clear that these Terms and Conditions formally

19   amount to a licensing agreement, or even how they were originally provided to

20   Defendants, but the Court will consider them a licensing agreement because

21   Plaintiff so alleges.  *See Manzarek*, 519 F.3d at 1031-32 (On a motion to dismiss

22   for failure to state a claim, the court accepts as true all well-pleaded allegations of

23   material fact, and construes them in light most favorable to non-moving party.)

24        The Court finds that these Terms and Conditions are ambiguous.  It would

25   be unclear to a reasonable person whether the streaming—within the UCLA

26   network only to a student with a proper login and who is enrolled in the relevant

27   class—is considered a broadcast or transmission over an "open or Internet system"

28

as opposed to a closed *intra*net system because it requires a student enrolled in the appropriate class to log into the UCLA network.  Notably, the Terms also state that UCLA may exhibit the videos "for exhibition to non-paying private audiences during the period set forth and in accordance with the specific terms."  (SAC, Exs. 7, 24.)

As this Court has noted previously, the rights mentioned in the marketing brochure or ordering catalogue are more expansive than those in the Shakespeare Terms and Conditions, and this only adds to the ambiguity.  Given this ambiguity, it cannot be said from the facts alleged in Plaintiffs' Second Amended Complaint that the individual Defendants violated the "clearly established statutory or constitutional rights of which a reasonable person would have known."

The Court therefore finds that the individual Defendants are qualifiedly immune from civil damages.  The Court GRANTS the Motion and dismisses with prejudice all individual Defendants in their individual capacities.  The remaining available relief on any cause of action is injunctive relief.  The merits of these causes of action are discussed below.

### E.    Whether Ambrose Sufficiently Alleged Facts to Support Its Cause of Action for Copyright Infringement

Plaintiffs contend that they have alleged facts to support five separate copyright infringements, discussed in turn.

#### 1. Whether Ambrose Sufficiently Alleged Facts to Support Its Claim for Infringement of the Exclusive Right to Publicly Perform the Work

Plaintiffs concede that the license grants Defendants the right to display the DVDs in a classroom or in a library to students.  This Court held previously that whether students accessed the DVDs "overseas or at a coffee shop" as opposed to in a classroom or a library did not change the nature of the viewing of the DVDs or take the viewing out of the educational context.  (Order at 9:19-21.)  None of

the new allegations in the SAC change the Court's analysis.  The Court therefore grants the motion to dismiss with prejudice as to this claim.

### 2. Whether Ambrose Sufficiently Alleged Facts to Support Its Claim for Infringement of the Exclusive Right to Copy the Work

This Court previously held that any copying of the DVDs was incidental to the right that Plaintiff licensed to Defendants, and therefore constitutes incidental fair use.  (Order at 10:14-15.)  The SAC does contain additional allegations as to the process used by the Video Furnace software to prepare a DVD for streaming, including that "in order to upload and AVP DVD into Video Furnace, the web administrator must create a copy of the DVD."  (*See* SAC at ¶¶ 49-57.)  While the SAC may include new details, the Court has already considered the allegation that Defendants copy the DVD in order to stream it and concluded that any such copying is incidental fair use.  The new allegations do not change the Court's analysis, and the allegations still do not state a claim.  The Court therefore grants the motion to dismiss with prejudice as to this claim.

### 3. Whether Ambrose Sufficiently Alleged Facts to Support Its Claim for Infringement of the Exclusive Right to Publicly Distribute the Work

Previously, this Court held that streaming is not distribution under the Copyright Act.  Under the Copyright Act, distributed items must be "material objects" in which a copy is "fixed."  17 U.S.C. § 101.  Plaintiffs' new allegations that "the Video Furnace system administrator retains an original copy of the AVP DVD while distributing copies to end users, which copies remain on the end user's computer as long as the Video Furnace InStream player remains open" does not change this outcome.  For a copy to be fixed, it must be "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than a transitory duration."  17 U.S.C. § 101.  The "copy" on the end users computer, as alleged, is not fixed.  The Court therefore grants the

motion to dismiss with prejudice as to this claim.

### 4. Whether Ambrose Sufficiently Alleged Facts to Support Its Claim for Infringement of the Exclusive Right to Publicly Display the Work

This Court previously held that Plaintiffs failed to allege facts showing any non-sequential display as required under the Copyright Act.  The SAC includes new allegations that "the Video Furnace technology permits faculty to edit and store videos so that images in videos displayed on student computers can be displayed non-sequentially."  (SAC at ¶ 54, Exs. 13, 14.)  The Court accepts these allegations as true, but the allegations do not allege a non-sequential display.  The allegations only speculate about the software's capabilities, insufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").  The Court dismisses with prejudice this claim.

### 5. Whether Ambrose Sufficiently Alleged Facts to Support Its Claim for Infringement of the Exclusive Right to Creative Derivative Works

Plaintiffs have included this new claim for the first time in the Second Amended Complaint.  The alleged facts are that the Video Furnace software is capable of being used to create derivative works.  As with Plaintiffs' claim for breach of exclusive right to publicly display, these allegations merely speculate about capabilities.  As such, the Court dismisses with prejudice this claim.

## F.   Digital Millennium Copyright Act

This Court finds that Plaintiffs have failed to cure the defects with their DMCA claim.  First, the allegations in the SAC do not support a claim that Defendants violated 17 U.S.C. § 1201(a)(1)(A) by using the HVS Video Furnace software to "circumvent . . . a technological measure that effectively controls access to" the DVDs because UCLA had lawful access to the DVDs and Plaintiffs essentially allege improper usage of the DVDs.  "[A] person who engages in

1    prohibited usage of a copyrighted work to which he has lawful access does not fall

2    afoul of any provision of Section 1201."  Nimmer on Copyright § 12A.03[D][3].

3           Second, the SAC fails to allege facts sufficient to support Plaintiffs' claim

4    that Defendants have trafficked in devices that circumvent access controls in

5    violation of § 1201(a)(2) or devices that circumvent copy controls in violation of §

6    1201(b).  To be liable for trafficking under the DMCA, a person must

7    "manufacture, import, offer to the public, provide, or otherwise traffic in any

8    technology."  17 U.S.C. § 1201(a)(2).  The SAC does not allege facts to support

9    Plaintiffs' claim that Defendants have manufactured, imported, or offered to the

10   public any technology.  The SAC does allege that Defendants have provided the

11   Video Furnace software to professors, but the Court finds that these professors are

12   not members of the public for purposes of this Court's DMCA analysis.

13   Moreover, the DMCA requires the technology to have more than "limited

14   commercially significant" purposes aside from circumventing technological

15   protection measures.  17 U.S.C. § 1201(b)(1)(B).  Video Furnace does have more

16   than a limited commercially significant purpose aside from circumventing

17   technological protection measures.

18          The Court therefore dismisses with prejudice Plaintiffs' DMCA claims.

19   **G.     Preempted Claims**

20          The Court's October 3, 2011 Order dismissed Plaintiffs' state claims for (1)

21   unjust enrichment; (2) tortious interference; (3) breach of implied covenant of

22   good faith; (4) breach of contract; and (5) anticipatory breach of contract as

23   preempted by the Copyright Act.  (*See* Order at 13:6-13.)  The Copyright Act

24   preempts claims that are "equivalent to any of the exclusive rights within the

25   general scope of copyright." 17 U.S.C. § 301(a); *Altera Corp. v. Clear Logic, Inc.*,

26   424 F.3d 1079, 1089 (9th Cir. 2005).  "A state law is therefore preempted if: (1)

27   the work involved falls within the general subject matter of the Copyright Act, and

28

16

(2) the rights asserted under the state law are equivalent to those protected by the Act. *Zitto v. Steeplechase Films, Inc.*, 267 F. Supp.2d 1022, 1027 (N.D. Cal. 2003)." (Order at 11:26-12:4.)

In the October 2011 Order, the Court stated that the FAC lacked factual allegations to establish that the breach of three provisions in the licensing agreement was not preempted: "(1) the guarantee that each program be exhibited 'only in its entirety' with 'complete copyright notices and credits'; (2) the promise in the 2008-2011 License that UCLA would pay a 'higher price for streaming rights'; and (3) the 2008-2011 License's covenant 'prohibiting use of Plaintiff AVP's trademarks.'" (*Id.* at 12:22-26.) In the SAC, Plaintiffs allege some additional facts for the first of these three provisions of the licensing agreements. (SAC at ¶ 96.)

The first provision, dealing with the guarantee of showing the program in its entirety, concerns the same conduct within Plaintiffs' copyright claim. This claim is therefore preempted. The SAC simply fails to allege facts supporting a claim of breach of the second and third provisions. The Court therefore dismisses these three allegations with prejudice. The Court finds the other state law claims are preempted for the reasons stated in its prior order.[1]

**H.    Deprivation of Property Without Due Process**

Plaintiffs assert a new cause of action for deprivation of property without due process of the law for their copyright claims against all named defendants in their official capacity, which were dismissed by this Court in its previous order.

---

[1] The Court found that the state claims are preempted generally because the "factual allegations relate to AVP's purported copyright infringement claim, and therefore the corresponding state law claims are preempted." (Order at 13:5-7.) The Court noted as well that a claim for unjust enrichment arising from alleged unauthorized use of a copyrighted work, where there is no extra element to the claim, is generally preempted. *Zito*, 267 F. Supp. at 1027 (N.D. Cal. 2003). Claims for tortuous interference are also generally preempted when they involve acts of unauthorized use of copy righted work, even though they require proof of additional elements. *See Oldcastle Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. C10-322, 2010 WL 2217910 (W.D. Wash. June 1, 2010).

(SAC at ¶ 113.)  They assert that "suits against Defendants in their individual capacities do not provide an adjudication of the liability of the State for the infringements of AVP's copyright rights, nor is there any other means to adjudicate the State's liability."  (*Id.* at ¶ 117.)  Plaintiffs further allege that "California law preempts causes of action for any claims that are equivalent to any of the exclusive rights of copyright owners,  . . . there [being] no other adequate remedy that would compensate AVP for Defendants' infringements."  (*Id.* at ¶ 118.)

Plaintiffs raised these same due process concerns in their opposition to Defendants' first motion to dismiss.  This Court considered the argument then and found that Ambrose is "not being denied all access to a remedy for [Defendants'] alleged violations of copyright law."  (Order at 6:2-3.)  The SAC does not allege any new facts to change the Court's analysis.  The Court therefore dismisses with prejudice Plaintiffs' claim for deprivation of property without due process of the law.

## IV.  CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint with prejudice.


**IT IS SO ORDERED.**




DATED:  November  20 , 2012            _____
                                                    CONSUELO B. MARSHALL
                                                    UNITED STATES DISTRICT JUDGE

18